**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROBERT O'NEIL,

                                    Plaintiff,

         - against -

EMILY RATAJKOWSKI ET AL.,

                                    Defendants.

Case No. 1:19-cv-9769-AT

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT AND ATTORNEY'S FEES**

## TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ........................................................................................ 1

II.  FACTS ..................................................................................................... 4

III.  LEGAL STANDARD .............................................................................. 7

IV.  LEGAL ARGUMENT .............................................................................. 8

POINT I. PLAINTIFF LACKS A VALID COPYRIGHT ............................ 8

    i.    Plaintiff Cannot Show that the O'Neil Photograph is Protected by the '330 Registration ................................................................ 8

    ii.    The O'Neil Photograph Does Not Have the Necessary Originality to Qualify for Copyright Protection ............................................. 10

    iii.    The O'Neil Photograph Was Not Exclusive and Therefore Is Not Protected by Copyright ............................................................ 13

POINT II. THE INSTAGRAM STORIES POST WAS FAIR USE ............... 14

POINT III. PLAINTIFF SUFFERED NO ACTUAL DAMAGES AND STATUTORY DAMAGES ARE NOT APPROPRIATE ......................................... 18

POINT IV. THIS CASE WAS BROUGHT IN BAD FAITH AND DEFENDANT IS ENTITLED TO HER ATTORNEY'S FEES AND COSTS .......................... 23

V.  CONCLUSION ........................................................................................ 27

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Adjmi v. DLT Entm't Ltd.*,
   97 F.Supp.3d 512 (S.D.N.Y. 2015) ...................................................15

*Alyeska Pipeline Co. v. Wilderness Society*,
   421 U.S., 95 S.Ct. .........................................................................25

*Anderson v. Primera Plana NY, Inc.*,
   No. 17CV7715JMFKNF, 2019 WL 1936741 (S.D.N.Y. Mar. 29, 2019) ..............22

*Authors Guild, Inc. v. HathiTrust*,
   755 F.3d 87 (2d Cir. 2014)........................................................14, 17

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015).............................................................14

*Baker v. Urban Outfitters, Inc.*,
   254 F. Supp. 2d 346 (S.D.N.Y. 2003)..............................................20, 24

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006)........................................................15, 16

*Burrow-Giles Lithographic Co. v. Sarony*,
   111 U.S. 53, 4 S. Ct. 279, 28 L. Ed. 349 (1884)....................................10

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013)................................................14, 16, 17, 18

*Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc.*,
   150 F.3d 132 (2d Cir. 1998)...........................................................18

*Cengage Learning, Inc. v. Yousuf*,
   No. 114CV03174DABSDA, 2018 WL 6990757 (S.D.N.Y. Dec. 20, 2018) ........................21

*Chambers v. NASCO, Inc.*,
   501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)...............................26

*Christians of Cal., Inc. v. Clive Christian N.Y., LLP*,
   No. 13-cv-275 (KBF), 2014 U.S. Dist. LEXIS 139005 (S.D.N.Y. Sep. 15, 2014) ....................................................................................8

*Crown Awards, Inc. v. Disc. Trophy & Co.*,
   564 F.Supp.2d 290 (S.D.N.Y. 2008), aff'd, 326 F. App'x 575 (2d Cir. 2009).......................24

*Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*,
  535 F. Supp. 2d 542 (E.D.N.C. 2008)..........................................................................11

*Davis v. Carroll*,
  937 F. Supp. 2d 390 (S.D.N.Y. 2013).............................................................................7

*Durham Indus., Inc. v. Tomy Corn.*,
  630 F.2d 905 (2d Cir. 1980).............................................................................................8

*Earth Flag Ltd. v. Alamo Flag Co.*,
  153 F. Supp. 2d 349 (S.D.N.Y. 2001)..........................................................................11

*Ez-Tixz, Inc. v. Hit-Tix, Inc.*,
  919 F. Supp. 728 (S.D.N.Y. 1996) ...............................................................................22

*Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*,
  896 F. Supp. 2d 223 (S.D.N.Y. 2012)..........................................................................10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)........................................8, 13

*Ferdman v. CBS Interactive, Inc.*,
  342 F. Supp. 3d 515 (S.D.N.Y. 2018)............................................................................9

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)......................................17, 23

*Folio Impressions v. Byer Cal.*,
  752 F. Supp. 583 (S.D.N.Y. 1990) .............................................................................8, 9

*Frederick v. Capital One Bank (USA) N.A.*, No. 14-CV-5460 (AJN), 2018 U.S.
  Dist. LEXIS 50768, at *34 (S.D.N.Y. Mar. 27, 2018) ..............................................22

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
  22 F.3d 1219 (2d Cir. 1994)............................................................................................7

*Goldenberg v. Doe*,
  731 F. Supp. 1155 (E.D.N.Y. 1990) ............................................................................20

*Harlen Assocs. v. Vill. of Mineola*,
  273 F.3d 494 (2d Cir. 2001)............................................................................................7

*Island Software and Computer Service, Inc. v. Microsoft Corp.*,
  413 F.3d 257 (2d Cir.2005).............................................................................................7

*Knic Knac Agencies v. Masterpiece Apparel*,
  94 Civ. 1073 (LMM), 1999 U.S. Dist. LEXIS 3267 (S.D.N.Y. Mar. 17, 1999) ...................22

*Knitwaves v. Lollytogs Ltd.*,
  71 F.3d 996 (2d Cir. 1995) ................................................................................. 21

*Kramer v. Showa Denko K.K.*,
  929 F. Supp. 733 (S.D.N.Y. 1996) ..................................................................... 22

*L.A. Printex Indus., Inc. v. Le Chateau, Inc.*,
  No. 11 CIV. 4248 LTS, 2012 WL 987590 (S.D.N.Y. Mar. 23, 2012) ................... 10

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
  156 F.Supp.3d 425 (S.D.N.Y.), aff'd, 674 Fed.Appx. 16 (2d Cir. 2016) .............. 15

*Masterfile Corp. v. Country Cycling & Hiking Tours by Brooks, Inc.*,
  No. 06CIV.6363(SAS)FM, 2008 WL 313958 (S.D.N.Y. Feb. 4, 2008) ................. 21

*Matthew Bender & Co. v. W. Pub. Co.*,
  158 F.3d 674 (2d Cir. 1998) ................................................................................. 11

*Matthew Bender & Co. v. W. Pub. Co.*,
  240 F.3d 116 (2d Cir. 2001) ................................................................................. 24

*MindGames, Inc. v. Western Pub. Co.*,
  218 F.3d 652 (7th Cir. 2000), cert. denied, 531 U.S. 1126 (2001) ...................... 20

*NXIVM Corp. v. Ross Inst.*,
  364 F.3d 471 (2d Cir. 2004) ................................................................................. 15

*Oliveri v. Thompson*,
  803 F.2d 1265 (2d Cir.1986) ................................................................................ 26

*Oriental Art Printing, Inc. v. Goldstar Printing Corp.*,
  175 F. Supp. 2d 542 (S.D.N.Y. 2001) aff'd mem., 34 F. App'x 401 (2d Cir.
  2002) ..................................................................................................................... 10

*Peer Int'l Corp. v. Luna Records, Inc.*,
  887 F. Supp. 560 (S.D.N.Y. 1995) ...................................................................... 21

