UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT O'NEIL,

                              Plaintiff,

          - against –


EMILY RATAJKOWSKI and
EMRATA HOLDINGS, LLC

                              Defendant.

1:19-cv-09769 (AT)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY AGAINST DEFENDANT
RATAJKOWSKI FOR COPYRIGHT INFRINGEMENT AND IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ATTORNEYS' FEES**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iv

PRELIMINARY STATEMENT ...................................................................................... 1

UNCONTROVERTED FACTS ....................................................................................... 3

LEGAL STANDARD ....................................................................................................... 7

ARGUMENT ..................................................................................................................... 7

POINT I:   THERE ARE NO ISSUES OF MATERIAL FACT CONCERNING THE
ELEMENTS OF PLAINTIFF'S INFRINGEMENT CLAIM ................................... 8

  A.  PLAINTIFF OWNS A VALID COPYRIGHT TO THE PHOTOGRAPH ............................................... 8

   (1)  There is No Issue of Material Fact Concerning Ownership ......................................... 8

   (2)  There is No Issue of Material Fact Concerning the Photograph's Originality ........... 10

  B.  RATAJKOWSKI COPIED PLAINTIFF'S WORK WITHOUT AUTHORIZATION ........................... 13

POINT II:  THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW ............................. 14

  A.  THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE ............................................... 14

   (1)  Ratajkowski's Secondary Use is NOT Transformative ............................................... 14

    (a)  The Photograph Was Used For Illustrative Purposes, Rather Than To Highlight Any
Genuine Public Controversy Surrounding The Photograph ...................................... 15

    (b)  Ratajkowski Did Not Provide Any Novel Insight and Her Subjective Intent is Not
Relevant to the Inquiry ............................................................................................. 16

   (2)  Ratajkowski's Use is Commercial Rather Than Non-Profit ....................................... 18

   (3)  Ratajkowski's Use is in Bad Faith ............................................................................. 19

  B.  THE SECOND FACTOR IS LIKELY NEUTRAL (BUT CARRIES MINIMAL WEIGHT) ................. 19

  C.  THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT PUBLISHED A
FULL-COLOR, FULL-SCALE REPRODUCTION OF THE IMAGE WITHOUT ALTERATION ......... 20

D.   THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET ...................................................... 21

POINT III:   DEFENDANT'S REMAINING AFFIRMATIVE DEFENSES SHOULD BE DISMISSED AS A MATTER OF LAW .................................................. 23

A.   THE FIRST DEFENSE FOR "FAILURE TO STATE" A CLAIM SHOULD BE DISMISSED ............. 23

B.   THE FIFTH DEFENSE OF "ESTOPPEL" SHOULD BE DISMISSED ............................................. 24

C.   THE SIXTH DEFENSE OF "WAIVER" SHOULD BE DISMISSED ............................................... 25

D.   THE SEVENTH DEFENSES OF "AUTHORIZED USE, LICENSE, CONSENT AND ACQUIESCENCE" WAIVER SHOULD BE DISMISSED ......................................................................... 25

E.   THE TENTH DEFENSE OF "CONSTITUTIONAL DEFENSES" SHOULD BE DISMISSED ............. 26

F.   THE ELEVENTH DEFENSE OF "COPYRIGHT MISUSE" SHOULD BE DISMISSED ..................... 27

G.   THE THIRTEENTH DEFENSE OF "UNCLEAN HANDS" SHOULD BE DISMISSED ..................... 27

POINT IV:   DAMAGES SUFFERED ARE NOT AN ELEMENT OF INFRINGEMENT ........ 28

POINT V:   DEFENDANT'S REQUEST FOR ATTORNEYS' FEES, COSTS AND SANCTIONS SHOULD BE DENIED ...................................................... 29

CONCLUSION ............................................................................................................. 30

# TABLE OF AUTHORITIES

## CASES

*Agence France Presse v. Morel*,
  No. 10-CV-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014) ..................... 28

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 247 (1986) ......................................................................................................... 7

*Arista Records LLC v. Lime Grp. LLC*,
  No. 06 CV 5936 KMW, 2011 WL 1226277, at *1 (S.D.N.Y. Mar. 29, 2011) ........................ 28

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) ....................................................................................................... 23

*Associated Press* ...................................................................................................................... 25

*Associated Press v. Meltwater U.S. Holdings*,
  931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) ...................................................................... passim

*Authors Guild v. Google, Inc.*,
  804 F.3d 202, 220 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1658 (2016) ................................ 20

*Barcroft Media, Ltd. v. Coed Media Group, LLC*,
  No. 16-cv-7634 (JMF), 2017 WL 5032993 at *6 (S.D.N.Y. 2017) .................................. 15, 17

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
  758 F.Supp. 1522, 1539–40 (S.D.N.Y.1991) ........................................................................ 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007) ....................................................................................................... 23

*Blanch v. Koons*,
  467 F.3d 244, 251 (2d Cir. 2006) .................................................................................... passim

*BMG Media USA, Inc. v. Gossip Cop Media, Inc.*,
  196 F.Supp. at 404-405 (S.D.N.Y. 1996) ............................................................................. 16

*Brammer v. Violent Hues Prods.*, LLC,
  922 F.3d 255, 263 (4th Cir. 2019) ........................................................................................ 17

*Bryant v. Media Right Productions, Inc.*,
  603 F.3d 135, 144 (2d Cir. 2010) .......................................................................................... 29

*BWP Media USA v. Gossip Cop Media Inc,*
   196 F.Supp.3d at 401 (S.D.N.Y. 2016)....................................................................... 8

*Campbell v. Acuff– Rose Music, Inc.,*
   510 U.S. 569, 579 (1994)............................................................................... passim

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*
   150 F.3d 132, 137 (2d Cir. 1998)....................................................................... 8

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 323 (1986)................................................................................... 7

*Coach, Inc. v. Kmart Corps.,*
   756 F. Supp. 2d 421, 428 (S.D.N.Y. 2010) ............................................... 27

*Computer Assoc. Int'l v. Altai, Inc.,*
   982 F.2d 693, 715 (2d Cir.1992)...................................................................... 13

*Cruz v. Cox Media Grp., LLC,*
   444 F. Supp. 3d 457, 464–65 (E.D.N.Y. 2020) ........................................ 11

*Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.,*
   535 F. Supp. 2d 542 (E.D.N.C. 2008) ......................................................... 11

*Davis v. The Gap Inc.,*
   246 F.3d 152, 175 (2d Cir. 2001)................................................................... 19

*DiCola v. SwissRe Holding (North America), Inc.,*
   996 F.2d 30, 32 (2d Cir. 1993)......................................................................... 7

*Earth Flag Ltd. v. Alamo Flag Co.,*
   153 F. Supp. 2d 349 (S.D.N.Y. 2001) .......................................................... 12

*Eclaire Advisor Ltd. v. Daewoo Engineering Co.,*
   375 F.Supp.2d 257, 260 (S.D.N.Y. 2005) ................................................. 23

*Eldred v. Ashcroft,*
   537 U.S. 186, 190 (2003)................................................................................. 26

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340, 361 (1991).......................................................................... 8, 24

*Ferdman v. CBS Interactive Inc.,*
   342 F. Supp. 3d 515, 530 (S.D.N.Y. 2018) ............................................... 10

*Fonar Corp. v. Domenick*,
  105 F.3d 99, 105 (2d Cir. 1997)............................................................. 9

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
  82 F.Supp.2d 126, 130 (S.D.N.Y. 1999) ................................................ 27

*Goodman v. Universal Beauty Prods. Inc.*,
  No. 17-cv-1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018) ............................ 9

*Graham v. James*,
  144 F.3d 229, 236 (2d Cir. 1998)............................................................ 25

*Harper & Row v. Nation Enterprises* (1985)
  471 U.S. 539, 562 ................................................................... passim

*Hart v. Dan Chase Taxidermy Supply Co.*,
  86 F.3d 320, 322 (2d Cir. 1996)............................................................ 13

