| UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK | |
|---|---|
| ROBERT O'NEIL,<br><br>                    Plaintiff,<br><br>        - against -<br><br>EMILY RATAJKOWSKI and EMRATA HOLDINGS, LLC,<br><br>                    Defendants. | Case No. 1:19-cv-9769<br><br>(Torres, J.) |

## PLAINTIFF'S COUNTER-STATEMENT PURSUANT TO LOCAL RULE 56.1

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Plaintiff Robert O'Neil ("O'Neil" or "Plaintiff") respectfully submits the following counter-statement to the Statement of Material Facts served by Defendants Emily Ratajkowski and Emrata Holdings, LLC.

Emily Ratajkowski is a professional model and actress. See Deposition of Emily Ratajkowski dated June 25, 2020 ("Ratajkowski Dep."), page 8, lines 7-11.

**Plaintiff's Response:** Undisputed.

Ms. Ratajkowski started working as an actress at approximately the age of 16. Id. at lines 3-4.

**Plaintiff's Response:** Undisputed.

Ms. Ratajkowski has appeared in TV shows and movies including iCarly, Gone Girl, We Are Your Friends, Easy, and Entourage. Id. at lines 9-12. Further, Ms. Ratajkowski owns a clothing company that sells bathing suits and ready to wear clothes to women. Id. at lines 2-10.

**Plaintiff's Response:** Undisputed.

Emrata Holdings LLC is the entity through which Ms. Ratajkowski works as an actress

and model. Ms. Ratajkowski' clothing line is called Inamorata. *Id.* at lines 19-24. Ms. Ratajkowski is the only employee of Inamorata. *Id.* at lines 8-11.

**Plaintiff's Response:** Undisputed.

Ms. Ratajkowski obtains her modeling work solely through a modeling agency and a publicist/manager. *Id.* at page 12, lines 2-3.

**Plaintiff's Response:** Undisputed.

Ms. Ratajkowski maintains a personal Instagram account. The name of the Instagram account is Emrata. *Id.* at page 18, lines 14-16.

**Plaintiff's Response:** Undisputed.

Ms. Ratajkowski personally posts photographs on her Emrata Instagram account. *Id.* at page 19, lines 7-11.

**Plaintiff's Response:** Undisputed.

As part of her Emrata Instagram account, Ms. Ratajkowski personally maintains an Instagram Stories account, which contains pictures that only last for 24 hours before they are automatically deleted. *Id.* at page 19, lines 21-24.

**Plaintiff's Response:** Undisputed.

Typically, Ms. Ratajkowski posts political and personal photographs on her Instagram Stories account including posts of her dog, her home, or her family. *Id.* at page 20, lines 4-9.

**Plaintiff's Response:** Undisputed that Ratajkowski sometimes posts political and personal photographs on her Instagram Stories account including posts of her dog, her home, or her family, but disputes that such posts are made "typically" because the overriding purpose of her Instagram account is to exploit her status as a celebrity and generate income. [Ratajkowski Tr. 26:6-11; 18-23; 45:21-46:3;104:15-17; Ratajkowski Confidential Tr. 7:8-22; O'Neil Declr. ¶ 19, Ex. E]

Occasionally, Ms. Ratajkowski will also repost vintage photographs and screenshots of texts or images of books on her Instagram account. *Id.* at page 22, lines 7-10.

**Plaintiff's Response:** Undisputed.

Plaintiff Robert O'Neil has been a "paparazzi photographer" since 2011. See Deposition of Robert O'Neil, dated June 29, 2020, page 15, lines 15-22. 1. Plaintiff maintains residences in Miami Beach and New York City. *Id.* at page 45, lines 5-9. Plaintiff has never published any essays or taught any class with respect to photography. Id. at page 171, lines 1922.

**Plaintiff's Response:** Undisputed.

For money, Plaintiff will take photographs of individuals who are not aware that such photographs are being taken. *Id.* at page 14, lines 15-23, page 18 lines 2-8, page 14, lines 1522.

**Plaintiff's Response:** Undisputed that Plaintiff attempts to take "candid" shots of celebrities who are not aware of his presence, [O'Neil Tr. 18:2-8]; but disputed on grounds that Plaintiff does not know whether celebrities are actually aware of his presence or not. [O'Neil Tr. 23:11-18]

Occasionally, Plaintiff will take photographs of celebrities from his car. *Id.* at page 16, lines 18-25.

