**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROBERT O'NEIL,

                              Plaintiff,                           Case No. 1:19-cv-9769-AT

        - against -

EMILY RATAJKOWSKI, and EMRATA HOLDINGS,
LLC,

                              Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY**
**JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT AND ATTORNEY'S FEES**

Daniel A. Schnapp
NIXON PEABODY, LLP
55 W. 46th Street
New York, NY 10036
(212) 940-3026
dschnapp@nixonpeabody.com
*Attorneys for Defendants*

TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................1

II.    LEGAL STANDARD ..........................................................................2

III.   ARGUMENT .......................................................................................3

POINT I    Plaintiff has not Produced Necessary Evidence to Prove the O'Neil Photograph is Protected by a Valid and Enforceable Copyright Registration .............................................................................3

    a.   The O'Neil Photograph is Not Sufficiently Original ...............................3
    b.   Plaintiff has Failed to Provide Evidence of Which Photographs are Covered by the '330 Registration .........................................6

POINT II   The Instagram Stories Post was Fair Use .........................................9

    a.   The Use was Transformative ...............................................9
    b.   The O'Neil Photograph is Subject to Only Minimal Protection, if Any.............................................................................12
    c.   The Amount and Substantiality of the O'Neil Photograph Used Weighs in Favor of a Finding of Fair Use .............................13
    d.   There was no Harm to the Market for the O'Neil Photograph .............14

POINT III  Defendant's Remaining Affirmative Defenses Should Not be Dismissed ...............................................................................15

    a.   The First, Third, and Twelfth Affirmative Defenses Should Not be Dismissed ....................................................................15
    b.   The Second, Fourth, Seventh, Eighth, Ninth, and Tenth, Affirmative Defenses Should Not be Dismissed ....................16
    c.   The Fifth and Sixth Affirmative Defenses Should Not be Dismissed ............................................................................17
    d.   The Eleventh, Thirteenth, and Fourteenth Affirmative Defenses Should Not be Dismissed ..................................................17

POINT IV  Plaintiff Is Not Entitled to Any Damages .......................................18

POINT V   Defendant's Motion for Attorneys' Fees Should be Granted .........................21

IV.   CONCLUSION .................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adlife Mktg. & Commc'ns Co., Inc. v. Buckingham Bros.*,
   LLC, No. 519CV0796LEKCFH, 2020 WL 4795287 (N.D.N.Y. Aug. 18,
   2020) ............................................................................................................ 21

*American Geophysical Union v. Texaco Inc.*,
   60 F.3d 913 (2d Cir.1994) ..................................................................... 11, 14

*Baker v. Urban Outfitters, Inc.*,
   431 F. Supp. 2d 351 ............................................................................... 21, 22

*Barcroft Media, Ltd. v. Coed Media Group, LLC*,
   297 F. Supp. 3d 339 (S.D.N.Y. 2017) ................................................ 9, 10, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 554 (2007) ..................................................................................... 15

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006) ........................................................................ 12

*Bryant v. Media Right Prods.*,
   603 F.3d 135 (2d Cir. 2010) ........................................................................ 21

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994) ................ 11, 12, 13

*Capitol Records, LLC v. Escape Media Grp., Inc.*,
   No. 12CV06646AJNSN, 2014 WL 12698683 (S.D.N.Y. May 28, 2014) ...... 2

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013) ..................................................................... 9, 16

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998) ........................................................................ 11

*Coach, Inc. v. Kmart Corps.*,
   756 F. Supp. 2d 421 (S.D.N.Y. 2010) ......................................................... 17

*Coleman v. ESPN, Inc.*,
   764 F. Supp. 290 (S.D.N.Y. 1991) ......................................................... 17, 18

*Consumers Union of U.S., Inc. v. New Regina Corp.*,
   664 F. Supp. 753 (S.D.N.Y. 1987) .............................................................. 11

*Cruz v. Cox Media Grp.*,
LLC, 444 F. Supp. 3d 457 (E.D.N.Y. 2020) .................................................................6

*Davis v. Gap, Inc*.,
246 F.3d 152 (2d Cir.2001) ........................................................................................12

*ELLIOT McGUCKEN, Plaintiff, v. NEWSWEEK LLC, Defendant*.,
No. 19 CIV. 9617 (KPF), 2020 WL 6135733 (S.D.N.Y. Oct. 19, 2020) ...............13

*Ferdman v. CBS Interactive, Inc*.,
342 F. Supp. 3d 515 (S.D.N.Y. 2018) .................................................................6, 7, 8

*Goodman v. Universal Beauty Prods. Inc.*,
No. 17-cv-1716(KBF), 2018 WL 1274855 (S.D.N.Y. Mar. 9, 2018).......................8

*Granger v. Gill Abstract Corp*.,
566 F. Supp. 2d 323 (S.D.N.Y. 2008) .....................................................................18

*Harper & Row, Publishers, Inc. v. Nation Enters*.,
471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985)....................................10, 14

*Hub Floral Corp. v. Royal Brass Corp.*,
454 F.2d 1226 (2d Cir. 1972) ...................................................................................20

*Kregos v. Associated Press*,
937 F.2d 700 (2d Cir. 1991) ......................................................................................16

*L.A. Printex Indus., Inc. v. Le Chateau, Inc*.,
No. 11 CIV. 4248 LTS, 2012 WL 987590 (S.D.N.Y. Mar. 23, 2012) .....................3

*Lish v. Harper's Magazine Found*.,
807 F. Supp. 1090 (S.D.N.Y. 1992), amended, No. 91 CIV. 0782 (MEL),
1993 WL 7576 (S.D.N.Y. Jan. 7, 1993)....................................................................11

*Louise Paris, Ltd. v. Standard Fabrics Int'l, Inc.*,
No. 15 CIV. 3250 (PKC), 2016 WL 4203548 (S.D.N.Y. Aug. 8, 2016)...................9

*Mannion v. Coors Brewing Co*.,
377 F. Supp. 2d 444 (S.D.N.Y. 2005) ........................................................................4

*Mantel v. Microsoft Corp*.,
No. 16-CV-5277 (AJN), 2018 WL 1602863 (S.D.N.Y. Mar. 29, 2018),
reconsideration denied, No. 16-CV-5277 (AJN), 2019 WL 367823 (S.D.N.Y.
Jan. 30, 2019)........................................................................................................6, 7, 8