*Polsby v. St. Martin's Press, Inc.*,
  8 F. App'x 90 (2d Cir. 2001) ............................................................................... 23

*Polsby v. St. Martin's Press, Inc.*,
  No. 97 Civ. 690, 2000 WL 98057 (S.D.N.Y. Jan. 18, 2000), aff'd, 8 F. App'x
  90 (2d Cir. 2001) .................................................................................................. 24

*Psihoyos v. Nat'l Geographic Soc'y*,
  409 F. Supp. 2d 268 (S.D.N.Y. 2005) .................................................................. 11

*Rice v. NBC Universal Media LLC*,
   No. 19-CV-447 (JMF) ..................................................................................................1


*Rogers v. Koons*,
   960 F.2d 301 (2d Cir. 1992)........................................................................................10

*Screenlife Establishment v. Tower Video, Inc.*,
   868 F.Supp. 47 (S.D.N.Y. 1994) (Sotomayor, J.)...............................................23, 24

*Sea Tow Servs. Int'l v. St. Paul Fire & Marine Ins. Co.*,
   211 F. Supp. 3d 528 (E.D.N.Y. 2016) ........................................................................22

*Sierra Club v. United States Army Corps of Eng'rs*,
   776 F.2d 383 (2d Cir.1985)..........................................................................................26

*Skoogfors v. Lycos, Inc.*,
   No. 16CIV2742PGGJCF, 2017 WL 10591577 (S.D.N.Y. Apr. 21, 2017) .................22

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
   No. 16-CV-724-LTS-SDA, 2020 WL 1467394 (S.D.N.Y. Mar. 26, 2020) .................16

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
   No. 16CV724-LTS, 2016 WL 4126543 (S.D.N.Y. Aug. 2, 2016).................................21

*TCA Television Corp. v. McCollum*,
   839 F.3d 168 (2d Cir. 2016).........................................................................................15

*Telebrands Corp. v. Del Labs., Inc.*,
   719 F. Supp. 2d 283 .....................................................................................................11

*The Authors Guild v. Google, Inc.*,
   136 S.Ct. 1658, 194 L.Ed.2d 800 (2016) ....................................................................14

*Troll Co. v. Uneeda Doll Co.*,
   483 F.3d 150 (2d Cir. 2007).........................................................................................21

*Usherson v. Bandshell*, Civ. No. 1-1:19-cv-06368(JMF)……………………………………1

*Van Der Zee v. Greenidge*,
   No. 03-CV-8659 (RLE), 2006 WL 44020 (S.D.N.Y. Jan. 6, 2006) ............................21

*Warner Bros. v. Dae Rim Trading, Inc.*,
   677 F. Supp. 740 (S.D.N.Y. 1988) ........................................................................21, 25

*Wright v. Warner Books, Inc.*,
   953 F.2d 731 (2d Cir. 1991).........................................................................................15

**Federal Statutes**

17 U.S.C. § 101 ...............................................................................................................21

17 U.S.C. § 107(2) ..........................................................................................................16

17 U.S.C. § 107(3) ..........................................................................................................17

17 U.S.C. § 107(4) ..........................................................................................................17

17 U.S.C. § 410(c) .............................................................................................................8

17 U.S.C. § 412 ...............................................................................................................21

17 U.S.C. § 412(1) ..........................................................................................................21

17 U.S.C. § 505 .................................................................................................4, 23, 24

17 U.S.C.  § 504(b) .........................................................................................................20

28 U.S.C. § 1927 ...............................................................................................4, 23, 25

The Copyright Act ..............................................................................10, 13, 14, 23, 24

**Rules**

Federal Rule of Civil Procedure 56(c) ..............................................................................7

FRCP 11 .............................................................................................................4, 23, 25

## I.  INTRODUCTION

This case is another in a long series of sanctionable and improper lawsuits filed by Mr. Richard Liebowitz's law office.  On July 22, 2020, this Court found that "there is a strong public interest in shining a bright light on Mr. Liebowitz's extraordinary record in his conduct and ensuring that both courts and his clients, current and future, are aware of … [his] history so that they can be vigilant in scrutinizing Mr. Liebowitz's conduct."  *Citing Usherson v. Bandshell*, Civ. No. 1-1:19-cv-06368(JMF).

This Court is undoubtedly familiar with the litigation scheme perpetrated by Mr. Leibowitz's law office.  As Judge Cote has previously determined, "[Mr. Liebowitz's] litigation strategy in this District fits squarely within the definition of a copyright troll."  *McDermott v. Monday Monday, LLC*, Viv No. 1:17-CV-09230.[1]

As a result of his prodigious bad-faith filings, Mr. Liebowitz was described by this Court as "earning the dubious distinction of being a regular target of sanctions related motions and orders."  *Rice v. NBC Universal Media LLC*, No. 19-CV-447 (JMF).

This case has all of the hallmarks of Mr. Liebowitz's prior bad-faith litigation, including defective registrations, lack of infringement, and lack of damages.  Indeed, documents produced by Plaintiff and his counsel for the first time at approximately 1am the morning of Plaintiff's deposition, show that the actual total amount that Plaintiff received from the entire set of photographs he took of Ms. Ratajkowski is a mere $2.55.  Plaintiff was clearly aware of this fact at the time of filing of the Complaint but failed to produce this information until hours before

---

[1] As of the time that Judge Cote wrote those words, Mr. Liebowitz had filed over 700 cases in this District since 2016, asserting claims of copyright infringement, and at least 500 of those lawsuits had been voluntarily dismissed, settled or otherwise disposed of before any merits based litigation has occurred.

Plaintiff's deposition.  During his deposition, Plaintiff also could not say whether or not he has received even a "few dollars" in income from the photograph at issue.

Moreover, the litigation tactics employed by Mr. Liebowitz and Plaintiff in seeking to extract settlements or damages, were further exposed during Plaintiff's deposition.  Plaintiff, a paparazzi photographer, follows celebrities around their homes, takes photographs of them without their consent, makes no material alterations to the photographs, uploads them to a website owned and operated by Splash News, the agency that represents Plaintiff, and hopes that Splash News can license the photographs for a fee that may never materialize.

Plaintiff also follows the same celebrities he takes photographs of on Instagram (in the same way that he follows them on the street and in his car), and checks to see if his photographs (or a photograph that could pass as his own) appear on a celebrity's social media accounts.  If so, he immediately contacts Mr. Leibowitz's law office to institute legal action.  Mr. Liebowitz and Plaintiff file copyright registrations for thousands of photographs per year, regardless of whether they contain any original elements of creative or artistic expression.

Here, as set forth below in Point I, the alleged copyright in the photograph identified in this action as Exhibit "A" to Plaintiff's Complaint (the "O'Neil Photograph") that Plaintiff O'Neil seeks to enforce here is not valid because there is no evidence that the O'Neil Photograph was actually included in the registration.  Further, the O'Neil Photograph completely lacks originality. It was one of nine taken in rapid succession. It was framed, lit, and captured based only on the natural state in which he found Defendant Emily Ratajkowski ("Ms. Ratajkowski" or "Defendant")[2], with her face covered, rather than any artistic choice. It was taken alongside other

---

[2] Plaintiff has conceded, in his letter to the Court dated July 24, 2020, Schnapp Decl. Ex. 7, (Dkt. 28), that he no longer seeks liability or damages against Defendant Emrata Holdings, LLC ("Emrata"), and, at a minimum, this Court should dismiss this case against Emrata and hold Plaintiff and his counsel liable for Defendant Emrata's fees and costs in defending this action.  To the extent that Plaintiff seeks to maintain this action against Emrata, it is

photographers, and was so unoriginal Plaintiff could not even be sure that he was the one who took the photograph. Plaintiff took this photograph simply by following Ms. Ratajkowski and continued photographing her even after Ms. Ratajkowski made it clear she did not consent by hiding her face.