*Hirsch v. Complex Media, Inc.*,
  No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) ............... 16

*Iantosca v. Elie Tahari, Ltd.*,
  No. 19-CV-04527 (MKV), 2020 WL 5603538, at *6 (S.D.N.Y. Sept. 18, 2020).................... 1

*In re Moncier*,
  550 F. Supp. 2d 768, 792 (E.D. Tenn. 2008), *aff'd sub nom. In re Moncher*, 329 F. App'x 636
  (6th Cir. 2009)............................................................................ 12

*Infinity Broadcast Corp. v. Kirkwood*,
  150 F.3d 104, 108 & n. 2 (2d Cir. 1998) ............................................. passim

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
  413 F.3d 257 (2d Cir. 2005)................................................................. 8

*Keane Dealer Serv., Inc. v. Harts*,
  968 F.Supp. 944, 948 (S.D.N.Y. 1997) ................................................... 24

*Konangataa v. Am. Broadcasting Companies, Inc.*,
  No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017)................... 15

*Mannion v. Coors Brewing Co.*,
  377 F.Supp.2d 444, 451 (S.D.N.Y. 2005) ................................................ 10

*Mantel v. Microsoft*,
  No. 16-cv-5277 (AJN), 2018 WL 1602863, at *5 (S.D.N.Y. Mar. 29, 2018)..................... 9

*Marvel Characters, Inc. v. Simon,*
   310 F.3d 280, 292 (2d Cir.2002)...................................................................... 24

*Masi v. Moguldom Media Grp. LLC,*
   No. 18 CIV. 2402 (PAC), 2019 WL 3287819, at *4 (S.D.N.Y. July 22, 2019) ....................... 9

*Matthew Bender & Co. v. W. Pub. Co.,*
   158 F.3d 674 (2d Cir. 1998)............................................................................ 11

*Matthew Bender & Co. v. West Publ'g Co.,*
   240 F.3d 116, 122 (2d Cir. 2001)....................................................................... 29

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC,*
   842 F.Supp.2d 682, 713 (S.D.N.Y. 2012) .......................................................... 24, 27

*Monge v. Maya Magazines, Inc.,*
   688 F.3d 1164, 1176 (9th Cir. 2012) .................................................................... 17

*Monster Communications, Inc. v. Turner Broadcasting,*
   935 F.Supp. 490, 494 (S.D.N.Y. 1996) ................................................................. 20

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,*
   166 F.3d 65, 74–75 (2d Cir. 1999)...................................................................... 26

*Nunez v. Caribbean Int'l News Corp.,*
   235 F.3d 18, 25 (1st Cir. 2000)......................................................................... 15

*NXIVM Corp. v. Ross Inst.,*
   364 F.3d 471, 478 (2d Cir. 2004)................................................................... passim

*Oriental Art Printing, Inc. v. Goldstar Printing Corp.,*
   175 F. Supp. 2d 542, 546 (S.D.N.Y. 2001) *aff'd mem.,* 34 F. App'x 401 (2d Cir. 2002) ........ 11

*Otto v. Hearst Commc'ns, Inc.,*
   345 F. Supp. 3d 412 (S.D.N.Y. 2018) ................................................................... 7

*Overseas Direct Imp. Co. v. Family Dollar Stores Inc.,*
   No. 10 Civ. 4919 (JGK), 2013 WL 5988937, at * 2 (S.D.N.Y. Nov. 12, 2013)..................... 29

*Psihoyos v. Pearson Educ., Inc.,*
   855 F. Supp. 2d at 129 ................................................................................. 24

*Republic of Ecuador v. Chevron Corp.,*
   638 F.3d 384, 400 (2d Cir.2011)........................................................................ 24

*Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*,
  10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) ........................................................ 18

*Ringgold v. Black Entertainment Television, Inc.*,
  126 F.3d 70, 79 (2d Cir. 1997)......................................................... passim

*Ringgold*, 126 F.3d at 80-81 ........................................................................... 21

*Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.*,
  672 F.2d 1095, 1099 (2d Cir.), *cert. denied*, 459 U.S. 826, (1982)........................ 26

*S.E.C. v. Smith*,
  798 F.Supp.2d 412, 422 (N.D.N.Y.2011), *aff'd*, 710 F.3d 87 (2d Cir.2013)............................ 30

*Sands v. CBS Interactive Inc.*,
  No. 18-CV-7345 (JSR), 2019 WL 1447014, at *3 (S.D.N.Y. Mar. 13, 2019) ........................ 11

*Sarl Louis Feraud Intern. v. Viewfinder, Inc.*,
  627 F.Supp.2d 123, 131 (S.D.N.Y. 2008) ................................................ 14

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
  691 F.3d 182, 186 (2d Cir. 2012)............................................................... 8

*Sony Corp. of America v. Universal City Studios, Inc.*,
  464 U.S. 417, 450 (1984)............................................................................ 22

*Telebrands Corp. v. Del Labs., Inc.*,
  719 F. Supp. 2d 283, 295 (S.D.N.Y. 2010) ........................................... 12

*Torain v. Clear Channel Broad., Inc.*,
  651 F. Supp. 2d 125, 145 (S.D.N.Y. 2009) ............................................ 25

*Viva Video, Inc. v. Cabrera*,
  9 F. App'x 77, 80 (2d Cir. 2001)............................................................. 29

*Whimsicality, Inc. v. Rubie's Costume Co., Inc.*,
  891 F.2d 452, 455 (2d Cir. 1989)............................................................. 9

Plaintiff Robert O'Neil ("Plaintiff" or "O'Neil") respectfully submits this memorandum of law in support of his motion for partial summary judgment on liability for copyright infringement against Defendant Emily Ratajkowski ("Defendant" or "Ratajkowski") and in opposition to Defendant's motion for summary judgment and attorneys' fees and sanctions.

## PRELIMINARY STATEMENT

**"Equally unavailing is Defendant's argument that its use of the Photograph is *de minimis* simply because reposting another's picture has become commonplace on social media . . . . Defendant offers no support for this contention, which, if credited, would represent a seismic shift in copyright protection. There is nothing 'trivial' about a business utilizing a professional photographer's work to promote its products."**

- *Iantosca v. Elie Tahari, Ltd.,* No. 19-CV-04527 (MKV), 2020 WL 5603538, at *6 (S.D.N.Y. Sept. 18, 2020)

_____

**"I think that just the sort of internet etiquette that I've come up with is that people will share my images and I share their images."**

- Emily Ratajkowski - Deposition Transcript (24:13-21)

This is an infringement action involving a famous celebrity's unauthorized use of a copyrighted photograph of herself (the "the Photograph") to promote her brand on Instagram, which boasts over 26 million followers. Plaintiff is a professional New York-based paparazzo who earns a living capturing "candid" images of celebrities in public view.

There is no material dispute of fact concerning the elements of Plaintiff's infringement claim which requires a showing of (a) valid copyright ownership; and (b) actual copying without authorization. Plaintiff is in possession of a valid copyright registration issued within the last five years, and submits evidence showing that the Photograph is on deposit with the registration. Defendant's claim that the Photograph lacks originality is meritless.  Further, Defendant readily

admits that she copied Plaintiff's work for use on her Instagram account and did not have Plaintiff's authorization to do so.  Accordingly, Plaintiff respectfully requests that the Court grant summary judgment on the two elements of Plaintiff's infringement claim.

Defendant alleges various defenses to infringement liability.  These are: (1) failure to state a claim; (2) "non-infringement"; (3) "invalidity or unenforceability of copyright"; (4) fair use; (5) estoppel; (6) waiver; (7) "authorized use, license, consent, acquiescence"; (8) "constitutional defenses", (9) copyright misuse; 10) "scenes a faire and merger"; 11) unclean hands.