**Plaintiff's Response:** Undisputed that Plaintiff has taken photographs of celebrities from his car, but disputed that such instances happen "occasionally." O'Neil testified that this happens "very rarely." [O'Neil Tr. 16:20]

Most of the time, Plaintiff will not seek consent to take a photo of a celebrity, but nevertheless Plaintiff believes that there are times when a celebrity consents to having his or her photo taken. *Id.* at page 23, lines 19-25 and page 24, lines 2-6.

**Plaintiff's Response:** Undisputed and avers that it is irrelevant whether the subject celebrity consents or not provided the photographs are taken in a public setting. [O'Neil Tr. 18:24-19:2]

Plaintiff's agency, and only agency, is known as Splash News ("Splash"). *Id.* at page 24, lines 9-14.

**Plaintiff's Response:** Undisputed.

Plaintiff maintains a written contract with Splash. *Id.* at page 45, lines 17-20.

**Plaintiff's Response:** Undisputed.

Plaintiff is not involved with and has no say in the amount of any licensing fee that Splash determines how to sell a photo. *Id.* at page 46, lines 2-10; page 46, lines 22-25; page 47, lines 2-4.

**Plaintiff's Response:** Undisputed.

For photos that Splash has licensed, Plaintiff has received as little as 0.50¢ for a photo. *Id.* at page 48, lines 16-19, page 42, lines 11-25.

**Plaintiff's Response:** Undisputed.

Splash earns 40% and Plaintiff earns 60% on the licensing of Plaintiff's photos. *Id.* at page 50, lines 14-19.

**Plaintiff's Response:** Undisputed.

Plaintiff and his counsel file copyright registrations for all of photographs that he uploads to Splash. *Id.* at page 60, lines 5-11.

**Plaintiff's Response:** Undisputed.

Plaintiff and his counsel files such registrations, typically for up to 750 photographs per registration, approximately every three to four months. *Id.* at page 60, lines 12-16.

**Plaintiff's Response:** Undisputed.

22.   After Plaintiff takes a photograph of a celebrity, Plaintiff places the card reader from his camera in his computer, uploads the photos, and sends them to his agency, Splash News. *Id.* at page 24, lines 11-14. Plaintiff typically makes no effort to alter the photo in any way on his computer other than cropping the photo. Id. at page 170, lines 7-22. Id. at page 171, lines 6-10. Plaintiff will then check the celebrity's Instagram account to see if his photo appears there. *Id.* at

page 67, lines 7-10.

**Plaintiff's Response:**  Undisputed that after Plaintiff takes a photograph of a celebrity, he places the card reader from his camera in his computer, uploads the photos, and sends them to his agency, Splash News. Disputed that Plaintiff typically makes no effort to alter the photo.  Plaintiff testified that he sometimes alters the lighting of the photographs.   [O'Neil Tr. 171:2-10] Undisputed that Plaintiff sometimes checks the celebrity's Instagram account to see if the photograph appears there.

Plaintiff never knows what Splash is going to sell or not sell. *Id.* at page 27, lines 21-23.
**Plaintiff's Response:**  Undisputed.

When Plaintiff takes a photograph of a celebrity covering his or her face, the photo may not be worth anything. *Id.* at page 32, lines 6-18.
**Plaintiff's Response:**  Disputed on grounds that Defendant has mischaracterized Plaintiff's testimony. [O'Neil Tr. 32:6-18]

Plaintiff is aware of where celebrities live, including Ms. Ratajkowski' former residence in Manhattan. *Id.* at page 35, lines 23-25; page 36, lines 2-8.
**Plaintiff's Response:**  Undisputed.

Plaintiff "may have" followed Ms. Ratajkowski in the past in his car and then taken photographs of Ms. Ratajkowski. *Id.* at page 43, lines 18-25 and page 44, line 2.
**Plaintiff's Response:**  Undisputed.

Plaintiff is a follower of Ms. Ratajkowski' Instagram and Instagram Stories account. *Id.* at page 73, lines 7-11.

**Plaintiff's Response:**  Undisputed.

### The Allegedly Infringing Photograph

The photo that is the subject of this action is attached to the Complaint as Exhibit "A".

**Plaintiff's Response:**  Undisputed.

The allegedly infringing photo posted by Ms. Ratajkowski on her Instagram Stories account, and was automatically deleted after 24 hours, is attached to the Complaint as Exhibit "B."

**Plaintiff's Response:**  Undisputed.

At the time that Plaintiff took the photo attached as Exhibit "A" to the Complaint, Plaintiff was aware of where Ms. Ratajkowski lived. *O'Neil Dep.* at page 37, lines 20-24.