*Masi v. Moguldom Media Grp. LLC*,
No. 18 CIV. 2402 (PAC), 2019 WL 3287819 (S.D.N.Y. July 22, 2019) ..................8

*Matthew Bender & Co. v. W. Pub. Co.*,
    158 F.3d 674 (2d Cir. 1998) ............................................................................. 4

*McGucken v. Newsweek LLC*,
    No. 19 CIV. 9617 (KPF), 2020 WL 2836427 (S.D.N.Y. June 1, 2020) ................................. 13

*Morales v. Quintel Entm't, Inc.*,
    249 F.3d 115 (2d Cir.2001) ............................................................................. 3

*Nat'l Football League v. PrimeTime 24 Joint Venture*,
    131 F. Supp. 2d 458 (S.D.N.Y. 2001) ................................................................. 22

*Oriental Art Printing, Inc. v. Goldstar Printing Corp.*,
    175 F. Supp. 2d 542 (S.D.N.Y. 2001) aff'd mem., 34 F. App'x 401 (2d Cir.
    2002) ........................................................................................................ 15

*Otto v. Hearst Commc'ns, Inc.*,
    345 F. Supp. 3d 412 (S.D.N.Y. 2018) ................................................................. 14

*Palmer/Kane LLC v. Gareth Stevens Publg*,
    No. 1:15-CV-7404-GHW, 2017 WL 3973957 (S.D.N.Y. Sept. 7, 2017) ............................... 19

*Papazian v. Sony Music Entm't*,
    No. 16-CV-07911 (RJS), 2017 WL 4339662 (S.D.N.Y. Sept. 28, 2017) .............................. 18

*Peer Int'l Corp. v. Luna Records, Inc.*,
    887 F. Supp. 560 (S.D.N.Y. 1995) ..................................................................... 19

*Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.*,
    295 F. Supp. 1366 (S.D.N.Y.), aff'd, 415 F.2d 1007 (2d Cir. 1969) ...................................... 20

*Polsby v. St. Martin's Press, Inc.*,
    No. 97 Civ. 690, 2000 WL 98057 (S.D.N.Y. Jan. 18, 2000), aff'd, 8 F. App'x
    90 (2d Cir. 2001) ....................................................................................... 21, 22

*Psihoyos v. Nat'l Geographic Soc'y*,
    409 F. Supp. 2d 268 (S.D.N.Y. 2005) ................................................................. 4, 5

*Ringgold v. Black Entm't Television, Inc.*,
    126 F.3d 70 (2d Cir. 1997) ............................................................................. 12

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992) ............................................................................. 4

*Sands v. CBS Interactive Inc.*,
    No. 18-CV-7345, 2019 WL 1447-14 (S.D.N.Y. Mar. 13, 2019) ..................................... 5

*Seelie v. Original Media Grp. LLC*,
    No. 19-CV-5643, 2020 WL 136659 (E.D.N.Y. Jan. 13, 2020) .................................................21

*Stridiron v. Cmty. Broadcasters, LLC*,
    No. 519CV108MADATB, 2019 WL 2569863 (N.D.N.Y. June 21, 2019) ...........................21

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014)............................................................................................9, 10

*Warner Bros., Inc. v. Dae Rim Trading, Inc.*,
    677 F.Supp. 740 (S.D.N.Y.1988) .................................................................................19

*Whimsicality, Inc. v. Rubie's Costume Co., Inc.*,
    891 F.2d 452 (2d Cir.1989) ...........................................................................................4

*White v. W. Pub. Corp.*,
    29 F. Supp. 3d 396 (S.D.N.Y. 2014).............................................................................14

*Williams v. Crichton*,
    84 F.3d 581 (2d Cir. 1996).............................................................................................16

**Federal Statutes**

17 U.S.C. § 101 ...........................................................................................................19, 20

17 U.S.C. § 107 ...........................................................................................................11, 16

17 U.S.C. § 107(2) .............................................................................................................12

17 U.S.C. § 107(3) .............................................................................................................13

17 U.S.C. § 107(4) .............................................................................................................14

17 U.S.C. § 412 ...........................................................................................................19, 20

17 U.S.C. § 504(c)(2) ..................................................................................................16, 22

28 U.S.C. § 1927 ...............................................................................................................21

17 U.S.C. § 505 ..................................................................................................................21

**Rules**

Fed.R.Civ.P. 56(c) ..........................................................................................................2, 19

FRCP 11 .............................................................................................................................21

Rule 56.1 .........................................................................................................................5, 20

I.      **INTRODUCTION**

Plaintiff is a paparazzi photographer who regularly parks outside Defendant Emily Ratajkowski's ("Ms. Ratajkowski") home and follows her in the hope that he can take her photograph without her permission, and then sell it to a third party.  On one occasion last fall, after Plaintiff followed Ms. Ratajkowski to her apartment building and took nine photos of her in rapid succession, Ms. Ratajkowski allegedly used one of Plaintiff's unauthorized photographs – in which Ms. Ratajkowski's face is covered by a bouquet of flowers – to comment on her perception of the predatory nature of Plaintiff's practice. This post was automatically deleted from Ms. Ratajkowski's Instagram Stories account after 24 hours. Plaintiff, who has never earned a penny from this photograph, withdrew his claim for actual damages and now only seeks statutory damages.

In Defendants' motion for summary judgment, Defendants established that Plaintiff has failed to prove the basic elements of his copyright infringement claim, Ms. Ratajkowski's transformative use of this photograph constitutes fair use, and Defendants are entitled to attorneys' fees.  Plaintiff's Cross-Motion for Summary Judgment does not provide any material evidence or triable issues of fact to solve the fatal defects in Plaintiff's claims.[1]

In particular, Plaintiff fails to show that the photograph at issue in this case (the "O'Neil Photograph"): (1) is sufficiently original to warrant copyright protection; and (2) is one of the 747 photographs covered by the registration produced (the "'330 Registration"). Plaintiff has never produced any documents or "hard evidence", such as copyright deposit copies or a

---

[1] Plaintiff has conceded, in his letter to the Court dated July 24, 2020, (Dkt. 28), that he no longer seeks liability or damages against Defendant Emrata Holdings, LLC ("Emrata"), and, at a minimum, this Court should dismiss this case against Emrata and hold Plaintiff and his counsel liable for Defendant Emrata's fees and costs in defending this action.  To the extent that Plaintiff seeks to maintain this action against Emrata, it is respectfully requested that this Court award summary judgment in favor of both Defendants and award Defendants their fees and costs in defending this bad-faith suit.

copyright application including thumbnail images, specifically tying the O'Neil Photograph to the '330 Registration.