As set forth below in Point II, even if Plaintiff has a valid copyright registration, Ms. Ratajkowski's posting of a photograph to her Instagram Stories account (the "Instagram Stories Post"), where it was automatically deleted after 24 hours because of the platform's functionality, was undeniably fair use. Ms. Ratajkowski transformed the O'Neil Photograph from an exploitative image to a commentary on the harassing and relentless behavior of paparazzi such as Plaintiff by adding the words "Mood Forever," among other things.

As set forth below in Point III, summary judgment should also be awarded to Defendant because there is a complete lack of actual or statutory damages. Plaintiff could not have licensed the photograph because Ms. Ratajkowski is unidentifiable as her face is covered by a bouquet of flowers, and Plaintiff's work is only valuable to the extent it exploits the identities of celebrities or if the photographs can be used for sponsorship purposes. The record does not indicate that Plaintiff ever made a penny from his photograph and he withdrew his claim for actual damages. As Ms. Ratajkowski did not make any profit from her fair use of the photograph, statutory damages are inappropriate in this case.

Lastly, Plaintiff should be sanctioned for this bad-faith litigation and Defendant should be awarded her attorney's fees and costs. Plaintiff and his counsel clearly did not make any investigation into whether any actual damage occurred before they alleged infringement by

---

respectfully requested that this Court award summary judgment in favor of both Defendants and award Defendants their fees and costs in defending this bad-faith suit.

Defendant. They claim damages that are completely out of proportion for what any use of the O'Neil Photograph could possibly be worth. They also did not do any research into whether or not Emrata has anything to do with the subject matter of the complaint.[3]

Accordingly, for the reasons set forth herein, this Court should grant summary judgment to Defendant Ratajkowski and impose sanctions under FRCP 11 or the award of attorney's fees under 17 U.S.C. §505, 28 U.S.C. §1927, and/or the Court's inherent equitable powers.

## II.    FACTS

Ms. Ratajkowsi is a famous model and actress. Declaration of Emily Ratajkowski in Support of Defendant's Motion for Summary Judgment ("Ratajkowski Decl.") ¶2. Plaintiff has been a paparazzi photographer since 2011. Defendant's Rule 56.1 Statement ("Defendant's 56.1") at ¶11.

On September 13, 2019, the day that Plaintiff took the O'Neil Photograph, Plaintiff set up his photography equipment after he saw Ms. Ratajkowski walk past the corner of Lafayette and Bond Streets in Manhattan.  Defendant's 56.1 at ¶31. Ms. Ratajkowski had just purchased flowers for her friend's birthday at a neighborhood flower shop, and was walking back to her apartment when she crossed paths with Plaintiff.  Ratajkowski Decl. ¶4. Plaintiff had been lying in wait after seeing Ms. Ratajkowski walk past him.  *Id*. at ¶5. Plaintiff then followed Ms. Ratajkowski on foot, and took nine photographs of her in rapid succession a few feet from the front door of her apartment building.  *Id*. Ms. Ratajkowski is holding flowers over her face in the photograph in order to protect herself and her privacy from the paparazzi, including Plaintiff. *Id*. at ¶6.

---

[3] Emrata is the entity through which Ms. Ratajkowski works as an actress and model. Defendant's 56.1 at ¶4.

After taking the nine photographs, Plaintiff uploaded the photographs to a website run by Splash News, the agency that attempts to license his photographs. Defendant's 56.1 at ¶ 22. Plaintiff does not attempt to make any meaningful edits to his photographs. *Id*. Plaintiff testified that the photograph would not have even been taken, but for the fact that Ms. Ratajkowski inadvertently crossed paths with Plaintiff.  Defendant's 56.1 at ¶ 31.

Ms. Ratajkowski posted a photograph of herself covering her face with flowers and added the caption "Mood Forever" on her Instagram Stories, where it automatically disappeared after 24 hours. Defendant's 56.1 at ¶75, Ratajkowski Decl. at ¶ 7. By adding the caption "Mood Forever," the objective of the Instagram Stories Post was to make commentary and criticism of Ms. Ratajkowki's perspective of the abusive, aggressive, and harassing practice of paparazzi constantly following her, even when buying flowers for a friend. Ratajkowski Decl. at ¶8. The caption "Mood Forever" is Ms. Ratajkowski's way of expressing that she will always feel that her privacy has been invaded by the paparazzi. *Id*. at 7, Defendant's 56.1 at ¶72.

Plaintiff testified that he is not sure whether the photograph featured in the Instagram Stories Post has been cropped or whether or not it was a photograph that he had taken. Defendant's 56.1 at ¶53, 57. Plaintiff admitted at his deposition that the O'Neil Photograph is unoriginal and "non-exclusive". Defendant's 56.1 at ¶ 49. Plaintiff testified that he designated the O'Neil Photograph as "non-exclusive" because other paparazzi were present and taking photographs at the time. Defendant's 56.1 at ¶49-50. In fact, there were other paparazzi who took the same image at the same moment that Plaintiff took the O'Neil Photograph.  Defendant's 56.1 at ¶ 51-52.

Plaintiff has not produced any evidence that the O'Neil Photograph was actually offered for sale. Schnapp Decl. at ¶5. O'Neil has admitted under oath that there is no market for the

O'Neil Photograph because Ms. Ratajkowski's face is hidden. Defendant's 56.1 at ¶24. Further, there is no ability to use the photograph for sponsorship purposes. *Id*.

Plaintiff received no licensing fee for the O'Neil Photograph. Defendant's 56.1 at ¶¶39, 43. Splash News did not sell or license the O'Neil Photograph within one week after it was sent to Splash News. Defendant's 56.1 at ¶39. Documents produced by Plaintiff and his counsel for the first time at approximately 1am the morning of Plaintiff's deposition show that the actual total amount that Plaintiff received from the entire set of photographs of Ms. Ratajkowski is a mere $2.55. Defendant's 56.1 at ¶42. Plaintiff could not say whether or not he has received even a "few dollars" in income from the O'Neil Photograph. Defendant's 56.1 at ¶43. Plaintiff has made no attempts to sell or license the O'Neil Photograph other than uploading it to Splash News' portal. Defendant's 56.1 at ¶44. Plaintiff testified that the photograph in question was not used by any company for promotional purposes. Defendant's 56.1 at ¶48.

Plaintiff previously claimed actual damages but now claims only $30,000 in statutory damages. Defendant's 56.1 at ¶61. Plaintiff's basis for damages is that Ms. Ratajkowski is "an influencer on Instagram and … she makes a lot more money that than figure on her Instagram and they get paid by the photo." *Id*.  Plaintiff does not know how much money, if any, Ms. Ratajkowski made from the Instagram Stories Post, but Plaintiff only "goes by what his celebrity friends have told him that they make money through photos." Defendant's 56.1 at ¶62. Other than speaking with "celebrities" and having "small talk" with them, and asking about their Instagram accounts, Plaintiff testified that he has not done anything else to ascertain his alleged damages. *Id*.