As demonstrated below, none of these defenses are colorable.  Indeed, in her opening brief, Defendant only managed to brief a single affirmative defense: fair use. However, Ratajkowski's addition of a generic two-word phrase "mood forever" below the display of the Photograph in full color and full-scale does not transform the underlying message of the Photograph.  No reasonable jury could surmise that by looking at the Instagram Post, Ratajkowski's use of the phrase "mood forever" was making a comment about her alleged on-going struggle with paparazzi.  Defendant's *ex post facto* attempt to manufacture a public controversy by invoking Ratajkowski's own subjective state-of-mind concerning her intent behind the "mood forever" phrase is meritless.

Finally, Defendant's complaint that she is entitled to "privacy" whilst parading about in the public spotlight is unfounded. Once she enters into the public sphere, Plaintiff and his fellow paparazzi are legally entitled to photograph her – and she knows that.  In short, the Court should GRANT Plaintiff's motion for partial summary judgment against Ratajkowski on the issue of liability for copyright infringement and summarily deny her motion to dismiss.

## UNCONTROVERTED FACTS

### Plaintiff Robert O'Neil

O'Neil is an professional photographer who takes photographs of celebrities and licenses them for a fee [Plaintiff's Statement Pursuant to Local Rule 56.1. ("PS") ¶¶ 1,4]  O'Neil has been a professional photographer since 2011.  [PS ¶ 2] O'Neil's artistic style is to photograph celebrities in public from a distance so that he can get "candid" shots. [PS ¶¶ 5-6]

After taking photographs of celebrities, O'Neil uploads them to his agency, Splash News and Picture Agency ("Splash"), which in turn licenses to third party users and remits payment to O'Neil.  [PS ¶¶ 7, 8]

### Defendant Emily Ratajkowski

Ratajkowski is a professional model and actress whose likeness is used for campaigns and advertisements.  [PS ¶ 9, 12] Ratajkowski owns and operates a clothing company called Inamorata that sells bathing suits and ready-to-wear clothes for women. [PS ¶ 13]  Ratajkowski owns and operates a company called Emrata Inc. which provides Ratajkowski's services as a working actress and model. [PS ¶¶ 14,17] All the money that Ratajkowski makes through her status as a public figure, including through her Instagram account, is channeled through Emrata Inc.  [PS ¶ 18]

### The Photograph of Emily Ratajkowski – September 13, 2019

On September 13, 2019, Plaintiff photographed Ratajkowski on a public New York City sidewalk holding a bouquet of flowers in front of her face (the "Photograph").  [PS ¶¶ 20, 23] In creating the Photograph, Plaintiff used his skill, expertise and judgment as a professional photographer to select the subject matter, timing, location, angle, perspective, depth, distance from subject, lighting, camera lens, camera equipment, filters, and post-production edits. [PS ¶

21]

**Plaintiff's Licensing of the Photograph – September 13, 2019**

After creating the Photograph, Plaintiff uploaded the Photograph to Splash, which makes Plaintiff's photographs available for licensing in exchange for a fee. [PS ¶ 24]

**Ratajkowski's Re-Publication of the Photograph – September 18, 2019**

On or about September 18, 2019, Ratajkowski posted the Photograph to her Instagram account at URL https://www.instagram.com/emrata/. [PS ¶ 25] Ratajkowski first saw the Photograph on-line the day after it was taken but does not recall where she found the Photograph on-line. [PS ¶¶ 26-27] Ratajkowski posted a full-scale, full color version of the Photograph to her Instagram account without any modification, but placed the text caption "mood forever" underneath the Photograph. [PS ¶¶ 29-31]

**Ratajkowski's Lack of Authorization**

Ratajkowski did not seek Plaintiff's permission to publish the Photograph on her Instagram account, which has approximately 26.8 million followers, nor did Plaintiff grant Ratajkowski authorization to copy the Photograph. [PS ¶ 32-33] Ratajkowski did not obtain a license from Splash to display the Photograph on her Instagram page. [PS ¶ 34]

Prior to Ratajkowski's publication of the Photograph, and prior to initiation of this lawsuit, there was no communication between Plaintiff and Ratajkowski. [PS ¶ 35-36]

**Ratajkowski's Practice of Posting Photographs to Her Instagram Account**

When Ratajkowski posts photographs of herself from paid photo shoots on social media, she discloses that the photographs are the product of a paid photo shoot and are sponsored posts. [PS ¶ 38] Even Ratajkowski often posts photographs to her Instagram account, Ratajkowski does not generally credit the Photographer [PS ¶ 40, 44]

4

When Ratajkowski posts photographs to her Instagram account that are sourced from other Instagram pages, Tumbler, or on-line blogs, she does not seek permission to re-publish such photographs.  [PS ¶ 47] Ratajkowski testified that because third parties post images of herself to the internet, she does not need permission from anyone to post photographs to her Instagram account because "it's sort of like the language of the internet."  [PS ¶ 48] Ratajkowski also testified that she does not need permission from anyone to post photographs to her Instagram account because: "I think that just the sort of internet etiquette that I've come up with is that people will share my images and I share their images." [PS ¶ 49]

Ratajkowski does not recall ever contacting a photographer for permission to re-publish photographs to her Instagram account that are sourced from third-party publications.  [PS ¶ 50] When Ratajkowski publishes photographs to her Instagram account, she does not credit the photographer unless she has a personal relationship with the photographer.  [PS ¶ 51]

**Ratajkowski's Monetization of Her Instagram Account**

On some occasions, third parties pay Ratajkowski to post photographs to her Instagram account. [PS ¶ 52] Ratajkowski estimates that between 500,000 to one million of her Instagram followers view her Instagram stories in a 24-hour period. [PS ¶ 55] Ratajkowski estimates that she has made more than $100,000 from her Instagram stories within the last three years. [PS ¶ 56]

On Ratajkowski's Instagram account, she provides a hyperlink to her commercial clothing company Inamorata directly below her name.  [PS ¶ 57] Ratajkowski sometimes pays photographers who takes photographs that are displayed on her clothing company's website. [PS ¶ 58]

Before 2019, Ratajkowski had access to Splash for the purpose of downloading images of herself "for free" in order to post on-line. [PS ¶ 59] Prior to Ratajkowski's unauthorized use of the Photograph in this case, she was aware that photographs were available for license on Splash in exchange for a fee. [PS ¶ 60]

**Ratajkowski's Experience With Copyrights**

Ratajkowski has been accused of copyright infringement in the past by a paparazzi photographer who took a photograph of Ratajkowski outside of her New York City apartment. [PS ¶ 61] Ratajkowski was also aware that other celebrities had been accused of copyright infringement by paparazzi photographers for posting images without permission [PS ¶ 62]

Ratajkowski has reached out to companies and told them to stop using her face as a way to promote their products.  [PS ¶ 63] Ratajkowski testified that "[i]f a brand was using an image of me to sell product, I would have an issue . . ." .  [PS ¶ 64]

**Registration of the Photograph – October 3, 2019**

Plaintiff authorized his counsel, Liebowitz Law Firm, PLLC ("LLF") to register the Photograph with the Copyright Office ("USCO") on his behalf.  [PS ¶ 67] On or about October 3, 2019, LLF registered the Photograph, bearing content title "Emily Ratajkowski20190913_0005.jpg", with the USCO by filing an application and depositing the Photograph with the USCO as part of that application.  [PS ¶¶ 67, 71]

O'Neil is in possession of a registration certificate for the Photograph, bearing number VA # 2-173-330, with effective date October 3, 2019 (the "330 Registration") [PS ¶ 69] O'Neil obtained the 330 Registration on October 3, 2019, within five years after first publication of the Photograph, which took place on September 13, 2019.  [PS ¶ 70] LLF's registration of the

6

Photograph on O'Neil's behalf was carried out in accordance with the Firm's routine practice of registering photographs with the USCO on behalf of its clients.  [PS ¶ 72]

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The burden is on the moving party to establish the lack of any factual issues.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  An otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial."  *Anderson,* 477 U.S. at 248.  "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense - on which the defendant bears the burden of proof at trial - a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (*quoting DiCola v. SwissRe Holding (North America), Inc.*, 996 F.2d 30, 32 (2d Cir. 1993)).