**Plaintiff's Response:**  Undisputed.

On September 13, 2019, the day that Plaintiff took the photo attached as Exhibit "A" to the Complaint, Plaintiff set up his photography equipment after he saw Ms. Ratajkowski walk past the corner of Lafayette and Bond Streets in Manhattan. *Id.* at page 37, lines 6-13.

**Plaintiff's Response:**  Undisputed.

Plaintiff waited for Ms. Ratajkowski to exit the Adore Flower Shop and walk back

towards him. *Id.* at page 40, lines 3-13.

**Plaintiff's Response**:  Undisputed.

Plaintiff took nine frames in rapid succession of Ms. Ratajkowski. *Id.* at page 40, lines 14-20.

**Plaintiff's Response**:  Undisputed.

Plaintiff assumed that Ms. Ratajkowski was aware that Plaintiff was taking photographs of her at that time. *Id.* at page 40, lines 21-25 and page 41, lines 2-24.

**Plaintiff's Response**:  Undisputed.

This is because, according to Plaintiff, at the time that Plaintiff took the photo of Ms. Ratajkowski, Ms. Ratajkowski pulled the flowers she was carrying over her face. *Id.* at page 41, lines 16-18. Plaintiff testified that Ms. Ratajkowski was hiding from two paparazzi photographers at the time. *Id.* at page 97, lines 20-25 and page 98, lines 2-5.

**Plaintiff's Response**:  Undisputed.

At the time that Plaintiff took the photograph, Plaintiff was thinking of whether or not he had enough light in his camera and whether or not his camera settings were correct. *Id.* at page 100, lines 7-22.

**Plaintiff's Response**:  Undisputed.

After Plaintiff took the photo, Plaintiff checked Ms. Ratajkowski's Instagram Stories within 24 hours to see if she had posted it. Once Plaintiff saw the photo, he contacted his

attorney. *Id.* at page 74, lines 13-25.

**Plaintiff's Response**:  Undisputed.

Plaintiff testified that he was "lucky" that he had seen the photograph on Ms. Ratajkowski' Instagram Stories account since it automatically disappeared after 24 hours, and Plaintiff may have never seen it again. *Id.* at page 76, lines 20-22. Plaintiff testified that had he not seen the photo on Ms. Ratajkowski's Instagram Stories, there would not have been a lawsuit. *Id*. at page 124, lines 14-17.

**Plaintiff's Response**:  Undisputed.

Splash News did not sell or license Exhibit "A' within one week after the photo was sent to Splash. *Id.* at page 78, lines 4-7.

**Plaintiff's Response**:  Disputed.  Plaintiff testified that he received income from the Photograph between September 13 and September 19, 2019.  [O'Neil Tr. 80:25-81:4]

Plaintiff testified that he did receive income from other photos in the same set (other than Exhibit "A'"), and in those photos, Ms. Ratajkowski' face is visible. *Id.* at lines 8-10.

**Plaintiff's Response**:  Undisputed that Plaintiff received income from other photographs in the same set.  Disputed with respect to Exhibit A because Plaintiff testified that he received income from the Photograph between September 13 and September 19, 2019.  [O'Neil Tr. 80:25-81:4]

For the photos other than Exhibit "A" in the same set, Plaintiff testified that he received a total of approximately $100 in income. *Id.* at page 79, lines 12-15.

**Plaintiff's Response:**  Undisputed.

Documents produced by Plaintiff and his counsel, for the first time, at approximately 1am on the morning of Plaintiff's deposition, show that the actual total amount that Plaintiff received from the entire set of photos he took of Ms. Ratajkowski on September 13, 2019, is $2.55. *Id*. at page 107, lines 3-10, lines 17-23.

**Plaintiff's Response:**  Disputed. [O'Neil Tr. 80:25-81:4]

Plaintiff could not say whether or not he has received even a "few dollars" in income from Exhibit "A". *Id.* at page 83, lines 4-6.

**Plaintiff's Response:**  Disputed.  Plaintiff testified that he received income from the Photograph between September 13 and September 19, 2019.  [O'Neil Tr. 80:25-81:4]

Plaintiff has made no attempts to sell or license Exhibit "A" other than uploading it to Splash. *Id.* at page 84, lines 6-12.

**Plaintiff's Response:**  Undisputed.

Plaintiff used the key words "hiding, flowers, gray jacket, model, Adore Floral Shop" as key words when he uploaded the photo to Splash. *Id.* at page 87, lines 5-11.

**Plaintiff's Response:**  Undisputed.

Plaintiff used the word "hiding" to describe Exhibit "A" to the Complaint because, according to Plaintiff, Ms. Ratajkowski was "hiding" behind the flowers. *Id.* at page 88, lines

38.