Plaintiff also fails to counter Defendants' arguments that Ms. Ratajkowski's use (the "Instagram Stories Post") is fair use. Indeed, the Instagram Stories Post is transformative – as it created a new meaning and purpose by adding a caption commenting on Ms. Ratajkowski's experience with constant paparazzi attention – and non-commercial, as Ms. Ratajkowski did not profit from the post in any way.  As we show below, the O'Neil Photograph is far from the core of copyright and only thinly protected. The Instagram Stories Post took only the amount of the O'Neil Photograph necessary in order to make this commentary, and, as there is no potential market for the O'Neil Photograph, no market harm has occurred.  Accordingly, the Instagram Stories Post is fair use.

Plaintiff's failures demonstrate, once again, that this case is meritless and was brought, like many of Mr. Liebowitz's cases before this one, for the bad faith purpose of extorting a settlement.

Accordingly, for the reasons set forth herein and in Defendants' moving papers, Plaintiff's Cross-Motion for Summary Judgment should be denied and Defendants' Motion for Summary Judgment and Attorneys' Fees should be granted.

## II.   LEGAL STANDARD

Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Where, as here, a plaintiff moves for summary judgment on his affirmative claims he "bears a much greater initial burden; [he] must show that the evidence supporting [his] claims is so compelling that no reasonable jury could return a verdict for the defendant." *Capitol Records, LLC v. Escape Media Grp., Inc*., No. 12CV06646AJNSN, 2014 WL 12698683, at *3 (S.D.N.Y.

May 28, 2014), report and recommendation adopted, No. 12-CV-6646 AJN, 2015 WL 1402049

(S.D.N.Y. Mar. 25, 2015) (*citing SEC v. Meltzer*, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006)).

When cross-motions for summary judgment are filed each motion must be considered

independently of the other and, when evaluating each, the court must consider the facts in the

light most favorable to the non-moving party. *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115,

121 (2d Cir.2001).

As laid out in Defendants' Motion for Summary Judgment and Attorneys' Fees, there are

no genuine issues of material dispute. However, Plaintiff is not entitled to judgment as a matter

of law because he has failed to show evidence "so compelling that no reasonably jury could

return a verdict for" Defendants.

## III.    ARGUMENT

### POINT I
### Plaintiff has not Produced Necessary Evidence to Prove the O'Neil Photograph
### is Protected by a Valid and Enforceable Copyright Registration

In order to succeed on his claim of copyright infringement, Plaintiff must prove not only

that he holds a registered copyright, but that the O'Neil Photograph is eligible for copyright

protection and covered by the '330 Registration. While Plaintiff has produced a certificate of

registration for the '330 Registration, he has failed to prove ownership in two ways: (1) first, the

O'Neil Photograph is not eligible for copyright protection, and (2) even if it was, there is

insufficient evidence to prove that it is covered by the '330 Registration.

#### a.    The O'Neil Photograph is Not Sufficiently Original

First, the O'Neil Photograph is not sufficiently original to qualify for copyright

protection. *L.A. Printex Indus., Inc. v. Le Chateau, Inc.*, No. 11 CIV. 4248 LTS, 2012 WL

987590, at *3 (S.D.N.Y. Mar. 23, 2012) ("Once a plaintiff has proffered its certificate of

copyright registration, the defendant may rebut the presumption with evidence that the work at

issue is non-original or non-copyrightable.") *Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 455–56 (2d Cir.1989) (presumption rebutted because works were not copyrightable).

As demonstrated in detail in Defendants' Motion for Summary Judgment, the O'Neil Photograph does not have the required "spark of creativity" required to qualify for copyright protection. *Matthew Bender & Co. v. W. Pub. Co*., 158 F.3d 674, 682 (2d Cir. 1998); *Prestige Floral, Societe Anonyme v. California Artificial Flower* Co., 201 F. Supp. 287, 289–90 (S.D.N.Y. 1962) (stating that a work "must represent an appreciable amount of creative authorship" in order to qualify for copyright registration); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (explaining that the protectable, original elements of a photograph include "posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.").

 "A photograph may be original in three respects: ... rendition ... timing ... [and] creation of the subject." *Mannion v. Coors Brewing Co*., 377 F. Supp. 2d 444, 452-53 (S.D.N.Y. 2005). The O'Neil Photograph is not original in any of these respects. Plaintiff merely took the O'Neil Photograph when and where he happened to allegedly inadvertently cross paths with Ms. Ratajkowski, rather than choosing the timing or location of the photograph based on any sort of creative vision. Def. 56.1 ¶31-33. O'Neil had no control over Ms. Ratajkowski's clothes, expression, pose, makeup, posture, position on the street, what she was holding, or who else was in the photograph. Def 56.1 ¶31-34.

The facts in this case are analogous to *Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268 (S.D.N.Y. 2005). In *Psihoyos*, the plaintiff, a photographer, took a photograph of dinosaur fossils. In connection with this photograph, the photographer built a display case and background set for the fossils, chose a background material "to match the color and texture" of

the fossils, and chose the position, lighting, and angle of the photograph. *Id*. at 271. He also hired an illustrator to depict the dinosaurs as they appear in his photograph. Despite these directives, this Court found that Psihoyos' photograph was merely *scene a faire,* and, because the photograph showed the subject "in its natural setting" and there were very few angles from which the subject could be photographed, the elements of the photograph were not protectable. *Id*. at 275. The Court granted the defendant's motion for summary judgment because the photograph lacked originality. *Id*. at 281.

The plaintiff in *Psihoyos* contributed more originality and creativity than O'Neil. O'Neil did not have any say in how Ms. Ratajkowski was posed, did not create the background in which she was photographed, and did not control the lighting of the O'Neil Photograph. Def 56.1 ¶31-34.  Accordingly, the O'Neil Photograph is not sufficiently original to warrant copyright protection.

Plaintiff's testimony that other photographers took photographs at the exact same time and place as him, and that he could not even confidently say that the O'Neil Photograph was a photograph he took, are clear evidence to rebut the presumption created by the copyright registration. Defendants' Rule 56.1 Statement ("Def. 56.1") at ¶ 35, 50, 57.