Plaintiff alleges that the O'Neil Photograph is protected by Copyright Registration No. VA 2-173-330 (the "'330 Registration"). Declaration of Daniel Schnapp in Support of

Defendant's Motion for Summary Judgment ("Schnapp Decl.") Ex. 1. The '330 Registration contains registrations for 747 photographs in total, and no actual photograph or indicia sufficient to identify the O'Neil Photograph.  Defendant's 56.1 at ¶58-59. Although the document has Defendant Emily Ratajkowki's name next to 30 jpeg files, Plaintiff did not produce any documents to show that the O'Neil Photograph was ever submitted to the copyright office in connection with the '330 Registration.  Schnapp Decl. Ex. 1., ¶3. O'Neil has not produced any documents that identify those 747 photographs, or any evidence that the O'Neil Photograph is included in this registration. Defendant's 56.1 at 59; Schnapp Decl. ¶4.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Davis v. Carroll*, 937 F. Supp. 2d 390, 420 (S.D.N.Y. 2013) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  While the nonmoving party can defeat summary judgment by presenting evidence sufficient to create a genuine issue of material fact, it is well-established that "[m]ere speculation and conjecture [are] insufficient to preclude the granting of the motion."  *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.    LEGAL ARGUMENT

### POINT I.

### PLAINTIFF LACKS A VALID COPYRIGHT

In order to establish copyright infringement, a plaintiff must show that he or she "had a valid copyright in the work allegedly infringed." *Island Software and Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir.2005) (citation and quotation marks omitted); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

A certificate of registration alone is insufficient to meet this requirement. "A certificate of registration creates no irrebuttable presumption of copyright validity, and where other evidence in the record casts doubt on the question, validity of the copyright will not be assumed." *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, No. 13-cv-275 (KBF), 2014 U.S. Dist. LEXIS 139005, at *6 (S.D.N.Y. Sep. 15, 2014) (internal quotations omitted).  The evidentiary weight to be accorded the certificate of a registration is within the discretion of the Court.  *Id. See also* 17 U.S.C. § 410(c); *Durham Indus., Inc. v. Tomy Corn.*, 630 F.2d 905, 908 (2d Cir. 1980).  *See, e.g., Folio Impressions v. Byer Cal.*, 752 F. Supp. 583, 586 (S.D.N.Y. 1990).

Attached to the Schnapp Decl. as Exhibit "1" is the alleged registration for the O'Neil Photograph (the "'330 Registration"). Here, as set forth below, O'Neil cannot establish that the O'Neil Photograph is covered by the '330 Registration. The O'Neil Photograph also does not have the requisite creativity or originality to warrant copyright protection.

i.    <u>Plaintiff Cannot Show that the O'Neil Photograph is Protected by the '330 Registration</u>

This Court has ruled that where a plaintiff cannot identify what photographs were covered by a group registration, the absence of such "hard evidence" results in awarding

summary judgment to the party contesting the validity of the copyright. In *Mantel v. Microsoft Corp.*, this Court held that the Registration certificate at issue did not identify the 25 photographs that were allegedly protected by that copyright registration. No. 16-CV-5277 (AJN), 2018 WL 1602863, at *5 (S.D.N.Y. Mar. 29, 2018), reconsideration denied, No. 16-CV-5277 (AJN), 2019 WL 367823 (S.D.N.Y. Jan. 30, 2019).[4] As a result, the Court concluded that the plaintiff could not point to any "hard evidence," that the photograph at issue was one of the photographs registered with the Copyright Office as part of the Registration.  As a result, the Court awarded summary judgment to the defendant. *Id.*

Similarly, in *Ferdman v. CBS Interactive, Inc.*, 342 F. Supp. 3d 515, 529-30 (S.D.N.Y. 2018)[5], the defendant disputed whether the photographs that were the subject of that lawsuit were actually included in plaintiff's registration, and this Court agreed, and ruled in favor of defendant due to the absence of "hard evidence" linking the photographs to the certificate of registration.  *Ferdman* at 529 (ruling that, where plaintiff submitted 307 photographs and none of the designations on the photographs produced by plaintiff during discovery matched the designations on the Certificate of Registration, the Court could not conclude that the photographs that were the subject of the action were included in the registration).

Here, Plaintiff cannot establish that the O'Neil Photograph was actually registered for copyright protection because there is no "hard evidence" linking the O'Neil Photograph to the certificate of registration produced by Plaintiff during discovery.  The '330 Registration contains registrations for 747 photographs in total, and no actual photograph or indicia sufficient to identify the O'Neil Photograph.  Defendant's 56.1 at ¶58-59. Although the document has

---

[4] Mr. Liebowitz also represented the plaintiff in *Mantel.*

[5] Mr. Liebowitz also represented the plaintiff in *Ferdman.*

Defendant Emily Ratajkowski's name next to 30 jpeg files, Plaintiff did not produce any documents to show that the O'Neil Photograph was ever submitted to the copyright office in connection with the '330 Registration.  Schnapp Decl. Ex. 1, ¶3. O'Neil has not produced any documents that identify those 747 photographs, or any hard evidence that the O'Neil Photograph is included in this registration, and cannot do so now that the factual record is closed.[6] Schnapp Decl. ¶4.

      ii.     <u>The O'Neil Photograph Does Not Have the Necessary Originality to Qualify for Copyright Protection</u>

In order to be copyrightable, the O'Neil Photograph "must represent an appreciable amount of creative authorship." *Prestige Floral, Societe Anonyme v. California Artificial Flower Co.*, 201 F. Supp. 287, 289–90 (S.D.N.Y. 1962); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (explaining that the protectable, original elements of a photograph include "posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.").

The protections afforded by the Copyright Act are only available to a party "who has actually formed the picture by putting the persons in position, and arranging the place where the people are to be." *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61, 4 S. Ct. 279, 283, 28 L. Ed. 349 (1884). This is true even if the plaintiff holds a registered copyright. *L.A. Printex Indus., Inc. v. Le Chateau, Inc.*, No. 11 CIV. 4248 LTS, 2012 WL 987590, at *3 (S.D.N.Y. Mar. 23, 2012) ("Once a plaintiff has proffered its certificate of copyright registration, the defendant

---

[6] Additionally, Plaintiff did not testify that all 747 photographs listed in the '330 Registration were published. Applicants cannot use the group registration procedure to register a group of photographs that includes both published and unpublished photographs. *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc*., 896 F. Supp. 2d 223, 231 (S.D.N.Y. 2012). If any of the photographs were unpublished, the entire copyright registration is invalid.

may rebut the presumption with evidence that the work at issue is non-original or non-copyrightable.")

A photograph is not sufficiently original if it lacks "any artistic quality," and "the nature and content of such photograph" does not "give the Court any reason to believe that any 'creative spark' was required to produce [it]." *Oriental Art Printing, Inc. v. Goldstar Printing Corp*., 175 F. Supp. 2d 542, 546 (S.D.N.Y. 2001) aff'd mem., 34 F. App'x 401 (2d Cir. 2002). The "creative spark" is missing where (i) "industry conventions or other external factors" so heavily dictate the choices made that any person would necessarily make the same choices, or (ii) "the author made obvious, garden-variety, or routine selections." *Matthew Bender & Co. v. W. Pub. Co*., 158 F.3d 674, 682 (2d Cir. 1998) (citations omitted).