## **ARGUMENT**

On summary judgment, the Court may determine liability against a defendant on plaintiff's copyright infringement claim.  *See Otto v. Hearst Commc'ns, Inc.,* 345 F. Supp. 3d 412 (S.D.N.Y. 2018).

**POINT I:**      **THERE ARE NO ISSUES OF MATERIAL FACT CONCERNING THE ELEMENTS OF PLAINTIFF'S INFRINGEMENT CLAIM**

To establish a claim of copyright infringement, plaintiff must show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998).

**A.**      **PLAINTIFF OWNS A VALID COPYRIGHT TO THE PHOTOGRAPH**

**(1)**      **There is No Issue of Material Fact Concerning Ownership**

"A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the certificate holder's copyright ownership, as well as of the truth of the facts stated in the registration." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.,* 196 F.Supp.3d 395, 401 (S.D.N.Y. 2016) (*citing* 17 U.S.C. § 410(c)).  A certificate of copyright registration is *prima facie* evidence of both valid ownership of copyright <u>and</u> originality. *Scholz Design, Inc. v. Sard Custom Homes, LLC,* 691 F.3d 182, 186 (2d Cir. 2012).  To be timely, a certificate of registration must be obtained "before or within five years after first publication" of a work. *Island Software & Computer Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257 (2d Cir. 2005).

Here, Plaintiff is in possession of a certificate of the 330 Registration from the USCO. [PS ¶ 69]  The Photograph is on deposit with the 330 Registration.  [PS ¶ 68, 71] The registration of the Photograph was carried out in accordance with LLFs' routine practice of registering photographs on behalf of its clients.  [PS ¶ 72]  *See* F.R.E. 406 (evidence showing "an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . . routine practice.").

The 330 Registration was obtained within five years after first publication of the work. [PS ¶ 70]  Accordingly, Court should treat the 330 Registration as *prima facie* evidence of Plaintiff's valid copyright ownership. *Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 455 (2d Cir. 1989).  "[T]he validity of a registration may be rebutted by proof of a certificate holder's fraud on the Copyright Office, though the party seeking to establish such fraud bears a 'heavy burden.'" *BWP Media*, 196 F.Supp.3d at 401 (citation omitted); *see also Fonar Corp. v. Domenick*, 105 F.3d 99, 105 (2d Cir. 1997) (*"the presumption [of validity] may be overcome only by 'proof of deliberate misrepresentation.'"*).

Here, the record is devoid of any evidence that Plaintiff defrauded the USCO in the process of obtaining the 330 Registration. Moreover, despite ample opportunity to do so, Ratajkowski failed to produce any evidence to challenge the validity of the 330 Registration.  *See Iantosca,* 2020 WL 5603538, at *4 (rejecting defendant's challenge to validity of copyright based on "speculation" and noting that "[i]t is the Defendant's obligation, during discovery, to contact the USCO and request deposit copies to be used to rebut the validity of the copyright registration.") (citing *Goodman v. Universal Beauty Prods. Inc.*, No. 17-cv-1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018)); *see also Masi v. Moguldom Media Grp. LLC*, No. 18 CIV. 2402 (PAC), 2019 WL 3287819, at *4 (S.D.N.Y. July 22, 2019) ("Defendant's speculative statements regarding the scope of the copyright do not create a triable issue of fact as to whether the Registration covers the photographs at issue.")

Defendant's reliance on *Mantel v. Microsoft*, No, 16-cv-5277 (AJN), 2018 WL 1602863, at *5 (S.D.N.Y. Mar. 29, 2018) is misplaced.  In *Mantel*, the court declined to credit the plaintiff's affidavit because it referred to documents that were not produced during the course of discovery.  As such, the plaintiff's evidence of registration was precluded as a form of sanctions.

Here, in contrast, all documents submitted on this motion were produced during the course of discovery.

The matter of *Ferdman v. CBS Interactive Inc.,* 342 F. Supp. 3d 515, 530 (S.D.N.Y. 2018) is also distinguishable on similar grounds.  In *Ferdman*, the court precluded documentary evidence of registration submitted for the first time on summary judgment.  Further, the "[p]laintiff also testified that he did not have a copy of what was submitted to the Copyright Office" *Ferdman,* 342 F. Supp. 3d at 530.  Here, in contrast, there is no issue of discovery sanctions and Plaintiff has submitted competent, unrebutted evidence that the Photograph is on deposit with the USCO as part of the 330 Registration.  [PS ¶¶ 68, 71 (Halperin Declr. ¶¶ 7-9)] As such, the Court should adopt the summary judgment rulings in *Goodman, Masi* and *Iantosca* and find that the 330 Registration covers the Photograph at issue.

**(2)      There is No Issue of Material Fact Concerning the Photograph's Originality**

"Almost any photograph 'may claim the necessary originality to support a copyright.'" *Mannion v. Coors Brewing Co.,* 377 F.Supp.2d 444, 451 (S.D.N.Y. 2005) (*citing* 1 NIMMER § 2.08[E][1], at 2-129.  Originality may be found in a photograph where it "does not depend on creation of the scene or object to be photographed . . . and which resides [instead] in such specialties as angle of shot, light and shade, exposure, effects achieved by means of filters, developing techniques, etc." *Mannion,* 377 F.Supp.2d at 451 (internal quotations omitted). "[T]o the extent a photograph is original in this way, copyright protects not what is depicted, but rather how it is depicted." *Id, see also Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (explaining that the protectible, original elements of a photograph include "almost any other variant involved.").

Even though other paparazzi can photograph Ratajkowski on the street, there can be no dispute that Plaintiff's photographic rendition of Ratajkowski here meets the minimum threshold of originality sufficient for copyright protection. *Sands v. CBS Interactive Inc.,* No. 18-CV-7345 (JSR), 2019 WL 1447014, at *3 (S.D.N.Y. Mar. 13, 2019) (paparazzo's candid photographs of celebrity actors on public film set deemed original); *Iantosca*, 2020 WL 5603538, at *5 ("a photograph of a [fashion] model, is a typical 'creative' work and therefore entitled to copyright protection"); *Cruz v. Cox Media Grp., LLC*, 444 F. Supp. 3d 457, 464–65 (E.D.N.Y. 2020) (amateur photograph of suspected terrorist being arrested found original due to timing); *Mannion*, 377 F.Supp.2d at 455 ("[t]here can be no serious dispute that the Garnett Photograph is an original work. The photograph does not result from slavishly copying another work and therefore is original in the rendition.").

In composing his rendition of Ratajkowski in public view, Plaintiff selected the subject matter, timing, location, angle, perspective, depth, distance from subject, lighting, camera lens, camera equipment, filters, and post-production edits. [PS ¶ 21]  As such, Ratajkowski's challenge to the originality of the Photograph fails as a matter of law.

Relying on the same line of "slavish copying" cases rejected by the courts in *Sands* and *Cruz*, Defendant argues that the Photograph does not qualify for copyright protection because it lacks any "creative spark." [D's Memo at 13]   But none of the cases cited by Defendant in its opening brief involve photographs of celebrities or human beings.  Rather, they involve generic photos of two-dimensional objects or product-description shots.[1]

---

[1] *See, e.g., Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 546 (S.D.N.Y. 2001) *aff'd mem.,* 34 F. App'x 401 (2d Cir. 2002) (generic photos of Chinese restaurant menus); *Matthew Bender & Co. v. W. Pub. Co.,* 158 F.3d 674 (2d Cir. 1998) (printed compilations of judicial opinions); *Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.,* 535 F. Supp. 2d 542 (E.D.N.C. 2008) (product-description photos of motorcycle lights); *Telebrands*

As noted, Judge Rakoff rejected similar arguments made by the defendant in *Sands,* 2019 WL 1447014, at *3 where a paparazzo's photographs of celebrity actors in public were deemed "a far cry from the 'slavish copies' that courts have held - in rare cases - to lack sufficient originality for copyright protections." Similarly, in *Cruz,* Judge Garaufis adopted the holding in *Sands* and found that an amateur's photograph of a suspected terrorist being arrested in Battery Park was sufficiently original.  *Cruz,* 444 F. Supp. 3d at 465 ("the Photograph reflects creative choices, including Cruz's timing for when he took the Photograph.").[2]

Ratajkowski's argument that the non-exclusivity of the Photograph somehow deprives the Photograph of copyright protection is also meritless. First, this argument is not supported by any factually analogous caselaw authority.  Second, courts have held that a tourist's photograph of the Eiffel Tower is original, even though the Eiffel Tower is in the public domain and can be photographed by anyone (i.e., any photo of the Eiffel Tower is by definition non-exclusive). *Chicoineau v. Bonnier Corp.*, No. 18-CV-3264 (JSR), 2018 WL 6039387, at *1 (S.D.N.Y. Oct. 16, 2018).