    **Plaintiff's Response**:  Undisputed.

    Plaintiff added a caption to the photo reading "Emily Ratajkowski picks up flowers at Adore Floral Shop in New York City, and only then proceeded to hide behind the flowers on her way back home." *Id.* at page 95, lines 19-25.

    **Plaintiff's Response**:  Undisputed.

    Plaintiff testified that the photo in question was not used by any company for promotional purposes. *Id.* at page 92, lines 22-25 and page 93, lines 2-4.

    **Plaintiff's Response**:  Undisputed.

    Plaintiff employed the term "nonexclusive" to describe the photo. *Id.* at page 96, lines 9-14.

    **Plaintiff's Response**:  Undisputed.

    Plaintiff used the term "nonexclusive" because there were other photographers who were also taking photos of Ms. Ratajkowski at the same time. *Id.* at lines 17-24.

    **Plaintiff's Response**:  Undisputed.

    Plaintiff does not believe that Exhibit "A" is exclusive, or that Plaintiff was the exclusive photographer of the image. *Id.* at page 96, line 25 and page 97, lines 2-7.

    **Plaintiff's Response**:  Disputed on grounds that Plaintiff owns the rights to his rendition of the image. [O'Neil Decl. ¶ 6; O'Neil Tr. 33:20-34:11; 34:18-25; 35:12-15; 37:14-25; 39:3-11;

100:7-22: 170:18-171:17; 176:6-177:2]

There were other paparazzi who took the same image at the same moment that Plaintiff took Exhibit "A." *Id.* at page 97, lines 8-14.

**Plaintiff's Response:**  Disputed on grounds that Plaintiff owns the rights to his rendition of the image. [O'Neil Decl. ¶ 6; O'Neil Tr. 33:20-34:11; 34:18-25; 35:12-15; 37:14-25; 39:3-11; 100:7-22: 170:18-171:17; 176:6-177:2]

Plaintiff is not sure whether or not Exhibit "B," the photo that appeared on Ms. Ratajkowski' s Instagram Stories page, has been cropped from the photo that appears as Exhibit "A." *Id*. at page 118, lines 14-25 and page 119, lines 2-3. Plaintiff testified that it may have been cropped. *Id*. at lines 9-14.

**Plaintiff's Response:**  Undisputed.

Plaintiff testified that the byline from Exhibit "A" may have been removed. *Id*. at page 119, lines 9-19.

**Plaintiff's Response:**  Undisputed.

Although Plaintiff does not know why Ms. Ratajkowski used the phrase "mood forever" on Exhibit "B," Plaintiff testified that Ms. Ratajkowski' s usage of "mood forever" may have been brought about because, according to Plaintiff, Ms. Ratajkowski felt "depressed that day." *Id*. at page 122, lines 10-23.

**Plaintiff's Response:**  Undisputed.

Plaintiff did not inform Splash that he believed that Ms. Ratajkowski was using one of Plaintiff's photos. *Id*. at page 125, lines 6-10.

**Plaintiff's Response:**  Undisputed.

When Plaintiff saw the photo on Ms. Ratajkowski's Instagram Stories, Plaintiff was not sure as to whether or not it was a photo that he had taken. *Id*. at page 126, lines 11-25.

**Plaintiff's Response:**  Disputed on grounds that Plaintiff simply needed to verify that it was his. [O'Neil Tr. 126:11-25]

At the time that Plaintiff allegedly registered the copyright to Exhibit "A', it was one of 747 other photographs that he and his counsel simultaneously registered. *Id*. at page 133, lines 16-21.

**Plaintiff's Response:**  Undisputed.

There is no way to tell from the registration document as to whether or not the Exhibit "A' was the photo that was registered. *Id*. at page 133, lines 22-25 and page 134, lines 25.

**Plaintiff's Response:**  Undisputed.

Plaintiff sends all of the celebrity photographs that he takes to his attorney. *Id*. at page 142, lines 17-21.

**Plaintiff's Response:**  Undisputed.

Plaintiff claims $30,000 in damages. Plaintiff's basis for damages is that Ms.

Ratajkowski is "an influencer on Instagram and ... she makes a lot more money that than figure on her Instagram and they get paid by the photo." *Id*. at page 145, lines 8-15.

**Plaintiff's Response**:  Disputed on grounds that the basis for damages is derived from the Copyright Act, 17 U.S.C. 504(c).