While Plaintiff points to a handful of cases where paparazzi photographs have been found eligible for copyright protection, none of them involve instances where multiple photographers were present and took nearly identical photographs of celebrities merely living their private lives.[2]  For example, in *Sands v. CBS Interactive Inc*., No. 18-CV-7345, 2019 WL 1447-14 (S.D.N.Y. Mar. 13, 2019) the plaintiff's photograph depicted actors while on a movie set of a highly anticipated film, not a celebrity merely going about their day. Accordingly, the

---

[2] Similarly, none of the cases involve a photographer suing the subject of the photograph.

photographs included more creative elements, such as costumes and sets, and were more newsworthy and therefore more marketable. *Cruz v. Cox Media Grp.*, LLC, 444 F. Supp. 3d 457 (E.D.N.Y. 2020) is also easily distinguishable. In that case, the plaintiff took a photograph of an arrest taking place. The resulting photograph was of a newsworthy event and was inherently original as he was the only person to photograph the incident. The Eastern District of New York found sufficient originality because "the Photograph at issue here recorded a (manifestly) newsworthy event at a unique time and from a unique angle." *Id.* at 465.

### b. Plaintiff has Failed to Provide Evidence of Which Photographs are Covered by the '330 Registration

Second, Plaintiff has still not provided definitive evidence that, if sufficiently original, the O'Neil Photograph is covered by the '330 Registration. Rather than pointing to any "hard evidence" connecting the O'Neil Photograph to any of the 747 photographs covered by the '330 Registration, as required under the holdings in *Mantel v. Microsoft Corp.*, No. 16-CV-5277 (AJN), 2018 WL 1602863, at *5 (S.D.N.Y. Mar. 29, 2018), reconsideration denied, No. 16-CV-5277 (AJN), 2019 WL 367823 (S.D.N.Y. Jan. 30, 2019); *Ferdman v. CBS Interactive, Inc.*, 342 F. Supp. 3d 515, 529-30 (S.D.N.Y. 2018), Plaintiff merely shirks his responsibility and insists that Defendants must request the evidence that would prove the most basic element of Plaintiff's claim. Plaintiff's Cross-Motion for Summary Judgment p. 9.

During the course of discovery, Defendants served discovery requests seeking "[a]ll Documents relating to the [O'Neil] Photograph" (RFP 5), and "[a]ll Documents relating to Your acquisition of ownership of, or property rights in, the copyright in the [O'Neil] Photograph" (RFP 9). In response to these requests Plaintiff stated "Plaintiff shall produce all documents in his possession responsive to" these requests. Declaration of Daniel Schnapp dated October 28, 2020 ("Schnapp Decl."), Exhibit A.

6

Defendants also requested "[a]ll Documents relating to any alleged copyright held by Plaintiff in [the O'Neil] Photograph. This request includes, but is not limited to, any application, deposit materials, correspondence, Communications and/or other Documents either sent to or received from the U.S. Copyright Office" (RFP 19). *Id.*  In response to this request Plaintiff objected that some responsive documents were publicly available and "Defendant has equal access to the Copyright Office's records." *Id.* Plaintiff then stated that, subject to its objections, he "shall produce non-privileged documents in his possession responsive to Request No. 19."

These requests clearly seek any evidence that could specifically show that the O'Neil Photograph was one of the 747 photographs registered by the '330 Registration including, for example, a copy of the copyright application including thumbnails of the photographs submitted with the application, or the deposit copies on file with the Copyright Office. Instead, Plaintiff produced only the certificate of registration and application with no photographs attached, and separately one jpeg of the O'Neil Photograph. Schnapp Decl. Exhibit B.

While Plaintiff attempts to distinguish *Mantel* and *Ferdman*, both of these case are directly analogous to the case at hand. In *Mantel* and *Ferdman* the plaintiffs (in both of these cases the plaintiff was represented by Mr. Liebowitz) relied on copyright registrations covering multiple photographs without producing any documents showing that the photograph that was allegedly infringed was covered by the cited registration. *Mantel v. Microsoft Corp.*, No. 16-CV-5277 (AJN), 2018 WL 1602863, at *5 (S.D.N.Y. Mar. 29, 2018), reconsideration denied, No. 16-CV-5277 (AJN), 2019 WL 367823 (S.D.N.Y. Jan. 30, 2019); *Ferdman v. CBS Interactive, Inc*., 342 F. Supp. 3d 515, 529-30 (S.D.N.Y. 2018). Both Courts ruled that plaintiff had not produced necessary "hard evidence" in order to prove their copyright infringement claims. The *Ferdman* court clearly stated that "Plaintiff's argument that Defendant could have obtained copies from

the Copyright Office does not address why Plaintiff did not produce the requested materials during discovery." *Ferdman* at 528.

*Mantel* also specifically found that "Defendants [are] entitled to rely on [Plaintiff's] representations and not seek their own certified copy of those same documents." *Mantel*, 2018 WL 1602863 at *4. Similarly, Defendants were entitled to rely on O'Neil's representation that he would produce documents responsive to Requests 5, 9, and 19 rather than seeking their own copy of the same documents.

In contrast, the case at hand is easily distinguishable from *Goodman* and *Masi*, the two cases that Plaintiff cites for his insistence that Defendants are required to provide the evidence to support his own claims. *Goodman v. Universal Beauty Prods. Inc.*, No. 17-cv-1716(KBF), 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018); *Masi v. Moguldom Media Grp. LLC*, No. 18 CIV. 2402 (PAC), 2019 WL 3287819, at *4 (S.D.N.Y. July 22, 2019). In *Goodman*, the registration at issue covered only one image, rather than the 747 photographs covered by the '330 Registration. *Goodman* at *5. In *Masi*, the plaintiff photographer himself filed the copyright registration, and therefore he was able to testify that the photographs at issue were included in the copyright application. *Masi* at *4. This is clearly distinguishable from the case at hand where O'Neil was not involved in the application for the '330 Registration and cannot even be sure that he took the O'Neil Photograph.  Def. 56.1 at ¶57.

Because a plaintiff in a copyright infringement case must show beyond reasonable dispute that the copied design is covered by the cited registration, Plaintiff has failed to plead the most basic element of copyright infringement, and his Cross-Motion for Summary Judgment on liability should be denied and Defendants' Motion for Summary Judgment and Attorneys' Fees

should be granted. *Louise Paris, Ltd. v. Standard Fabrics In'l, Inc.*, No. 15 CIV. 3250 (PKC), 2016 WL 4203548, at *3 (S.D.N.Y. Aug. 8, 2016).