Similarly, photographs that are "purely descriptive pictures" or have a "purely utilitarian purpose" will not be afforded copyright protection. *Custom Dynamics, LLC v. Radiantz LED Lighting, Inc*., 535 F. Supp. 2d 542, 549 (E.D.N.C. 2008); *Telebrands Corp. v. Del Labs., Inc*., 719 F. Supp. 2d 283, ftn. 8 (S.D.N.Y. 2010). If a photograph merely captures things "as they are," there is also no copyright protection. "To the extent a photograph captures the characteristics of an object as it occurs in nature, these characteristics are not protectible." *Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268, 275 (S.D.N.Y. 2005). When the possibly protectable elements of a photograph, such as angle, "flows naturally from the subject matter of the photograph" those elements are no longer protectable. *Id* at 276. The lack of requisite originality alone can entitle a party to summary judgment. *Earth Flag Ltd. v. Alamo Flag Co*., 153 F. Supp. 2d 349, 356 (S.D.N.Y. 2001).

Here, the O'Neil Photograph contains no originality, no "creative spark", and no "artistic quality." Instead, the O'Neil Photograph merely captured Ms. Ratajkowski as she appeared on

the street, with no direction or involvement from O'Neil at all other than the fact that he claimed
to have bumped into her in lower Manhattan.

On September 13, 2019, the day that Plaintiff [7] took the O'Neil Photograph, Plaintiff set
up his photography equipment after he saw Ms. Ratajkowski walk past the corner of Lafayette
and Bond Streets in Manhattan.  Defendant's 56.1 at ¶31.

Ms. Ratajkowski had just purchased flowers for her friend's birthday at a neighborhood
flower shop, and was walking back to her apartment when she crossed paths with Plaintiff.
Ratajkowski Decl. ¶4. Plaintiff had been lying in wait after seeing Ms. Ratajkowski walk past
him.  *Id*. at ¶5. Plaintiff then followed Ms. Ratajkowski on foot, and took nine photographs of
her in rapid succession a few feet from the front door of her apartment building.  *Id*. Ms.
Ratajkowski is holding flowers over her face in the photograph in order to protect herself and her
privacy from the paparazzi, including Plaintiff. *Id*. at ¶4.

After taking the nine photographs, Plaintiff uploaded the photographs to Splash News's
website,[8] and did not attempt to make any meaningful edits to the photographs. Defendant's 56.1
at ¶ 22. Plaintiff testified that the O'Neil Photograph would not have even been taken, but for the
fact that Ms. Ratajkowski inadvertently crossed paths with Plaintiff.  Defendant's 56.1 at ¶ 31.

Plaintiff also testified that he is not sure whether the photograph featured in the Instagram
Stories Post has been cropped or whether or not it was a photograph that he had taken.
Defendant's 56.1 at ¶53, 57. This is evidence that any "choices" that were made in connection
with the O'Neil Photograph were the result of accidental outside forces, rather than O'Neil's

---

[7] Plaintiff Robert O'Neil has been a "paparazzi photographer" since 2011.  Plaintiff has never published any essays
or taught any class with respect to photography.  Defendant's 56.1 at ¶11.While he may earn money from taking
photographs, this does not qualify Plaintiff as an artist whose work possesses an appreciable amount of creativity.

[8] Plaintiff has not produced any evidence that the O'Neil Photograph was actually offered for sale.

own "creative spark", and any other photographer there in that moment would have inadvertently made the same choices.

Further, the O'Neil Photograph lacks any appreciable amount of creative authorship. There is no attempt to have Ms. Ratajkowski, the subject of the photograph, pose, or to generate lighting, a particular angle, or almost any other variant involved. Before it was uploaded the O'Neil Photograph was not meaningfully edited by Plaintiff and, indeed, is simply only one of thousands of paparazzi photographs that Plaintiff and his counsel have allegedly filed for registration with the Copyright Office. Defendant's 56.1 at ¶21-22.

Thus, the O'Neil Photograph lacks any indicia of creative authorship and fails to warrant protection under the Copyright Act and Defendant's Motion for Summary Judgment should be granted.

iii.   <u>The O'Neil Photograph Was Not Exclusive and Therefore Is Not Protected by Copyright</u>

Similarly, "to qualify for copyright protection, a work must be original to the author." *Feist*, 499 U.S. at 345, 111 S.Ct. 1282.  Plaintiff admitted at his deposition that the O'Neil Photograph is unoriginal and "non-exclusive". Defendant's 56.1 at ¶ 49. Plaintiff testified that he designated the O'Neil Photograph as "non-exclusive" because other paparazzi were present and taking photographs at the time. Defendant's 56.1 at ¶49-50. In fact, there were other paparazzi who took the same image at the same moment that Plaintiff took the O'Neil Photograph. Defendant's 56.1 at ¶ 51-52. The photographs taken by all of the paparazzi present at Ms. Ratajkowski's apartment would necessarily be so similar that Plaintiff was not even certain that the photograph in the Instagram Stories Post was his. Defendant's 56.1 at ¶ 57. Accordingly, the O'Neil Photograph is not "original to the author" and summary judgment should be granted for Defendant.

13

## POINT II.

## THE INSTAGRAM STORIES POST WAS FAIR USE

Defendant is also entitled to summary judgment because, if there is a valid copyright, Ms. Ratajkowski's post constitutes fair use.

The Copyright Act provides four statutory factors that courts must consider in analyzing the fair use defense: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the original work; (3) the amount and substantiality of the portion of the original work used in relation to the original work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013) at 236. Each of these factors weighs in favor of a finding that the Instagram Stories Post was fair use.

The first statutory factor—the purpose and character of the use—is the "heart of the fair use inquiry." *Id.* (internal quotation marks omitted). Courts must look to whether the use "'adds something new, with a further purpose or different character, altering the first with new expression, meaning or message.'" *Id.* (*quoting Campbell*, 510 U.S. at 579). Where the new work "'adds value to the original'" or the original work is "'used as raw materials, transformed in the creation of new information, new aesthetics, new insights and understandings—this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.'" *Id.* at 706 (*quoting Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 142 (2d Cir. 1998)). "A use is transformative if it does something more than repackage or republish the original copyrighted work." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014).

It is well-established that "[a]mong the best recognized justifications for copying from another's work is to provide comment on it or criticism of it." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214–15 (2d Cir. 2015), cert. denied sub nom. *The Authors Guild v. Google, Inc.*, 136

14

S.Ct. 1658, 194 L.Ed.2d 800 (2016). Indeed, the Second Circuit has held "there is a strong

presumption that factor one favors the defendant if the allegedly infringing work fits the

description of uses described in section 107," including "criticism" and "comment." *Wright v.*

*Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991); *see also TCA Television Corp. v.*

*McCollum*, 839 F.3d 168, 179 (2d Cir. 2016) ("[T]he uses identified by Congress in the preamble

to § 107—criticism, comment, news reporting, teaching, scholarship, and research—might be

deemed 'most appropriate' for a purpose or character finding indicative of fair use."); *NXIVM*

*Corp. v. Ross Inst.*, 364 F.3d 471, 477 (2d Cir. 2004) ("Where the defendants' use is for the

purposes of criticism [or] comment ... factor one will normally tilt in the defendants' favor.")