In sum, there is no genuine issue of material fact concerning the validity of the 330 registration and summary judgment should be granted on the first element of Plaintiff's claim.

---

*Corp. v. Del Labs., Inc.,* 719 F. Supp. 2d 283, 295 (S.D.N.Y. 2010) (photograph of "foot file designed to remove calluses and dead skin from a user's feet"); *Earth Flag Ltd. v. Alamo Flag Co.,* 153 F. Supp. 2d 349 (S.D.N.Y. 2001) (a flag consisting of public domain photograph transferred to fabric); *Psihoyos v. Nat'l Geographic Soc'y,* 409 F. Supp. 2d 268 (S.D.N.Y. 2005) (the sand depicted in a photograph of a fossil of dinosaurs).

[2]  The fact that defense counsel, an experienced copyright lawyer, relied exclusively on "slavish copies" cases in his opening brief but failed to bring *Sands or Cruz* to the Court's attention should be deemed unethical. *See In re Moncier*, 550 F. Supp. 2d 768, 792 (E.D. Tenn. 2008), *aff'd sub nom. In re Moncher*, 329 F. App'x 636 (6th Cir. 2009) (recognizing an attorney's "ethical obligation to call to the Court's attention precedent contrary to his stated position.")

The Court should also therefore dismiss the third affirmative defense for "invalidity or unenforceability of copyright" and twelfth affirmative defense of "scenes a faire and merger."[3]

## B.   RATAJKOWSKI COPIED PLAINTIFF'S WORK WITHOUT AUTHORIZATION

There is no factual dispute concerning whether Ratajkowski "actually copied" the Photograph [PS ¶ 10]  *See Otto,* 345 F. Supp. 3d at 425 (finding actual copying took place where "the parties do not contest the fact that Hearst actually copied Otto's photograph for its use in the Esquire Article, nor that the works are substantially similar because they are the same photograph.")

Further, Ratajkowski did not obtain Plaintiff's permission to publish the Photograph [PS ¶¶ 5-9] As such, Ratajkowski violated O'Neil's exclusive rights under section 106 of the Copyright Act because her actual copying amounted to "an improper and unlawful appropriation." *Castle Rock,* 150 F.3d at 137; *Otto* at 425 ("The parties do not dispute Hearst did not have Otto's permission to use the Photograph, making the appropriation unlawful.")

In sum, there is no genuine issue of material fact concerning the two elements of Plaintiff's copyright infringement claim.  *See Otto* at 425 ("because Otto has established that he owns a valid copyright in the image, and because the actual copying and substantial similarity elements have been met, the Court finds that Hearst infringed upon Otto's exclusive right to control the reproduction and distribution of his photograph."). The Court should also therefore

---

[3] The doctrine of *scenes a faire* holds that elements that "follow naturally from the work's theme rather than from the author's creativity" are unprotectible. *Computer Assoc. Int'l v. Altai, Inc.,* 982 F.2d 693, 715 (2d Cir.1992).  Under the merger doctrine, "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *Hart v. Dan Chase Taxidermy Supply Co*., 86 F.3d 320, 322 (2d Cir. 1996).  Defendant fails to cite any authority to support this defense. Moreover, courts routinely find that candid photographs of celebrities or fashion models in public view qualify for copyright protection. *Sands* at *3; *Iantosca* at *5.

dismiss the second affirmative defense of "non-infringement."

**POINT II:     THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW**

Section 107 of the Copyright Act sets out four factors to consider in determining whether a defendant's use of a copyrighted work is a fair use.  These are "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.  As set forth below, examination of these factors demonstrates that Ratajkowski's use of the Photograph does <u>not</u> constitute fair use.

**A.     THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE**

The first factor under 17 U.S.C. § 107(1), which addresses the manner in which the copied work is used, is the "heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).  Courts within the Second Circuit examine three sub-factors to determine the purpose and character of use, including whether the secondary use is: (1) transformative; (2) for commercial purposes; and (3) in bad faith.  *See, e.g.*, *NXIVM Corp. v. Ross Inst.,* 364 F.3d 471, 478 (2d Cir. 2004); *Sarl Louis Feraud Intern. v. Viewfinder, Inc*., 627 F.Supp.2d 123, 131 (S.D.N.Y. 2008).

**(1)     Ratajkowski's Secondary Use is <u>NOT</u> Transformative**

The fair use doctrine "allows for new transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts." *See Campbell v. Acuff– Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  The central purpose of the inquiry is to

determine whether "the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 79 (2d Cir. 1997) (citations omitted).

> **(a)     The Photograph Was Used For Illustrative Purposes, Rather Than To Highlight Any Genuine Public Controversy Surrounding The Photograph**

A photograph may be transformed where "the copyrighted work is itself the subject of the story, transforming the function of the work in the new context." *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993 at *6 (S.D.N.Y. 2017).  Thus, "a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph."  *Id.* (*citing Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) (fair use found where salacious photographs of Miss Puerto Rico Universe were published by newspaper to comment on the controversy surrounding her qualifications to retain the crown); *Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) ("Defendants and other news outlets reported on the Video [of a woman giving birth] and offered social commentary about the phenomenon of someone publicly live-streaming a life event that traditionally is considered personal.").

In contrast, where a defendant uses a photograph as an "illustrative aid" to show what it depicts, secondary use of such photograph will not be deemed transformative. *See, e,g.*, *Barcroft,* 2017 WL 5032993, at *6 ("CMG's articles did not comment on, criticize, or report news *about the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles. CMG's argument, if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about

the subject of that photograph. That is plainly not the law."); *Hirsch v. Complex Media, Inc.*, No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) ("Complex has not established that its Video did anything more than merely describe the subject of Hirsch's Photograph, . . . . That conduct alone does not suffice as transformative."); *Psihoyos v. National Examiner*, 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) (defendant's "use is not transformative, because its piece uses the photo to show what it depicts."); *Otto*, 2018 WL 6510801, *8 ("the use of an image solely to illustrate the content of that image, in a commercial capacity, has yet to be found as fair use in this District."); *BMG Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F.Supp. at 404-405 (S.D.N.Y. 1996) (not transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple…");

Here, Ratajkowski plainly used the Photograph to show her Instagram followers what it depicts: Ratajkowski holding up flowers over her face. Ratajkowski did not offer any commentary directed at the artistic merit of O'Neil's Photograph.  More importantly, Ratajkowski did not comment on the appropriateness of the Photograph, as was the case in *Nunez* and *Konangataa.* Indeed, the controversies at issue in *Nunez* and *Konangataa* were a matter of widespread public interest, rather than the internal thoughts of one person attempting to create buzz for her celebrity namebrand.

### (b)    Ratajkowski Did Not Provide Any Novel Insight and Her Subjective Intent is Not Relevant to the Inquiry

"[U]se of copyrighted material that 'merely repackages or republishes the original is unlikely to be deemed a fair use' and a 'change of format, though useful' is not transformative." *Associated Press v. Meltwater U.S. Holdings*, 931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) (*quoting Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 & n. 2 (2d Cir. 1998) (citation omitted)).  "Even an infringer's separate purpose, by itself, does not necessarily create new

aesthetics or a new work that alter[s] the first [work] with new expression, meaning or message."
*Monge* at 1176.