However, Plaintiff does not know how much money, if any, Ms. Ratajkowski made from the photo that Plaintiff claims was infringed, but Plaintiff only "goes by what his celebrity friends have told him that they make money through photos." *Id*. at page 146, lines 2-6.

**Plaintiff's Response**:  Undisputed.

Other than speaking with "celebrities" and having "small talk" with them, and asking about their Instagram accounts, Plaintiff has not done anything else to ascertain his alleged damages. *Id*. at page 145, lines 18-25 and page 146, lines 2-11.

**Plaintiff's Response**:  Disputed.  Plaintiff has consulted with legal counsel. [O'Neil Declr. ¶15]

Plaintiff has no idea as to whether or not Defendant Emrata has anything to do with the subject matter of his complaint. *Id*. at page 159, lines 16-17.

**Plaintiff's Response**:  Undisputed.

Plaintiff has not made any other effort to independently determine the market value for the photo at issue. *Id*. at page 164, lines 17-24 and page 165, lines 2-11.

**Plaintiff's Response**:  Undisputed.

8When Ms. Ratajkowski viewed Exhibit "A" online, she sent the photograph to her

friend, Mary, for whom she had purchased the flowers featured in the photograph. *See* Ratajkowski Dep. at page 32, lines 4-7.

**Plaintiff's Response:**  Undisputed.

Ms. Ratajkowski intended to give her friend Mary the flowers because it had been Mary's birthday the night before, and because Mary was learning about Ms. Ratajkowski's experience of what it is like to have multiple paparazzi stalking Ms. Ratajkowski. *Id.* at page 32, lines 15-25 and page 33, line 2.

**Plaintiff's Response:**  Plaintiff objects to the term "stalking" as calling for a legal conclusion but otherwise undisputed.

Ms. Ratajkowski was approximately one block from her home when the photo was taken by Plaintiff. Ms. Ratajkowski walked around the corner back to her apartment and there were three or four paparazzi on the ground following her, and the photo was then taken right outside of her own apartment front door. *Id.* at page 33, lines 9-17.

**Plaintiff's Response:**  Undisputed.

Ms. Ratajkowski did not know if Robert O'Neil was one of the paparazzi who was taking the photo. *Id.* at page 33, lines 19-23.

**Plaintiff's Response:**  Undisputed.

On a typical day, there are at least three photographers standing outside of Ms. Ratajkowski's home in Los Angeles. *Id.* at page 34, lines 13-20.

**Plaintiff's Response:**  Undisputed.

Ms. Ratajkowski posted Exhibit "B" to the Complaint to her Instagram Stories within a day after seeing the photograph online. *Id.* at page 39, lines 12-13. The photo was automatically deleted 24 hours later.

**Plaintiff's Response:**  Undisputed.

Ms. Ratajkowski posted the photograph of the flowers covering her face as a statement about her experience with the paparazzi. The caption "mood forever" is Ms. Ratajkowski's personal way of expressing that she will always feel that her privacy has been invaded by the paparazzi. *Id.* at page 39, lines 17-25 and page 40, line 2. There is no way to tell from the photo that it is of Ms. Ratajkowski.

**Plaintiff's Response:**  Disputed on grounds that Ms. Ratajkowski's subjective post-lawsuit impressions and beliefs about the meaning of her pose, as depicted in the Photograph, do not qualify as fact.  There is no evidence on the record to support Defendant's assertion that Ratajkowski is unrecognizable in the Photograph and therefore disputed. The photograph was taken approximately two feet from Ms. Ratajkowski's front door of her apartment building on Bleecker Street in Manhattan. *Id.* at page 40, lines 9-11.

**Plaintiff's Response:**  Disputed on grounds that Plaintiff maintained a 12-foot distance. [O'Neil Tr. 9:24]

Ms. Ratajkowski posted the photograph on Instagram Stories because she had no intention of having the photograph stay on Instagram for more than 24 hours. *Id.* at page 41, lines 4-9.

**Plaintiff's Response:**  Undisputed.

The photo was automatically deleted after 24 hours. Ms. Ratajkowski did not receive any money or other compensation from Exhibit "B." *Id.* at page 50, lines 8-11.

**Plaintiff's Response:**  Undisputed that Photograph was deleted after 24 hours.  Disputed that Ratajkowski did not receive money or compensation from exploitation of the Photograph because she monetizes the entire account to promote her brand [Ratajkowski Tr. 45:21-46:3; 51:6:10; 104:15-17; Ratajkowski Confidential Tr. 7:8-22]


Dated: October 7, 2020
      Valley Stream, New York


                                                                                /s/richardliebowitz
                                                                                Richard Liebowitz