## POINT II
### The Instagram Stories Post was Fair Use

Plaintiff's Cross-Motion for Summary Judgment should also be denied because all four of the fair use factors – (1) the nature and character of the use; (2) the nature and character of the underlying work; (3) the amount and substantiality used; and (4) the effect on the market – weigh in favor of a finding that the Instagram Stories Post was fair use. *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013) at 236.

### a. The Use was Transformative

The core question under the first factor of the fair use analysis is if the defendant's use is "transformative." *Id*. A transformation in the message or purpose of the work can qualify as a transformative use under the first factor. *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P*., 756 F.3d 73, 84 (2d Cir. 2014). Courts in this District have found that the purpose of a paparazzi photograph such as the O'Neil Photograph is "to document the comings and goings of celebrities, illustrate their fashion and lifestyle choices, and accompany gossip and news articles about their lives." *Barcroft Media, Ltd. v. Coed Media Group, LLC*, 297 F. Supp. 339, 352 (S.D.N.Y. 2017).

Ms. Ratajkowski's testimony, as well as the Instagram Stories Post itself, is clear evidence that its purpose is vastly different. Rather than merely documenting her location or her clothing, the Instagram Stories Post's purpose was to comment on the way Ms. Ratajkowski is constantly hounded by paparazzi like Plaintiff, and how not even shielding her face will stop them from trying to exploit her image. Declaration of Emily Ratajkowski, dated September 9, 2020 ("Ratajkowski Decl."), ¶8-9.

Plaintiff's Motion attempts to claim that the Instagram Stories Post "did not comment on the appropriateness of the [O'Neil] Photograph" when the caption "Mood Forever" is clearly a comment on how inappropriate it was for O'Neil to photograph her (and attempt to license the resulting photograph) when she had covered her face as a signal that she did not consent to being photographed. Ratajkowski Decl. ¶9. Plaintiff did not offer any evidence to disprove this statement.

Plaintiff's Motion focuses on the distinction between an "illustrative aid" and a use meant for commentary. *Barcroft*, 297 F. Supp. 3d at 352. As an initial matter, commentary or criticism is not required to render a use transformative where "the two works ha[ve] different messages and purposes." *Swatch*, 756 F.3d at 84. However, it is clear that the Instagram Stories Post was used as commentary, rather than as illustration. Ms. Ratajkowski did not post the Instagram Stories Post to show her followers what she looks like, what she was wearing, or who she was with. Instead, the Instagram Stories Post highlights the oppressive presence of paparazzi in Ms. Ratajkowski's life and comments on the fact that she is daily followed by strangers who take and exploit her image even when she is clearly signaling that she does not want to be photographed. Where, as here, "the copyrighted work is itself the subject of the story" the new use "transform[s] the function of the work in the new context." *Barcroft*, 297 F. Supp. 3d at 352.

Plaintiff also attempts to argue that the Instagram Stories Post was a commercial use when it clearly was not. Plaintiff's Cross-Motion for Summary Judgment p. 18. As the Supreme Court has stated, "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985). Additionally, because

"nearly all of the illustrative uses listed in the preamble paragraph of § 107 ... are generally conducted for profit in this country," *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 584, 114 S. Ct. 1164, 1175, 127 L. Ed. 2d 500 (1994) (internal quotation marks omitted), courts "do not give much weight to the fact that the secondary use was for commercial gain." *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc*., 150 F.3d 132, 142 (2d Cir. 1998).

Plaintiff fails to point to any theory under which the Instagram Stories Post could be a commercial use. The Instagram Stories Post was not an advertisement. *Consumers Union of U.S., Inc. v. New Regina Corp.*, 664 F. Supp. 753, 761 (S.D.N.Y. 1987). It was not meant as a means of enhancing Ms. Ratajkowski's or any of her businesses' marketability. *Lish v. Harper's Magazine Found*., 807 F. Supp. 1090, 1101 (S.D.N.Y. 1992), amended, No. 91 CIV. 0782 (MEL), 1993 WL 7576 (S.D.N.Y. Jan. 7, 1993). Ms. Ratajkowski did not "directly and exclusively acquire[] conspicuous financial rewards from [her] use of the copyrighted material." *American Geophysical Union v. Texaco Inc*., 60 F.3d 913 (2d Cir.1994).

Instead, Ms. Ratajkowski testified that she did not receive any compensation in connection with the Instagram Stories Post. Def. 56.1 ¶75. The only shred of evidence that Plaintiff can point to in opposition is that Ms. Ratajkowski links to the website of her swimsuit clothing line on her Instagram account. Plaintiff's Cross Motion for Summary Judgment p. 18. First, this link is not even visible when viewing the Instagram Stories Post. Dkt. 44-2. Second, this does not amount to evidence that Ms. Ratajkowski "stands to profit" from temporarily posting the image commenting on her harassment by the paparazzi when she has clearly and consistently testified that she did not profit in any way from the Instagram Stories Post. Def. 56.1 ¶75.

11

Additionally, the character and length of the use was minimal. The Instagram Stories Post was only up for 24 hours; it was not reposted or shared. *Davis v. Gap, Inc*., 246 F.3d 152, 172 (2d Cir.2001) (where unauthorized copying is trivial, "the law will not impose legal consequences"). Ms. Ratajkowski chose to post only to the Instagram stories function – which automatically deletes after 24 hours – rather than the "grid" function where the post would have stayed and been visible to the public until such time as Ms. Ratajkowski chose to delete it.

The legal maxim "de minimis non curat lex" (sometimes rendered, "the law does not concern itself with trifles") "insulates from liability those who cause insignificant violations of the rights of others." *Ringgold v. Black Entm't Television, Inc*., 126 F.3d 70, 74 (2d Cir. 1997). In deciding if an infringement is "a technical violation of a right so trivial that the law will not impose legal consequences" the court may consider "the length of time the copied work is observable" *Id*. at 75. Posting an image – that would not be licensed – for only 24 hours is exactly the type of "de minimis" use that should be protected as fair use.

Accordingly, the character of the Instagram Stories Post is transformative and the first factor weighs in favor of a finding of fair use.

### b. The O'Neil Photograph is Subject to Only Minimal Protection, if Any

The second fair use factor looks to "the nature of the copyrighted work." 17 U.S.C. § 107(2). This factor is of limited usefulness where, as here, the creative work of art is being used for a transformative purpose, but nevertheless weighs in favor of Defendants. *Blanch v. Koons*, 467 F.3d 244, 257 (2d Cir. 2006). "This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586.