(internal quotation omitted).

Accordingly, courts have regularly found fair use where, as here, the purpose or character

of an allegedly infringing work was criticism and/or comment. *See, e.g., NXIVM Corp.*, 364 F.3d

at 482 (affirming district court denial of preliminary injunction after finding that defendants'

allegedly infringing writings were "undoubtedly transformative secondary uses intended as a

form of criticism"); *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F.Supp.3d 425,

444–45 (S.D.N.Y.), aff'd, 674 Fed.Appx. 16 (2d Cir. 2016) (holding defendant's line of tote bags

made fair use of plaintiff's copyrights in part because "[p]arody, like other forms of comment or

criticism, has an obvious claim to transformative value") (internal quotations omitted); *Adjmi v.*

*DLT Entm't Ltd.*, 97 F.Supp.3d 512, 531 (S.D.N.Y. 2015) (holding a play makes fair use of the

television series "Three's Company" in part because the play "criticizes and comments upon

Three's Company by reimagining a familiar setting in a darker, exceedingly vulgar manner.").

The "sharply different objectives" between the O'Neil Photograph and the Instagram

Stories Post "confirms the transformative nature of the use." *Blanch v. Koons*, 467 F.3d 244, 252

(2d Cir. 2006). The Instagram Stories Post, which appeared on Ms. Ratajkowski's personal

Instagram Stories, where it was automatically deleted after 24 hours, was *not* substantially or

virtually identical to Plaintiff's photo.  Defendant's 56.1 at ¶29. *Solid Oak Sketches, LLC v. 2K*

*Games, Inc.*, No. 16-CV-724-LTS-SDA, 2020 WL 1467394, at *6 (S.D.N.Y. Mar. 26, 2020).

("Defendants are entitled as a matter of law to summary judgment dismissing Plaintiff's

copyright infringement claim" when use was de minimus).

　　In fact, the very purpose and character of the use was entirely transformed. The objective

of the O'Neil Photograph was to exploit Ms. Ratajkowski's fame with an unoriginal and

accidental paparazzi photograph. By adding the caption "Mood Forever," the objective of the

Instagram Stories Post was to make commentary and criticism of Ms. Ratajkowki's perspective

of abusive, aggressive, and harassing practice of paparazzi constantly following her, even when

buying flowers for a friend. Ratajkowski Decl. at ¶8. The caption "Mood Forever" is Ms.

Ratajkowski's way of expressing that she will always feel that her privacy has been invaded by

the paparazzi. *Id*. at 9.

　　The second fair use factor looks to "the nature of the copyrighted work."  17 U.S.C. §

107(2).  This factor is "'of limited usefulness where,' as here, 'the creative work of art is being

used for a transformative purpose.'"  *Cariou*, 714 F.3d at 710 (*quoting Bill Graham Archives v.*

*Dorling Kindersley Ltd*., 448 F.3d 605, 612 (2d Cir. 2006)); *Blanch v. Koons*, 467 F.3d 244, 257

(2d Cir. 2006). "This factor calls for recognition that some works are closer to the core of

intended copyright protection than others, with the consequence that fair use is more difficult to

establish when the former works are copied." *Campbell* at 586.

16

Here, the O'Neil Photograph is an unoriginal and valueless paparazzi snapshot. As discussed in detail in section III.a.ii-iii above, the O'Neil Photograph has no "creative spark" or "artistic expression." Therefore, the second factor weighs in favor of a fair use finding.

The third fair use factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Courts must ask "'whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying.'" *Cariou*, 714 F.3d at 710 (quoting Blanch, 467 F.3d at 257). A secondary user "must" be permitted "to 'conjure up' at least enough of the original" work to accomplish his transformative purpose. *Campbell*, 510 U.S. at 588.

In this case, the amount and substantiality of the O'Neil Photograph seen in the Instagram Stories Post is reasonable in relation to its transformative purpose of providing criticism of Ms. Ratajkowski's daily need to hide from the paparazzi. She chose a platform (Instagram Stories) where the post disappears after 24 hours, while she could have posted in her Instagram feed, on Twitter or any other platform where the O'Neil Photograph would permanently live. Accordingly, this factor also weighs in favor of a finding that the Instagram Stories Post was fair use.

The fourth fair use factor looks to "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor "is concerned with only one type of economic injury to a copyright holder: the harm that results because the secondary use serves as a substitute for the original." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014). Thus, courts are not concerned with whether "'the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market for the original work.'" *Cariou*, 714 F.3d at 708 (*quoting Blanch*, 467

17

F.3d at 258).  Market usurpation occurs most often "where the infringer's target audience and the nature of the infringing content are the same as the original."  *Id*. at 709.  Generally, then, "the more transformative the secondary use," the less likely it is "that the secondary use substitutes for the original."  *Castle Rock*, 150 F.3d at 145.

Here, O'Neil has admitted under oath that there is no market for the O'Neil Photograph because Ms. Ratajkowski's face is hidden. Defendant's 56.1 at ¶24. Further, there is no ability to use the photograph for sponsorship purposes.  *Id*. Additionally, Ms. Ratajkowski has clearly testified that she received no compensation for the Instagram Stories Post, which was automatically deleted after 24 hours. Ratajkowski Decl. ¶10. Accordingly, the Instagram Stories Post has had no effect on the (non-existent) market for the O'Neil Photograph, and this factor also weighs heavily in favor of a finding of fair use.

All four factors weigh in the Defendant's favor, and, therefore, the Instagram Stories Post should be found to constitute fair use.

## POINT III.

## PLAINTIFF SUFFERED NO ACTUAL DAMAGES AND STATUTORY DAMAGES ARE NOT APPROPRIATE

Ms. Ratajkowski is also entitled to summary judgment because there can be no damage award in this case.

First, Plaintiff made no material effort to determine whether or not he suffered any actual damage before filing the Complaint.  Defendant's 56.1 at ¶65. Plaintiff initially claimed actual damages despite the undisputed facts that: (a) that there is no way to tell that it is Ms. Ratajkowski in either photograph, (b) she is holding flowers over her face, (c) Plaintiff never received a penny of income from the O'Neil Photograph and Defendant did not receive any compensation from the Instagram Stories Post, Ratajkowski Decl. at ¶10 (d) the Instagram

Stories Post was automatically deleted from Ms. Ratajkowski's Instagram Stories account after 24 hours, Defendant's 56.1 at ¶75, and (e) there is nothing in the O'Neil Photograph that is commercially exploitable, such as a brand name or other use for sponsorship. Further, since Plaintiff received no licensing fee for the O'Neil Photograph, there is no amount to multiply in order to reach any amount of damages over $0. Defendant's 56.1 at ¶39, 43.

The O'Neil Photograph has no market value. Defendant's 56.1 at ¶24. Splash News did not sell or license the O'Neil Photograph within one week after it was sent to Splash News. Defendant's 56.1 at ¶39. Typically, valuable photographs are immediately sold or licensed. Documents produced by Plaintiff and his counsel for the first time at approximately 1am the morning of Plaintiff's deposition show that the actual total amount that Plaintiff received from the entire set of photographs of Ms. Ratajkowski is a mere $2.55. Defendant's 56.1 at ¶ 42; Schnapp Decl. Ex. 9. Plaintiff was clearly aware of this fact at the time of filing of the Complaint but failed to produce this information until hours before Plaintiff's deposition. Defendant's 56.1 at ¶42. Plaintiff could not say whether or not he has received even a "few dollars" in income from the O'Neil Photograph. Defendant's 56.1 at ¶43. Plaintiff has made no attempts to sell or license the O'Neil Photograph other than uploading it to Splash News' portal. Defendant's 56.1 at ¶44. Plaintiff testified that the photograph in question was not used by any company for promotional purposes. Defendant's 56.1 at ¶48.