Here, Ratajkowsi argues that:

"[b]y adding the caption 'Mood Forever,' the objective of the Instagram Stories Post was
to make commentary and criticism of Ms. Ratajkowki's perspective of abusive,
aggressive, and harassing practice of paparazzi constantly following her, even when
buying flowers for a friend. The caption "Mood Forever" is Ms. Ratajkowski's way of
expressing that she will always feel that her privacy has been invaded by the paparazzi.
[D's Memo at 16]

However, Ratajkowski's addition of a generic two-word phrase "mood forever" below

the display of the Photograph does not transform the underlying message of the Photograph.  No

reasonable jury could surmise that by looking at the Instagram Post, Ratajkowski's use of the

phrase "mood forever" was making a comment about her alleged on-going struggle with

paparazzi.  Defendant's *ex post facto* attempt to manufacture a public controversy by invoking

Ratajkowski's own subjective state-of-mind concerning her intent behind the "mood forever"

phrase is meritless. *See, e.g., Brammer v. Violent Hues Prods.*, LLC, 922 F.3d 255, 263 (4th Cir.

2019) ("the difference in the parties' subjective intent is not the proper focus of

the transformation inquiry"); *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir.

1998) ("difference in purpose is not quite the same thing as transformation." ).  "Although a

secondary user may 'go to great lengths to explain and defend his use as transformative,' *Cariou*,

714 F.3d at 707, a simple assertion of a subjectively different purpose, 'by itself, does not

necessarily create new aesthetics or a new work.' *Monge v. Maya Magazines, Inc.*, 688 F.3d

1164, 1176 (9th Cir. 2012)." *Brammer*, 922 F.3d at 263.

17

Indeed, courts have rejected the fair use defense as a matter of law where "wholesale copying sprinkled with written commentary . . . was at best minimally transformative." *Monge*, 688 F.3d at 1176.  In short, no reasonable jury could find Ratajkowski's use transformative.

**(2)     Ratajkowski's Use is Commercial Rather Than Non-Profit**

The fact that Ratajkowski used the Photograph for a commercial rather than a nonprofit purpose also weighs against a finding of fair use.  *Psihoyos*, 1198 WL 336655, at *3 (*citing Campbell*, 510 U.S. at 583-84).  The "crux of the profit/nonprofit distinction is . . . whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562.  Thus, "when the copier directly and exclusively acquires conspicuous financial rewards from its use of the copyrighted material" a finding of fair use is less likely.  *Associated Press,* 931 F.Supp.2d at 551 (quoting *Blanch*, 467 F.3d at 253).

Here, Ratajkowski used the Photograph to promote her commercial brand. The record also shows that Ratajkowski links her Instagram page directly to her commercial clothing company, thereby evincing Defendant's intent to exploit the Photograph.  *See, e.g., Hirsch* at *6 (an inference of commercial use may be drawn where copyrighted work was displayed adjacent to advertisements); *Richard Feiner & Co., Inc. v. H.R. Industries, Inc.*, 10 F.Supp.2d 310, 314 (S.D.N.Y. 1998) (finding that commercial advertisements appearing in conjunction with the unauthorized use of photographs demonstrated a defendant's commercial purpose); *Campbell,* 510 U.S. at 585, 114 S.Ct. 1164 (The use "of a copyrighted work to advertise a product, even in a parody, will be entitled to less indulgence under the first factor of the fair use enquiry than the sale of a parody for its own sake.").[4]

---

[4] Further, because Ratajkowski's secondary use was not transformative, "the question whether

### (3)   Ratajkowski's Use is in Bad Faith

In weighing the first factor, courts may also consider "the propriety of a defendant's conduct."  *NXIVM Corp.,* 364 F.3d at 478 (citations omitted). "As the term itself suggests, '[f]air use presupposes good faith and fair dealing.'  *Associated Press,* 931 F.Supp.2d at 552 (*quoting Harper & Row*, 471 U.S. at 562).

Here, bad faith is evidenced by the fact that Ratajkowski knew that celebrity photographs, including of herself, were available for licensing from Splash.  [PS ¶¶ 59,60] Ratajkowski also recognized that, as an ordinary course of practice, she uses photographs on-line without the copyright holder's permission as a function of "internet etiquette."  [PS ¶¶ 48-49] Further, the omission of any credit besides the Photograph demonstrates Ratajkowski's absence of good faith in her use of the Photograph. *See Rogers*, 960 F.2d at 309 (finding that defendant's "action [in tearing the copyright mark off of the original work] suggests bad faith in defendant's use of plaintiff's work, and militates against a finding of fair use.").

### B.   THE SECOND FACTOR IS LIKELY NEUTRAL (BUT CARRIES MINIMAL WEIGHT)

The second factor examines the "nature of the copyrighted work."  17 U.S.C. § 107(2). Courts consider "(1) whether the work if expressive or creative, with a greater leeway being allowed a claim of fair use where the work is factual or information, and (2) whether the work if published or unpublished."  *Blanch*, 467 F.3d at 256.

 "The mere fact that the original is a factual work . . . should not imply that others may freely copy it," as "authors of factual works, like authors of fiction, should be entitled to copyright protection of their protected expression." *Authors Guild v. Google, Inc*., 804 F.3d 202,

---

the new use is commercial thus acquires an importance it [would] not [otherwise] have...." *Davis v. The Gap Inc.*, 246 F.3d 152, 175 (2d Cir. 2001).

220 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1658 (2016). "Photographic images of actual people, places and events may be as creative and deserving of protection as purely fanciful creations." *Monster Communications, Inc. v. Turner Broadcasting*, 935 F.Supp. 490, 494 (S.D.N.Y. 1996).[5]

Here, the Photograph was published prior to Ratjkowski's use. However, the image itself is creative even though it captured a factual event. Plaintiff's original take on the subject matter renders the image "as creative and deserving of protection as purely fanciful creations." *Monster Comm.*, 935 F.Supp. at 494. However, "courts traditionally have also afforded this factor little weight, characterizing it as 'rarely [ ] determinative.'" *Hirsch v. Complex* at *7 (citing *On Davis v. The Gap, Inc.*, 246 F.3d 152, 175 (2d Cir. 2001)).

## C. THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT PUBLISHED A FULL-COLOR, FULL-SCALE REPRODUCTION OF THE IMAGE WITHOUT ALTERATION

The third factor bearing on fair use is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). The question is whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586.  The Court should consider whether the portion taken is "essentially the heart" of the copyrighted expression. *NXIVM Corp.*, 364 F.3d at 480 (citation omitted). The "most relevant" question for this factor is whether the infringer has taken "no more" than is necessary. *Infinity Broadcast Corp.*, 150 F.3d at 110.  "[T]he more of a copyrighted work that is taken, the less likely the use is to be fair." *Id.* at 109.

As a quantitative matter, Ratajkowski has taken the entire full-color photograph.  [PS ¶

---

[5] *See also Monge,* 688 F.3d at 1177 ("Photos that we now regard as iconic often document an event—whether the flight of the Wright Brothers' airplane, the sailor's kiss in Times Square on V–J Day, the first landing on the moon, or the fall of the Berlin Wall.").

25]  This fact alone weighs against fair use.  *See Associated Press*, 931 F.Supp.2d at 558 ("appropriation of a copyrighted work in its entirety weighs against a finding of fair use").  As a qualitative matter, Defendant has used more of the copyrighted work than was necessary to accomplish her purpose. The Photograph was reproduced in full color and full-scale without any visible modification or alteration.  [PS ¶ 25]  Defendant's wholesale reproduction of the Photograph, without any aesthetic alteration, demonstrates the image's qualitative value.  *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.").

Thus, by opting to expropriate the entire Photograph, Ratajkowski has taken more than what was "necessary" to effectuate her purpose.  *See Otto at \*11* ("where Hearst used the entirety of the image in an article that neither discussed the photograph itself nor transformed its use, no reasonable fact finder could find that the third factor weighs in favor of Defendant).