This Court has explicitly held that paparazzi images "do not reflect substantial creative expression" and are "further from the core of copyright protections than creative or fictional

12

works would be" *Barcroft*, 297 F. Supp. 3d at 354. This is especially true where, as here "[t]he photographer[] predominantly captured [his] subjects in public, as they naturally appeared, and were not tasked with directing the subjects, altering the backdrops, or otherwise doing much to impose creative force on the Images or infuse the Images with their own artistic vision." *Id*. Because of this, the second factor weighs in favor of a finding that the Instagram Stories Post was fair use.

### c. The Amount and Substantiality of the O'Neil Photograph Used Weighs in Favor of a Finding of Fair Use

The third fair use factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). The third factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole… are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. Additionally, "this factor 'weighs less when considering a photograph — where all or most of the work often must be used in order to preserve any meaning at all — than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value.'" *McGucken v. Newsweek LLC*, No. 19 CIV. 9617 (KPF), 2020 WL 2836427, at *8 (S.D.N.Y. June 1, 2020), reconsideration denied sub nom. *ELLIOT McGUCKEN, Plaintiff, v. NEWSWEEK LLC, Defendant.*, No. 19 CIV. 9617 (KPF), 2020 WL 6135733 (S.D.N.Y. Oct. 19, 2020).

Here, the Instagram Stories Post needed to show Ms. Ratajkowski's whole body, the flowers covering her face, and the background in order to comment on the oppressive presence of paparazzi in her life. Accordingly, this factor weighs in favor of a finding of fair use.

### d. There was no Harm to the Market for the O'Neil Photograph

The fourth fair use factor looks to "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  There is no effect on the market where, as here, no apparent market for the copyrighted work exists.

This factor requires courts to look to whether infringement will affect "traditional, reasonable, or likely to be developed markets." *Bill Graham Archives*, 448 F.3d at 614; *Am. Geophysical*, 60 F.3d at 930. Thus, "[f]air use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied." *Harper & Row*, 471 U.S. at 566–67, 105 S.Ct. 2218. "In cases where courts have found the fourth factor to weigh in favor of the defendant, it was undisputed that Plaintiff had no intention of entering the market, or was unable to take advantage of use in that manner." *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 412, 432 (S.D.N.Y. 2018).

Plaintiff's own testimony was that the O'Neil Photograph could not be licensed because Ms. Ratajkowski's face was covered. Def. 56.1 ¶24. This is also evidenced by the fact that, while Plaintiff produced documentation of some minimal licensing of the other photographs which totaled $2.55, Plaintiff did not produce evidence of any licenses of the O'Neil Photograph. Def. 56.1 at ¶40-42. Presumably, if Plaintiff had any such evidence, he would have produced it. Accordingly, Plaintiff testified that there was no market for the O'Neil Photograph and the licensing evidence supports this.

The fact that Splash News uploaded the O'Neil Photograph so that someone *could* license it does not mean there was anyone who *would* license the photograph. Plaintiff cannot now argue that the Instagram Stories Post had a negative effect on this non-existent market. *White v. W. Pub. Corp.*, 29 F. Supp. 3d 396, 400 (S.D.N.Y. 2014) (finding no effect on the market where "no

14

secondary market exists in which [plaintiff] could license or sell the [works]…, as no one has offered to license any of [plaintiff's works]").

Plaintiff tries to claim that there is a presumption of market harm because "Ratajkowski's secondary use was not transformative and constituted a wholesale reproduction of O'Neil's original photograph." Plaintiff's Cross-Motion for Summary Judgment p. 22. First, as discussed above, the Instagram Stories Post was a transformative use. *Google, Inc*., 804 F.3d at 223 (citing *Campbell*, 510 U.S. at 591, 114 S.Ct. 1164) ("There also exists a close linkage between the first and fourth factors, in that the more the copying is done to achieve a purpose that differs from the purpose of the original, the less likely it is that the copy will serve as a satisfactory substitute for the original.") Second, the Instagram Stories Post is not a "wholesale reproduction" as it adds a critical caption. The Instagram Stories Post was only visible for 24 hours. Accordingly, there is no presumption of harm to the market.

As laid out above, all four factors weigh in favor of a finding that the Instagram Stories Post was fair use. Accordingly, Defendants' Motion for Summary Judgment and Attorneys' Fees should be granted and Plaintiff's Cross-Motion for Summary Judgment should be denied.

## POINT III
**Defendant's Remaining Affirmative Defenses Should Not Be Dismissed**

### a.  The First, Third, and Twelfth Affirmative Defenses Should Not Be Dismissed

Defendants' First Affirmative Defense is that Plaintiff failed to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007) (a complaint must plead "enough facts to state a claim to relief that is plausible on its face.") Defendants' Third Affirmative Defense is that the copyright is invalid or unenforceable. *Oriental Art Printing, Inc. v. Goldstar Printing Corp*., 175 F. Supp. 2d 542, 546 (S.D.N.Y. 2001) aff'd mem., 34 F. App'x 401 (2d Cir. 2002) (refusing to enforce a copyright covering photographs that were not sufficiently original). Defendants'

Twelfth Affirmative Defense is that the O'Neil Photograph is merely scenes a faire or unprotected by the merger doctrine. *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) ("scenes a faire, or sequences of events that 'necessarily result from the choice of a setting or situation,' do not enjoy copyright protection."); *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991) (merger doctrine finds that "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself.")

As discussed in Point I(a) above, the O'Neil Photograph does not have the requisite originality required to qualify for copyright protection. Accordingly, Plaintiff has failed to allege ownership of a valid copyright covering the O'Neil Photograph, any copyright covering the O'Neil Photograph is invalid, and the depiction of Ms. Ratajkowski featured in the O'Neil Photograph is merely unoriginal scenes a faire.

### b. The Second, Fourth, Seventh, Eighth, Ninth, and Tenth, Affirmative Defenses Should Not Be Dismissed

Defendants' Second Affirmative Defense is non-infringement. Defendants' Fourth Affirmative Defense is fair use. *Cariou*, 714 F.3d at 705. Defendants' Seventh Affirmative Defense is for authorized use. Defendants' Eighth Affirmative Defense is innocent intent. Innocent intent refers to the downward adjustment in the amount of statutory damages available where "the infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). Defendants' Ninth Affirmative Defense is lack of willfull infringement. *Id*. Defendants' Tenth Affirmative Defense is constitutional defenses. 17 U.S.C. §107.