Yet, in bad-faith, Plaintiff now claims $30,000 in damages.[9]  Defendant's 56.1 at ¶61. Plaintiff's basis for damages is that Ms. Ratajkowski is "an influencer on Instagram and … she makes a lot more money that than figure on her Instagram and they get paid by the photo." *Id*.

---

[9] Plaintiff's Complaint originally requested "statutory damages of up to $150,000 per copyrighted work infringed". Schnapp Decl. Ex. 2.

However, Plaintiff does not know how much money, if any, Ms. Ratajkowski made from the Instagram Stories Post, but Plaintiff only "goes by what his celebrity friends have told him that they make money through photos."  Defendant's 56.1 at ¶62. Other than speaking with "celebrities" and having "small talk" with them, and asking about their Instagram accounts, Plaintiff testified that he has not done anything else to ascertain his alleged damages. Defendant's 56.1 at ¶62.

Further, based upon Supplemental Disclosures on the eve of Plaintiff's deposition, Plaintiff no longer seeks actual damages.   Schnapp Decl. Ex. 5. Therefore, O'Neil has admitted he does not have now and never had any actual damages or profits to recover. 17 U.S.C. § 504(b).

To save his claims, O'Neil now attempts to recover in this action by seeking statutory damages. However, statutory damages are not available.

 Here, O'Neil and his counsel are clearly attempting to turn a photograph that had no financial benefit to him or his business into a monetary windfall, which is explicitly prohibited. *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346 (S.D.N.Y. 2003), aff'd unpub., 249 Fed. Appx. 845 (2d Cir. 2007); 4 Nimmer on Copyright § 14.01 (2019) ("a finding of liability is not a lottery ticket. In all instances, the relief should match the proof. The result is that prevailing plaintiffs sometimes recover little to nothing."); *MindGames, Inc. v. Western Pub. Co.*, 218 F.3d 652, 658 (7th Cir. 2000) ("Damages must be proved, and not just dreamed"), cert. denied, 531 U.S. 1126 (2001); *Goldenberg v. Doe*, 731 F. Supp. 1155 (E.D.N.Y. 1990), (defendant's 43 counts of admitted (nonwillful) infringement produced no profits to defendant, no proximate damage to plaintiff, and hence no award.).

20

While statutory damages may be awarded when actual damages are impossible to calculate, they should ideally "bear some relation to actual damages suffered." *Van Der Zee v. Greenidge*, No. 03-CV-8659 (RLE), 2006 WL 44020, at *2 (S.D.N.Y. Jan. 6, 2006) (citation omitted); *Cengage Learning, Inc. v. Yousuf*, No. 114CV03174DABSDA, 2018 WL 6990757, at *3 (S.D.N.Y. Dec. 20, 2018), report and recommendation adopted, No. 14 CIV. 3174 (DAB), 2019 WL 162661 (S.D.N.Y. Jan. 10, 2019); *Masterfile Corp. v. Country Cycling & Hiking Tours by Brooks, Inc*., No. 06CIV.6363(SAS)FM, 2008 WL 313958, at *4 (S.D.N.Y. Feb. 4, 2008), report and recommendation adopted, No. 06CIV6363SASFM, 2008 WL 11516909 (S.D.N.Y. Feb. 21, 2008); *see also Warner Bros. v. Dae Rim Trading, Inc*., 677 F. Supp. 740, 769 (S.D.N.Y. 1988) ("While a plaintiff is allowed to opt for statutory damages in lieu of actual damages, this option is not intended to provide the plaintiff with a windfall recovery."); *Peer Int'l Corp. v. Luna Records, Inc*., 887 F. Supp. 560, 569 (S.D.N.Y. 1995) (taking into account "the small amount of actual damages suffered by plaintiffs" when setting statutory damages).

Alternatively, Plaintiff may be barred from any recovery of statutory damages under 17 U.S.C. §412. If the O'Neil Photograph was not published, recovery of statutory damages is barred under 17 U.S.C. §412(1). O'Neil has failed to provide evidence that the O'Neil Photograph was ever actually offered for sale, and therefore it may be unpublished, thereby barring all statutory damages. 17 U.S.C. §101; Schnapp Decl. ¶5.

If, on the other hand, the O'Neil Photograph was published, recovery damages may still be unrecoverable based on the "bright line rule" that a "plaintiff may not recover statutory damages or attorney's fees for any infringement "commenced" before the effective date of a copyright's registration." *Troll Co. v. Uneeda Doll Co*., 483 F.3d 150, 158 (2d Cir. 2007); *Knitwaves v. Lollytogs Ltd*., 71 F.3d 996, 1012 (2d Cir. 1995); *Solid Oak Sketches, LLC v. 2K*

*Games, Inc.*, No. 16CV724-LTS, 2016 WL 4126543, at *2 (S.D.N.Y. Aug. 2, 2016); *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 736 (S.D.N.Y. 1996).[10] Defendant alleges the O'Neil Photograph was taken on September 13, 2019 and the Instagram Stories Post was posted for 24 hours on or around September 18, 2019. Defendant's 56.1 at ¶31; Plaintiff's Rule 56.1 Statement in support of Motion for Summary Judgment at ¶25. The '330 Registration has an effective date of October 03, 2019. Schnapp Decl. ex. 1. Accordingly, any alleged infringement occurred prior to registration, and statutory damages are barred.

The failure to establish damages is a basis to award Defendant summary judgment. The District Courts of New York routinely grant motions for summary judgment where Plaintiff cannot establish damages. *See, e.g., Frederick v. Capital One Bank (*USA), N.A., No. 14-CV-5460 (AJN), 2018 U.S. Dist. LEXIS 50768, at *34 (S.D.N.Y. Mar. 27, 2018) ("As a result of Plaintiff's failure to establish damages as a matter of law, the Court grants summary judgment to all Defendants."); *Sea Tow Servs. Int'l v. St. Paul Fire & Marine Ins. Co*., 211 F. Supp. 3d 528, 553 (E.D.N.Y. 2016) (defendant's summary judgment motion granted in its entirety where plaintiff could not show "any losses or actual damages"); *Knic Knac Agencies v. Masterpiece Apparel*, 94 Civ. 1073 (LMM), 1999 U.S. Dist. LEXIS 3267, at *44 (S.D.N.Y. Mar. 17, 1999) (Defendant's motion for summary judgment granted where "plaintiffs cannot show that they are entitled to any damages"); *Kramer v. Showa Denko K.K.,* 929 F. Supp. 733, 744 (S.D.N.Y. 1996) (defendant entitled to summary judgment where plaintiffs cannot establish damages with any reasonable certainty).