**D.    THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET**

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).  The Supreme Court declared in *Harper & Row* that "[t]his last factor is undoubtedly the single most important element of fair use." 471 U.S. at 566, (footnote and citation omitted).

The fourth factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Ringgold*, 126 F.3d at 80-81 (*citing Campbell*, 510 U.S. at

590 (quotation omitted)).  A copyright owner is not required to show that actual harm has come to her, *Sony Corp.*, 464 U.S. at 451, but must show merely a "potential" effect on the market for the copyrighted work. *Harper & Row*, 471 U.S. at 568–69. Accordingly, "to negate fair use one need only show that if the challenged use should become widespread, it would adversely affect the *potential* market for the copyrighted work." *Id.*

As a threshold matter, the Court may presume market harm because Ratajkowski's secondary use was not transformative and constituted a wholesale reproduction of O'Neil's original photograph. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) (holding that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright"). "A presumption of market harm "makes common sense[ ] when a commercial use amounts to mere duplication of the entirety of an original." *Campbell*, 510 U.S. at 591.

Even if the presumption does not apply, Defendant's secondary use impairs the actual market for the Photograph because there was a fully functioning market demand for O'Neil's work. [PS ¶24; O'Neil Decl. ¶ 7, Ex. C; O'Neil Tr. 101:2:6]  *See Associated Press*, 931 F.Supp.2d at 559 ("Where there is a fully functioning market for the infringer's use of the copyrighted material, it will be difficult for the infringing party to show that it made fair use without paying a licensing fee") (citing *Harper & Row*, 471 U.S. at 566 n. 9).

Defendant's unauthorized use clearly supplanted the market in which Plaintiff had a reasonable expectation to earn licensing revenue.  *See Otto*, 345 F. Supp. 3d at 432–33 ("Publishing the Photograph without permission essentially destroys the primary market for its use . . . Thus, the publication can reasonably be expected to harm Plaintiff's ability to license the work for publication and use in derivative works.").

Ratajkowski's argument that the Photograph has no economic value because her face is covered may fuel her own narcissistic world view, but does not insulate her from copyright infringement.  Third-party Splash made the photograph available for commercial licensing [PS ¶ 24] which means that an actual commercial market existed for the Photograph (regardless of whether Splash sub-licensed it to another third party).

Indeed, no one licensed the photograph from Jonathan Otto in his case against Hearst, but Judge Woods still found the fourth fair use factor weighed in Otto's favor because he manifested an intent to enter the commercial market. *Otto*, 345 F. Supp. 3d at 432–33 ("The creator of a work should not be precluded from future profits should they lack the marketing prowess to capitalize on their work at the time of creation.")

In sum, because the first, third and fourth factors weigh heavily in Plaintiff's favor, the fair use defense should be dismissed as a matter of law.

## POINT III:   DEFENDANT'S REMAINING AFFIRMATIVE DEFENSES SHOULD BE DISMISSED AS A MATTER OF LAW

### A.   THE FIRST DEFENSE FOR "FAILURE TO STATE" A CLAIM SHOULD BE DISMISSED

A defense based on failure to state a claim must be directed to the pleading.  *See Eclaire Advisor Ltd. v. Daewoo Engineering Co.*, 375 F.Supp.2d 257, 260 (S.D.N.Y. 2005).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To plead a claim of copyright infringement, plaintiff must set forth two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work.  *Feist*

23

*Publ'ns,* 499 U.S. at 361.  Here, Plaintiff's complaint sets forth a plausible set of facts to support

each element of his copyright infringement claim. *See* Complaint, ¶¶ 9-10 (ownership and

validity of copyright); ¶¶ 11-12 (Defendant's unauthorized copying of Plaintiff's work).  As

such, the first affirmative defense should be dismissed

### B.   THE FIFTH DEFENSE OF "ESTOPPEL" SHOULD BE DISMISSED

As to the defense of estoppel, Defendant is required to show "(1) an act constituting a

concealment of facts or a false misrepresentation; (2) an intention or expectation that such acts

will be relied upon; (3) actual or constructive knowledge of the true facts by the wrongdoer; (4)

reliance upon the misrepresentations which causes the innocent party to change its position to its

substantial detriment." *Patriarch Partners VIII, LLC*, 842 F.Supp.2d 682, 713 (S.D.N.Y. 2012).

Courts warn that "[e]stoppel is a drastic remedy and must be utilized sparingly. Clearly, a

successful application of this remedy requires the party asserting estoppel to use due care and not

fail to inquire as to its rights where that would be the prudent course of conduct." *Keane Dealer

Serv., Inc. v. Harts,* 968 F.Supp. 944, 948 (S.D.N.Y. 1997); *Psihoyos v. Pearson Educ., Inc.*, 855

F. Supp. 2d at 129.  In fact, estoppel applies "where the enforcement of the rights of one party

would work an injustice upon the other party due to the latter's justifiable reliance upon the

former's words or conduct." *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 292 (2d Cir.2002)

(citation omitted). Essential to any finding of estoppel is "detrimental reliance on the adverse

party's misrepresentations." *Republic of Ecuador v. Chevron Corp.,* 638 F.3d 384, 400 (2d

Cir.2011).

Here, Defendant has failed to present any evidence to support the elements of an estoppel

claim.  Plaintiff did not make any representations to Defendant at any time after the infringement

was discovered. [PS ¶¶ 35-36 (O'Neil Decl. ¶¶ 12-13)]  For that reason alone, the estoppel

defense fails. Further, there is no evidence to support Ratajkowski's claim that she relied on any representations made by Plaintiff *at any time*.  Once again, there were no communications between Plaintiff and Defendant prior to the filing of this lawsuit [PS ¶ 36 (O'Neil Decl. ¶ 13)] Accordingly, the estoppel defense fails.

## C.   THE SIXTH DEFENSE OF "WAIVER" SHOULD BE DISMISSED

 "Waiver is the voluntary or intentional relinquishment of a known right, or intentional conduct inconsistent with claiming such a right."  *Torain v. Clear Channel Broad., Inc.*, 651 F. Supp. 2d 125, 145 (S.D.N.Y. 2009).  Accordingly, "[i]ntent is the key element in establishing waiver." *Id.* at 146  (citation omitted).  Waiver is an affirmative defense.  Fed.R.Civ.P. 8(c)(1).

Here, no reasonable trier of fact can conclude that O'Neil manifested an intent to intentionally and knowingly relinquish his copyright to the Photograph. Indeed, he made the Photograph available for licensing through Splash.  [PS ¶ 24 (O'Neil Decl. ¶ 7, Ex. C; O'Neil Tr. 101:2:6)] Because Defendant fails to raise a question of fact as to Plaintiff's intent to knowingly waive his rights, the waiver defense fails as a matter of law.

## D.   THE SEVENTH DEFENSES OF "AUTHORIZED USE, LICENSE, CONSENT AND ACQUIESCENCE" WAIVER SHOULD BE DISMISSED

 While "it is a defense to copyright infringement that the alleged infringer possessed a license to use the copyrighted work, *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998), "[t]he burden of proving that a license exists falls on the party invoking the defense." *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F.Supp.2d 537, 561-62 (S.D.N.Y. 2013) (Cote, J.) (citing *Graham*, 144 F.3d at 236).  Further, the defense of acquiescence requires a showing that the copyright has been abandoned.  See *Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F.Supp. 1522, 1539–40 (S.D.N.Y.1991) ("The plaintiff's acquiescence in the defendant's infringing acts

may, if continued for a sufficient period of time and if manifested by overt acts, result in an

abandonment of copyright."( citation and quotation omitted).

Here, there is no record evidence that O'Neil (or anyone else) granted Ratajkowski to use

the Photograph. To the contrary, the evidence shows that she did not have permission.  [PS ¶¶

32-34 (O'Neil Decl. ¶¶  9-11).  Moreover, there is no evidence that Plaintiff abandoned his

copyright.  He promptly sought registration from the USCO and enforced his rights via this

litigation.  [PS ¶¶ 67-69 (O'Neil Declr., ¶ 23, Liebowitz Declr., ¶ 8; Halperin Declr., ¶¶ 7-8)]

Accordingly, these defenses should be dismissed.