As discussed in Point II above, the Instagram Stories Post is fair use. Accordingly, it is not an infringing use, the use is authorized, Ms. Ratajkowski had innocent intent and was not

willfully infringing. The Instagram Stories Post and its fair use of the O'Neil Photograph are protected by the United States Constitution.

### c. The Fifth and Sixth Affirmative Defenses Should Not be Dismissed

Defendants' Fifth Affirmative Defense is estoppel. "Estoppel requires that the plaintiff aid the defendant in committing the acts alleged to constitute infringement or that plaintiff induce or cause defendant to perform such acts." *Coleman v. ESPN, Inc*., 764 F. Supp. 290, 295 (S.D.N.Y. 1991). Defendants' Sixth Affirmative Defense is waiver. *Coach, Inc. v. Kmart Corps*., 756 F. Supp. 2d 421, 428 (S.D.N.Y. 2010) ("Waiver is the intentional relinquishment of a known right.")

Plaintiff took the O'Neil Photograph of Ms. Ratajkowski without her consent and despite her clear signal that she did not want to be photographed. He then attempted to license the O'Neil Photograph in order to exploit Ms. Ratajkowski's fame and notoriety, seeking to make money off of her without her involvement or consent. Because Plaintiff would have no image to attempt to license without Ms. Ratajkowski, he is estopped from claiming that Ms. Ratajkowski's use of the O'Neil Photograph has damaged him, and he has waived his right to allege infringement against Ms. Ratajkowski.

### d. The Eleventh, Thirteenth, and Fourteenth Affirmative Defenses Should Not be Dismissed

Defendants' Eleventh Affirmative Defense is copyright misuse. *Coleman*, 764 F. Supp. at 295 (S.D.N.Y. 1991) ("The defense of copyright misuse prevents a copyright owner from recovering for infringement where he has impermissibly extended the copyright monopoly in a manner which constitutes an unreasonable restraint of trade.") Defendants' Thirteenth Affirmative Defense is unclean hands. "In a copyright case, the defense of unclean hands requires that the plaintiff either participated in the acts of infringement or that plaintiff

17

committed some 'transgression' … resulting in harm or prejudice to the defendant." *Id*. Defendants' Fourteenth Affirmative Defense is bad faith.

As discussed in detail in Point V below, Plaintiff and his counsel brought this case knowing that the damages they could collect, if any, were miniscule and completely out of proportion with the cost of bringing such litigation. Plaintiff's counsel has a proven track record of launching full scale and excessive litigation merely to extort exorbitant settlements over negligible infringement.  Accordingly, this case is a misuse of copyright and was brought in bad faith with unclean hands.

Because these affirmative defenses are valid and supported by the evidence, Plaintiff's Cross-Motion for Summary Judgment must be denied.

## POINT IV
## Plaintiff Is Not Entitled to Any Damages

Plaintiff tries to downplay the fact that there is no evidence that the Instagram Stories Post caused any damages by incorrectly claiming the issue is not relevant to the Motions for Summary Judgment. As discussed above, Plaintiff's own testimony and document production shows that the O'Neil Photograph was not and would never be licensed. And yet, Plaintiff brought this case, originally seeking actual damages. In his supplemental initial disclosures Plaintiff instead stated he was seeking $30,000 in statutory damages.

Despite Plaintiff's citation to *Feltner*, this District has found that a defendant was entitled to summary judgment where "plaintiff provide[d] absolutely no evidence from which a reasonable inference in [his] favor may be drawn" on the issue of his entitlement to statutory damages. *Papazian v. Sony Music Entm't*, No. 16-CV-07911 (RJS), 2017 WL 4339662, at *6 (S.D.N.Y. Sept. 28, 2017); *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 326 (S.D.N.Y.

2008) (granting defendants' motion for summary judgment "to the extent that plaintiff may not recover statutory damages").

As discussed in detail in Defendants' Motion for Summary Judgment, statutory damages are not appropriate here, where there was no possibility of actual damages. Instead, statutory damages should bear some relationship to the actual damages suffered and are not intended to provide a plaintiff with a windfall recovery. *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568 (S.D.N.Y. 1995); *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 677 F.Supp. 740, 769 (S.D.N.Y.1988) (*citing Lottie Joplin Thomas Trust v. Crown Publishers*, 592 F.2d 651 (2d Cir.1978).

Additionally, Plaintiff is completely barred from collecting statutory damages under 17 U.S.C. §412 if the O'Neil Photograph was not published. Plaintiff alleges the O'Neil Photograph was taken on September 13, 2019 and the Instagram Stories Post was posted for 24 hours on or around September 18, 2019. Def. 56.1 ¶31; Plaintiff's Rule 56. 1 ¶25. The '330 Registration has an effective date of October 3, 2019. Schnapp Decl. Exhibit B. 17 U.S.C. §412 bars the recovery of statutory damages for infringement of an unpublished work that occurred prior to the effective date of registration.

The Copyright Act defines publication as "the distribution of copies … of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies … to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." 17 U.S.C. §101. This Court has found that it is unclear whether providing photographs to a single licensing agency would constitute "publication". *Palmer/Kane LLC v. Gareth Stevens Publg*, No. 1:15-CV-7404-GHW, 2017 WL 3973957, at *11 (S.D.N.Y. Sept. 7, 2017).

"It has long been settled that the taking of orders through employment of samples, catalogs, or advertisements of a work does not amount to publication of the work." *Hub Floral Corp. v. Royal Brass Corp.*, 454 F.2d 1226, 1229 (2d Cir. 1972). The case at hand is analogous to *Hub Floral*, where the court found that the distribution of samples, even when used for the purpose of taking orders, did not amount to a publication when the product was not sold or made available to the public. *Id*. Similarly, when only "a few trusted customers were allowed to see the designs in confidence" and no products "could be made until after purchase" the distribution did not qualify as a publication. *Peter Pan Fabrics, Inc. v. Dan River Mills, Inc*., 295 F. Supp. 1366, 1368 (S.D.N.Y.), aff'd, 415 F.2d 1007 (2d Cir. 1969).