---

[10] *But see Skoogfors v. Lycos, Inc.*, No. 16CIV2742PGGJCF, 2017 WL 10591577, at *3 (S.D.N.Y. Apr. 21, 2017), report and recommendation adopted, No. 16CIV2742PGGJCF, 2018 WL 4761521 (S.D.N.Y. Oct. 2, 2018); *Anderson v. Primera Plana NY, Inc*., No. 17CV7715JMFKNF, 2019 WL 1936741, at *3 (S.D.N.Y. Mar. 29, 2019), report and recommendation adopted, No. 17-CV-7715 (JMF), 2019 WL 1966369 (S.D.N.Y. May 1, 2019)

Plaintiff has suffered no actual damages and Defendant did not receive any profit in connection with the Instagram Stories Post. Statutory damages are therefore inappropriate here because (1) the O'Neil Photograph was not registered until after the alleged infringement (if it was registered at all); (2) statutory damages are inappropriate where actual damages are calculable; and (3) awarding statutory damages here would lead to an unallowable windfall. Accordingly, Summary Judgment should be granted for Defendant.

## POINT IV.

## THIS CASE WAS BROUGHT IN BAD FAITH AND DEFENDANT IS ENTITLED TO HER ATTORNEY'S FEES AND COSTS

Defendant should be awarded attorney's fees as a "prevailing party." Alternatively, the acts of Plaintiff and counsel in bringing this case are so clearly in bad faith that Defendant is entitled to attorney's fees under FRCP 11, 28 U.S.C. §1927, or the Court's inherent powers.

First, under the Copyright Act, "the prevailing party" is eligible for an award of attorney's fees. 17 U.S.C. § 505. *accord Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (remarking that, under section 505, "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion"). Because Defendant is entitled to Summary Judgment, the Court should use its discretion to grant an award of attorney's fees. *Polsby v. St. Martin's Press, Inc*., 8 F. App'x 90, 92 (2d Cir. 2001).

In determining whether attorney's fees should be awarded, there is no precise rule or standard, but courts look to a non-exhaustive list of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n. 19, 114 S.Ct. 1023; *See Screenlife Establishment v. Tower Video,*

*Inc.*, 868 F.Supp. 47, 52 (S.D.N.Y. 1994) (Sotomayor, J.) (holding that prevailing party may obtain attorneys' fees "pursuant to 17 U.S.C. § 505, once the court finds that the plaintiff's claim was objectively unreasonable; bad faith or frivolousness is not a prerequisite to an award of fees."); *see also Crown Awards, Inc. v. Disc. Trophy & Co.*, 564 F.Supp.2d 290, 294 (S.D.N.Y. 2008), aff'd, 326 F. App'x 575 (2d Cir. 2009); *see also Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 121 (2d Cir. 2001) (same).

A party acts in an "objectively unreasonable manner by asserting an utterly meritless claim and a patently frivolous position." *Screenlife Establishment*, 868 F.Supp. at 51-52 (internal quotation marks omitted). To be objectively unreasonable, a claim must be "lacking in basis" or have an "objective lack of merit." *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690, 2000 WL 98057, at *2 (S.D.N.Y. Jan. 18, 2000), aff'd, 8 F. App'x 90 (2d Cir. 2001).

Even defendants who admitted infringement were able to collect attorney's fees when a plaintiff sought excessive damages. *Baker v. Urban Outfitters, Inc.* 254 F. Supp. 2d 346 (S.D.N.Y. 2003), aff'd unpub., 249 Fed. Appx. 845 (2d Cir. 2007). In *Baker*, the plaintiff sought damages in the amount of $260,000, despite the fact that defendant earned gross profits of $3,896 and plaintiff's past practice was to license his photographs for less than $100. The Court therefore granted partial summary judgment to limit damages to a maximum of $3,896. Plaintiff continued to be "contumacious and disruptive" and the judge determined that plaintiff had brought suit for improper motivation. The Court awarded defendant almost $400,000 in fees under the Copyright Act, plus additional sums on other bases.

Here, Plaintiff and his counsel have acted unreasonably in seeking excessive damages, and it is clear that their motivation for bringing this suit was an attempt to elicit an unwarranted settlement. Accordingly, as a prevailing party, Defendant should be awarded attorney's fees.

24

Additionally, Plaintiff's counsel's bad faith litigation entitles Defendant to attorney's fees (1) as sanctions under FRCP 11; (2) as provided by 28 U.S.C. § 1927; and (3) under the Court's inherent equitable power to award such fees.

Federal Rule of Civil Procedure 11, states that

"The signature of an attorney … constitutes a certificate by the signer that … that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. …If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it… an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

Such sanctions have been awarded in copyright cases where plaintiff's attorney did not reasonably inquire in to the basis for the copyright count. *Warner Bros., Inc. v. Dae Rim Trading, Inc*., 677 F. Supp. 740, 765 (S.D.N.Y. 1988), rev'd on other grounds, 877 F.2d 1120 (2d Cir. 1989).

Additionally, 28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Lastly, the Court has inherent power to award attorney's fees. The general rule in federal courts is that a litigant cannot recover his counsel fees. *See Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S., at 257, 95 S.Ct., at 1621. One of the recognized common law exceptions to the American rule against fee shifting is that attorney's fees may be awarded where the party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*. at 258–59.

The federal courts' power to award bad faith fees arises from "a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers v. NASCO, Inc*., 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal quotation marks and brackets omitted); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986). In order to award bad faith fees, the district court must find that the losing party's claim was (1) meritless; and (2) brought for improper purposes such as harassment or delay. *See Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir.1985).

Plaintiff and his counsel clearly did not make any investigation into whether any actual damage occurred before they alleged infringement by Defendant. They claimed actual damages that were wildly out of proportion for what any use of the O'Neil Photograph could possibly be worth.  It was obvious from before the filing of the Complaint that these allegations were baseless. Plaintiff knew that the O'Neil Photograph had no value because Ms. Ratajkowski was unidentifiable, and therefore he had suffered no actual damages at the time that he filed his Complaint. Additionally, the Instagram Stories Post was automatically deleted, making any allegations of damages even more unreasonable. Plaintiff and his counsel also did not do any research into whether or not Emrata has anything to do with the subject matter of his complaint despite forcing Emrata to defend this case, before they admitted that they have no case against Emrata.  At a minimum, Emrata should be awarded its attorney's fees and costs.

As this Court is aware, this is not uncharacteristic for Plaintiff's counsel, Mr. Liebowitz. An award of attorney's fees and costs will be another step forward in deterring his future bad-faith litigation tactics.

Thus, Defendant should be awarded her attorney's fees and costs.

## V.    CONCLUSION

Plaintiff has failed to show ownership of a valid copyright – the most fundamental element of a copyright infringement claim – as he has not produced any evidence that the O'Neil Photograph is covered by the '330 Registration, or that the O'Neil Photograph is sufficiently original to warrant copyright protection. Plaintiff has also not shown that the Instagram Stories Post could qualify as anything other than a transformative fair use. Plaintiff also brought this suit despite the undisputed facts that Plaintiff was always aware that no damages exist.

Such unreasonable and unsupported claims show clear bad faith and a harassing motive. Accordingly, summary judgment should be granted for Defendant, and she should be awarded attorney's fees and costs.

Dated: September 9, 2020
     New York, New York

              NIXON PEABODY LLP

              **/s/Daniel Adam Schnapp/**
              Daniel A. Schnapp
              55 W. 46th Street
              New York, NY 10036
              (212) 940-3026
              dschnapp@nixonpeabody.com
              *Attorneys for Defendants*