## E.   THE TENTH DEFENSE OF "CONSTITUTIONAL DEFENSES" SHOULD BE DISMISSED

Defendant also asserts a First Amendment defense.  However, in order to prove that

Ratajkowski has exercised a right under the First Amendment, she must prove that the four

factors prescribed by 17 U.S.C. § 107, in their totality, weigh in Defendant's favor.  *See, e.g.*,

*Eldred v. Ashcroft*, 537 U.S. 186, 190 (2003) (holding that the codified fair use doctrine under

section 107 "contains built in First Amendment accommodations."); *Roy Export Co.*

*Establishment v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1099 (2d Cir.), *cert.*

*denied*, 459 U.S. 826, (1982) ("[n]o Circuit that has considered the question . . . has ever held

that the First Amendment provides a privilege in the copyright field distinct from the

accommodation embodied in the 'fair use' doctrine."); *Nihon Keizai Shimbun, Inc. v. Comline*

*Bus. Data, Inc.*, 166 F.3d 65, 74–75 (2d Cir. 1999) ("First Amendment concerns are protected by

and coextensive with the fair use doctrine.").

Here, because the fair use defense should be dismissed as a matter of law, see Point II,

*supra*, the First Amendment defense fails. With respect to Defendant's state law rights, she has

failed to identify any state law statute that can serve as a defense to a federal cause of action for copyright infringement.  Accordingly, this defense should be dismissed.

**F.    THE ELEVENTH DEFENSE OF "COPYRIGHT MISUSE" SHOULD BE DISMISSED**

"Generally, the doctrine of copyright misuse bars copyright owners from recovering for infringement where they have extended the scope of their copyrights to control areas outside of their copyright monopoly. *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 428 (S.D.N.Y. 2010) (citations omitted).  "Copyright misuse, however, 'is not firmly established' as an affirmative defense in the Second Circuit, and it is unsettled whether the defense is applicable absent a violation of antitrust laws." *Id.* (citing Shady Records, Inc. v. Source Enters., Inc., 2005 WL 14920, at *15 (S.D.N.Y. Jan. 3, 2005).

Here, even if the defense is cognizable, there is no evidence that Plaintiff has attempted to monopolize the market for his photographs of Ratajkowski (or any of his celebrity images) and no evidence that he seeks to enforce his copyright in the Photograph beyond the purview of the Copyright Act, which accords protections to Plaintiff's exclusive rights to control distribution of the image.  17 U.S.C. §106.

**G.    THE THIRTEENTH DEFENSE OF "UNCLEAN HANDS" SHOULD BE DISMISSED**

Under New York law, the doctrine of unclean hands is "never used unless the plaintiff is guilty of immoral, unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct." *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F.Supp.2d 682, 713 (S.D.N.Y. 2012) (citations omitted).  Defendant bears the burden of proving its affirmative defense of unclean hands. *Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 82 F.Supp.2d 126, 130 (S.D.N.Y. 1999).

Here, there is no evidence on the record that Ratajkowski relied on any allegedly immoral conduct or that she was injured by such conduct.  Paparazzi have been engaged in photographing celebrities since the era of Marilyn Monroe in the 1950's.  They play an integral role in the development of celebrity in popular culture.  Defendant's complaint that she is entitled to "privacy" whilst parading about in the public spotlight is meritless.  Ms. Ratajkowsi is entitled to privacy within the sanctity of her own abode and there is no allegation that Mr. O'Neil has violated that sanctity.  Once she enters into the public view, Plaintiff is entitled to photograph her – and she knows that.

**POINT IV:**   **DAMAGES SUFFERED ARE NOT AN ELEMENT OF INFRINGEMENT**

Plaintiff's copyright infringement claim qualifies for statutory damages under 17 U.S.C. § 504(c) because the Photograph was registered within three months of initial publication.  *See* 17 U.S.C. § 412(2); *see also Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 1226277, at *1 (S.D.N.Y. Mar. 29, 2011) (noting that section 412(2) provides a three-month grace period to register a copyright after the work's first publication). Here, the Photograph was initially published on September 13, 2019 and the effective date of copyright registration is October 13, 2019, within the three-month grace period to qualify for statutory damages under 17 U.S.C. § 504(c) plus attorneys' fees under 17 U.S.C. § 505.

Defendant argues that Plaintiff's claim should be dismissed because he failed to present evidence of a lost licensing fee related to the Photograph.  Even if true, the lack of evidence relating to actual damages does not warrant dismissal of Plaintiff's infringement clam. *See, e.g., Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014) ("it is clear that statutory damages can be awarded even in the absence of sufficient evidence supporting actual damages*."); see also Sony BMG Music Entm't v.*

*Tenenbaum*, 660 F.3d 487, 507 (1st Cir. 2011) ("Congress drew a plain distinction between actual and statutory damages, making it clear that the availability of statutory damages is not contingent on the demonstration of actual damages."); *Lowry's Reports. Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 459 (D. Md. 2004) ("Because statutory damages are an alternative to actual damages, there has never been a requirement that statutory damages must be strictly related to actual injury.").

Furthermore, the issue of statutory damages should not be decided by the Court where a jury demand has been made, as here.  Under U.S. Supreme Court law, Plaintiff is entitled by the Seventh Amendment to trial by jury to determine the amount of statutory damages. *Feltner v. Columbia Pictures TV*, 523 U.S. 340, 355, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998).

## POINT V:     DEFENDANT'S REQUEST FOR ATTORNEYS' FEES, COSTS AND SANCTIONS SHOULD BE DENIED

Defendants' request for attorneys' fees under Section 505 of the Copyright Act should be denied.  "[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001).  The Second Circuit accords the objective reasonableness factor "substantial weight" in determinations whether to award attorneys' fees. *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

Claims are objectively unreasonable when they "have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001). A "lack of success on the merits, without more," does not establish that a position was "objectively unreasonable."  *Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*, No. 10 Civ. 4919 (JGK), 2013 WL 5988937, at * 2 (S.D.N.Y. Nov. 12, 2013) (citations omitted).

Here, Plaintiff has advanced objectively reasonable claims under the Copyright Act given that O'Neil has ownership of a valid copyright and undisputed proof that actual copying occurred without his authorization.  Moreover, Ratajkowski's defenses are largely frivolous.

Finally, *ad hominen* attacks against Plaintiff's law firm should have no bearing on the application for attorneys' fees in the present lawsuit. LFF serves a valuable public service by enforcing rights of working-class copyright holders.  Moreover, there is no evidence that LLF violated any orders or engaged in misconduct in this case.[6]

## **CONCLUSION**

For the foregoing reasons, Plaintiff Robert O'Neil respectfully requests that his motion for partial summary judgment on liability against Defendant Emily Ratajkowski for copyright infringement should be GRANTED.  Ratajkowski's motion for summary judgment (and for fees and sanctions) should be DENIED in its entirety.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

by: **/richardpliebowitz/___**
Richard P. Liebowitz
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
rl@liebowtizlawfirm.com

---

6  Defendants' request for sanctions should also be rejected as Defendants have failed to show "clear and convincing evidence" that Plaintiff or his counsel acted in bad faith or with any purpose other than to vindicate Plaintiff's rights against a serial infringer.  *S.E.C. v. Smith*, 798 F.Supp.2d 412, 422 (N.D.N.Y.2011), *aff'd*, 710 F.3d 87 (2d Cir.2013) ("To impose sanctions under the Court's inherent authority ... there must exist clear and convincing evidence that an individual's conduct was not merely negligent but was undertaken with subjective bad faith"). Defendants also fail to qualify for Rule 11 sanctions because they failed to provide the requisite 21-day safe harbor. Fed.R.Civ.P. 11(c)(2).

*Counsel for Plaintiff*
*Robert O'Neil*