Here, the only evidence Plaintiff provides to support his claim of publication is that "Plaintiff uploaded the [O'Neil] Photograph to Splash, a stock photography agency which makes Plaintiff's photographs available for licensing in exchange for a fee." Plaintiff's Rule 56.1 Statement ¶24. Splash News ("Splash") is a membership service, where users must have an account in order to see the photographs available to license. Splash also offers only sample photographs – usually featuring watermarks and in poor resolution – on their site until a user actually purchases a clean copy of the photograph. Schnapp Decl. Exhibit C. There is no evidence that the O'Neil Photograph was ever licensed. Accordingly, providing the O'Neil Photograph to Splash is merely the use of a sample and does not qualify as publication.

Plaintiff did not produce any documents or testimony that the O'Neil Photograph was ever actually offered for sale to the public as required by 17 U.S.C. §101. Accordingly, the O'Neil Photograph was never published, and statutory damages are barred by 17 U.S.C. §412.

## POINT V
## Defendants' Motion for Attorneys' Fees Should Be Granted

Defendants are entitled to attorneys' fees under two theories. First, if Defendants' Motion

for Summary Judgment is granted, then Defendants are entitled to an award of attorneys' fees as

a prevailing party under the copyright act. 17 U.S.C. §505; *Polsby v. St. Martin's Press, Inc.*, 8

F. App'x 90, 92 (2d Cir. 2001).

Second, attorneys' fees are appropriate under FRCP 11, 28 U.S.C. §1927 and the Court's

inherent powers because this case is frivolous, objectively unreasonable, and brought in bad

faith.

Courts in neighboring Districts have found that where Mr. Liebowitz brought a case, as

he did here, seeking $30,000 for infringement of one photograph without any evidence of actual

damages, it amounted to sanctionable frivolity. *Adlife Mktg. & Commc'ns Co., Inc. v.

Buckingham Bros.*, LLC, No. 519CV0796LEKCFH, 2020 WL 4795287, at *7 (N.D.N.Y. Aug.

18, 2020); *See Seelie v. Original Media Grp. LLC*, No. 19-CV-5643, 2020 WL 136659, at *2

(E.D.N.Y. Jan. 13, 2020); *see also Bryant v. Media Right Prods.*, 603 F.3d 135, 143-44 (2d Cir.

2010); *Stridiron v. Cmty. Broadcasters, LLC*, No. 519CV108MADATB, 2019 WL 2569863, at

*1 (N.D.N.Y. June 21, 2019) (noting a lack of support for maximum statutory damages, and

stating that "courts have found the statutory minimum of $750 to be a more appropriate award"

for the infringement of a single photograph when a plaintiff does not provide any evidence

supporting a higher amount); *cf. Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 363

(S.D.N.Y. 2006 (imposing sanctions under the court's inherent authority for an improper and

unreasonable claim of actual damages, finding it significant that the attorney was "clearly aware

of the law").

While generally the statutory minimum is $750, if any alleged infringement was innocent, then the statutory minimum may be reduced to $200. 17 U.S.C. § 504(c)(2). Use of the "innocent infringer" damage reduction is appropriate in cases where the defendant proves that it did not know about plaintiff's copyright and immediately ceased its infringing conduct upon being made aware of plaintiff's copyright claim. *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 477 (S.D.N.Y. 2001). Here, Ms. Ratajkowski was unaware that a picture of her own image that could not otherwise be licensed was eligible for copyright protection, and due to the nature of the social media platform, the Instagram Stories Post was automatically deleted well before Ms. Ratajkowski became aware of Plaintiff's claim.

Because the statutory minimum of $200 would be the only appropriate statutory award, O'Neil has suffered no actual damages, and Liebowitz has been told many times that $30,000 is an inappropriate award for the alleged infringement of one photograph, it is clear that this action is frivolous and unreasonable. *Baker*, 431 F. Supp. 2d at 358 (S.D.N.Y. 2006) ("[R]ather than pursuing resolution of a fairly minor dispute in good faith, the record suggests that [plaintiff] (and his counsel) filed and maintained this suit in an attempt to extract a significant payment from perceived 'deep pocketed' defendants (and in an attempt to garner publicity for [plaintiff's] agent and for his lawyer).")

O'Neil has acted in an "objectively unreasonable manner by asserting an utterly meritless claim and a patently frivolous position." *Screenlife Establishment*, 868 F.Supp. at 51-52 (internal quotation marks omitted). This case is objectively unreasonable because it is "lacking in basis" and has an "objective lack of merit." *Polsby v. St. Martin's Press, Inc*., No. 97 Civ. 690, 2000 WL 98057, at *2 (S.D.N.Y. Jan. 18, 2000), aff'd, 8 F. App'x 90 (2d Cir. 2001).

22

Plaintiff and his counsel clearly did not make any investigation into whether any actual damage occurred before they alleged infringement by Defendants. They claimed actual damages that were wildly out of proportion for what any use of the O'Neil Photograph could possibly be worth.  It was obvious from before the filing of the Complaint that these allegations were baseless.

Plaintiff knew that the O'Neil Photograph had no value because Ms. Ratajkowski was unidentifiable, and therefore he had suffered no actual damages at the time that he filed his Complaint. Additionally, the Instagram Stories Post was automatically deleted, making any allegations of damages even more unreasonable. Plaintiff and his counsel also did not do any research into whether or not Emrata has anything to do with the subject matter of his complaint despite forcing Emrata to defend this case, before they admitted that they have no case against Emrata.  At a minimum, Emrata should be awarded its attorney's fees and costs.

Accordingly, Defendants' Motion for Summary Judgment and Attorneys' Fees should be granted.

## IV.    CONCLUSION

Plaintiff and his counsel have brought this case in bad faith, attempting to turn a critical internet post that was available for only 24 hours into an unsubstantiated payday. This case, and the subsequent Cross-Motion for Summary Judgment was brought despite the fact that Plaintiff has not produced the evidence necessary to support his claims or dispute the fact that the Instagram Stories Post was clearly fair use.

Accordingly, Plaintiff's Cross-Motion for Summary Judgment should be denied and Defendants' Motion for Summary Judgment and Attorneys' Fees should be granted.

Dated: October 28, 2020

New York, New York

NIXON PEABODY LLP

**/s/Daniel Adam Schnapp/**
Daniel A. Schnapp
55 W. 46th Street
New York, NY 10036
(212) 940-3026
dschnapp@nixonpeabody.com
*Attorneys for Defendants*

24