UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT O'NEIL,<br><br>                              Plaintiff,<br><br>        - against –<br><br><br>EMILY RATAJKOWSKI and<br>EMRATA HOLDINGS, LLC<br><br>                              Defendant. | 1:19-cv-09769 (AT) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AGAINST
DEFENDANT RATAJKOWSKI FOR COPYRIGHT INFRINGEMENT**

Plaintiff Robert O'Neil ("Plaintiff" or "O'Neil") respectfully submits this reply

memorandum of law in further support of his motion for partial summary judgment on liability

for copyright infringement against Defendant Emily Ratajkowski ("Defendant" or

"Ratajkowski").

**PRELIMINARY STATEMENT**

Defendant Emily Ratajowski is a high profile celebrity who uses her Instagram account,

which boasts over 26 million followers, as a platform to expand the recognition of her

namebrand, increase her visibility in the public sphere, and ultimately monetize her image. To

that end, Ratajkowski is perfectly entitled to post content to her Instagram account which she

either creates herself, or which she licenses from others.

What she is not entitled to do, under the Copyright Act, is post photographs of herself

that do not belong to her, particularly when an actual market exists for the public consumption of

such photographs.  By doing so, Ratajkowski deprives professional photographers of their statutory right to control the distribution of their work and earn a licensing fee.

Plaintiff Robert O'Neil earns a living by taking candid photographs of celebrities in the public sphere.  Why? Because there is intense public demand to see celebrities walk about in their everyday lives. And the protections accorded to photographers under the Copyright Act serve to benefit the public interest by incentivizing photographers to take such quality images. Plaintiff is not just a super-fan with an iPhone.  Like many paparazzi, this is what he does to put food on the table.

Ratajkowski asks the Court to condemn Plaintiff, and by extension all paparazzi, for doing that which has been done since the 1950's: photographing celebrities as they walk about in public.  It's not easy work, and one would think that Ratajkowski should be grateful and humbled that professional photographers seek to bolster her own celebrity, a valued commodity which enables Ratajkowski to live the high life of privilege and public adoration.  But, alas, as this case amply demonstrates, the symbiotic relationship between celebrities and paparazzi photographers is complex and nuanced.

Ratajkowski does not deny that she copied a full-scale version of Plaintiff's photograph and displayed it on her Instagram account without his permission and without compensation. She does not deny that she routinely expropriates photographs from the internet and displays them on her Instagram out of a sense of entitlement (namely, because she's famous). In this case, Defendant proffers several arguments as to why she should be privileged to do so.

First, she contends that Plaintiff's work is not original (and therefore not protectable under the Copyright Act).  But if the Photograph at issue is deemed lacking in originality, then no photograph of any celebrity walking in public can be considered original.  That's plainly not

the law.  Indeed, if the Court were to determine that the Photograph here lacks originality, then most photographs of movie stars, politicians, fashion models or sports figures whose images are captured in the public sphere (without their permission) would altogether lose copyright protection.  The reason why the law does not require photographers to obtain the permission of their celebrity subjects is that it would lead to unbridled censorship.

Second, Defendant's argument that O'Neil's registration certificate lacks validity has already been rejected by four judges in this District.  It was Ratajkowski's obligation to contact the Copyright Office during discovery if she wanted to rebut the statutory presumption of validity. Defendant has failed to cite authority to the contrary (other than courts which have issued discovery sanctions which is not at issue here).  Accordingly, there is no material dispute of fact concerning the elements of Plaintiff's infringement claim which requires a showing of (a) valid copyright ownership; and (b) actual copying without authorization.

Ratajkowski's primary affirmative defense is fair use (this is the only defense briefed in her opening motion).  She alleges that because she added the two words "mood forever" underneath the Photograph, she transformed O'Neil's photograph into something novel. Ratajowksi claims that the two-word phrase intended to comment on her feelings concerning paparazzi and her lack of privacy.  But the issue is not what Ratajkowski intended by the phrase for sake of her litigation posture, but rather how the public would have received such a phrase in conjunction with the Photograph as displayed on her Instagram page.

The words "mood forever", coupled with the flowers covering her face, could readily be construed as Ratajkowski just having a somber day, or not wearing makeup in public, or some other trivial concern.  Nobody but Ratajkowski or her lawyer would have interpreted this two word phrase to mean that she was fed up with "constant paparazzi attention."  Had she written a

500-word piece on her concerns accompanied by the photograph along with criticism directed at the merits of Plaintiff's work, she might have a more colorable claim to transformative use. But the open-ended catchphrase "mood forever", standing alone under a wholesale reproduction of the Photograph, is far too generic to convey any concise political or social commentary required to find transformative fair use under the first fair use factor.

Ratajkowski also overlooks that the third and fourth statutory factors strongly weigh against fair use. The Photograph is undoubtedly creative (second factor); she used the entire image in full-scale and full-color without any aesthetic alteration (third factor), and there was a fully functioning licensing market for the work as it was available for commercial license on Splash, a stock photography agency with which Ratajkowski is familiar (fourth factor). Under these facts, if the Court were to find fair use, it would open "Pandora's box" for just about any Instagram user to post registered photographs to their accounts accompanied by generic, open-ended phrases. Such a finding would undermine the purpose of the Copyright Act and deprive photographers of their ability to earn a living, thereby dis-incentivizing the creation of quality work for the benefit of the public. Accordingly, the fair use defense should be rejected.

Ratajkowski's remaining affirmative defenses, which largely sound in equity or are duplicative, should be dismissed for lack of any factual evidence or legal incognizability.

Finally, to overcompensate for the lack of merit to her defenses, Ratajkowski and her counsel continue to hurl *ad hominen* attacks at Richard Liebowitz and Liebowitz Law Firm, PLLC, which has demonstrated a *bona fide* commitment over the last five years to protect the rights of photographers and enforce the Copyright Act. Further, there is simply no evidence that Mr. Liebowitz has violated any court orders or failed to comply with his discovery obligations. Cases should be decided based on the facts before the Court, not unrelated matters.

## ARGUMENT

**POINT I:**      **DEFENDANT HAS FAILED TO REBUT THE VALIDITY OF PLAINTIFF'S COPYRIGHT OWNERSHIP**

**A.      The Photograph Unquestionably Meets the Minimum Originality Threshold**

In opposition, Defendant argues that that the Photograph is not sufficiently original to meet the "minimum degree of creativity" necessary to establish copyright protection. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991) (holding that the only requirement for copyrightability of a work is that it "possesses at least some minimal degree of creativity . . . no matter how crude, humble or obvious it might be."); *Mannion v. Coors Brewing Co.,* 377 F.Supp.2d 444, 451 (S.D.N.Y. 2005) ("Almost any photograph may claim the necessary originality to support a copyright.")

Ratajowski is not the first defendant to make this argument, and will not be the last. But she has failed to produce any authority for the proposition that candid images of celebrities (i.e., paparazzi shots) are not copyrightable. Comparing photographs of live human beings with staged photos of dinosaur fossils is borderline frivolous. *Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp.2d 268 (S.D.N.Y. 2005). Moreover, despite the strained attempt to distinguish celebrities on movie sets versus celebrities on the street, this is a distinction without a difference. *Sands v. CBS Interactive Inc.,* No. 18-CV-7345 (JSR), 2019 WL 1447014, at *3 (S.D.N.Y. Mar. 13, 2019) (paparazzo's candid photographs of celebrity actors on public film set deemed original). Finally, Defendant fails to address Judge Vyskocil's recent decision in *Iantosca*, 2020 WL 5603538, at *5 ("a photograph of a [fashion] model, is a typical 'creative' work and therefore entitled to copyright protection").

**B.      Defendant Has Failed to Produce Any Hard Evidence To Rebut the Presumption of Validity of Registration or the Sworn Declaration on Record**

Defendant also contends that Plaintiff has failed to produce any "hard evidence" that the Photograph is on deposit with the 330 Registration.  But Defendant overlooks that Congress, Rule 56 and prevailing caselaw authority in this District places such evidentiary burden on Defendant.  *See Iantosca,* 2020 WL 5603538, at *4 (rejecting defendant's challenge to validity of copyright based on "speculation" and noting that "[i]t is the Defendant's obligation, during discovery, to contact the USCO and request deposit copies to be used to rebut the validity of the copyright registration.") (citing *Goodman v. Universal Beauty Prods. Inc.*, No. 17-cv-1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018).

Contrary to Defendant's assertions, Plaintiff objected to producing official deposit copies during discovery, as was his statutory right.  Thus, Defendant has known since March 2020, long before the discovery period ended, that it needed to contact the Copyright Office if it wanted to rebut the validity of the registration. Undersigned counsel certifies that Plaintiff's response to Defendant's Document Request No. 19 reads exactly as follows:

> Document Request No. 19: *All Documents relating to any alleged copyright held by Plaintiff in any of the Subject Photograph. This request includes, but is not limited to, any application, deposit materials, correspondence, Communications and/or other Documents either sent to or received from the U.S. Copyright Office.*
>
> Response to Document Request No 19: Plaintiff objects to Request No.19 on grounds that any responsive documents consist of publicly available information and are therefore equally accessible to Defendant. Plaintiff further objects to Request No. 19 to the extent it asks Plaintiff to incur additional fees by requesting deposit copies from the Copyright Office and given that Defendant has equal access to the Copyright Office's records. Subject to the foregoing General and Specific Objections, Plaintiff shall produce nonprivileged documents in his possession responsive to Request No. 19. (underlined added(

Moreover, Plaintiff is not in "possession" of official deposit copies and therefore has no obligation to produce them.  Such documents must be obtained from the Copyright Office for additional fees.  Finally, Plaintiff has produced unrebutted evidence that the Photograph is on

deposit with the USCO as part of the 330 Registration, consisting of a declaration sworn under penalty of perjury by Donna Halperin, who personally deposited the Photograph with the USCO [PS ¶¶ 68, 71 (Halperin Declr. ¶¶ 7-9)]  Defendant had the opportunity to depose Ms. Halperin but failed to do so.  Accordingly, Defendant cannot be heard to complain about this issue.

**POINT II:**     **THE FAIR USE DEFENSE SHOULD BE DISMISSED**

With respect to the first factor, Ratajkowski primarily contends that her use of the Photograph was transformative because "the Instagram Stories Post highlights the oppressive presence of paparazzi in Ms. Ratajkowski's life and comments on the fact that she is daily followed by strangers who take and exploit her image even when she is clearly signaling that she does not want to be photographed." [Dkt. #50, p. 10]  But other than Ratajkowski and her lawyer, nobody would possibly know this by looking at the Photograph with a generic comment "mood forever."

Defendant's *ex post facto* attempt to manufacture a public controversy by invoking Ratajkowski's own subjective state-of-mind concerning her intent behind the "mood forever" phrase is meritless. *See, e.g., Brammer v. Violent Hues Prods.*, LLC, 922 F.3d 255, 263 (4th Cir. 2019) ("the difference in the parties' subjective intent is not the proper focus of the transformation inquiry").  "Although a secondary user may 'go to great lengths to explain and defend his use as transformative,' *Cariou*, 714 F.3d at 707, a simple assertion of a subjectively different purpose, 'by itself, does not necessarily create new aesthetics or a new work.' *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012).

Moreover, Defendant fails to address the above-cited authorities in her opposition brief and therefore waives the argument that her subjective state-of-mind can be used to define her stated purpose of the generic phrase "mood forever." *See, e.g., Cafasso v. Nappe*, No. 3:15-CV-

920 (MPS), 2017 WL 4167746, at *5 (D. Conn. Sept. 20, 2017) (noting that party waives argument by failing to address it in opposition to motion for summary judgment); *In re UBS AG Secs. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments by its opponent that it fails to address).

Ratajkowski's argument that her use of the Photograph was not-for-profit should be rejected. Her Instagram account is geared towards selling product to her fashion line and booking modeling gigs. As a celebrity and high profile public figure, Ratajowski's persona is itself the product and her Instagram account is a substantial part of marketing that persona. *Campbell,* 510 U.S. at 585, 114 S.Ct. 1164 (The use "of a copyrighted work to advertise a product, even in a parody, will be entitled to less indulgence under the first factor of the fair use enquiry than the sale of a parody for its own sake.").

Defendant has also failed to address Plaintiff's argument that the Photograph was used in bad faith. Accordingly, any opposition to this argument should be deemed waived. *See, e,.g,* Cafasso at *5, *In re UBS AG Secs. Litig.* at *11. In sum, the first factor strongly favors Plaintiff.

With respect to the third factor, Defendant used an entire full-scale, full color image and made no aesthetic alterations of any kind. It was wholesale reproduction. Under such circumstances, this factor weighs against fair use.

Finally, as to the fourth factor, Defendant's secondary use impairs the actual market for the Photograph because there was a fully functioning market demand for O'Neil's work. [PS ¶24; O'Neil Decl. ¶ 7, Ex. C; O'Neil Tr. 101:2:6] Third-party Splash made the photograph available for commercial licensing [PS ¶ 24; O'Neil Decl. ¶ 7, Ex. C; O'Neil Tr. 101:2:6] which means that an actual commercial market existed for the Photograph (regardless of whether Splash sub-licensed it to another third party).

In sum, because the first, third and fourth factors weigh heavily in Plaintiff's favor, the fair use defense should be dismissed as a matter of law.

**POINT III:** **DEFENDANT'S REMAINING AFFIRMATIVE DEFENSES SHOULD BE DISMISSED AS A MATTER OF LAW**

Defendant has failed to provide any evidence to support her remaining affirmative defenses, which are largely derivatives of the fair use defense and lack of copyright validity defenses which have already been addressed. Moreover, these defenses are not legally cognizable on these set of facts.

The notion that estoppel or copyright misuse can be established because O'Neil didn't have Ratajowski's permission to take her photograph while walking on a public sidewalk is absurd. If photographers were required to obtain the permission of celebrities, politicians, athletes, models, or other public figures, there would be unbridled censorship. Moreover, Defendant has failed to cite any caselaw authority for the proposition that paparazzi photographers "misuse" their copyrights by taking photos of celebrities in the street and then offer them for commercial license. Defendant is essentially asking the Court to eradicate the entire industry of celebrity photographs, not to mention photojournalism and sports photography.

**POINT IV:** **THE COURT MAY AWARD STATUTORY DAMAGES EVEN IN THE ABSENCE OF ACTUAL DAMAGES**

Under Second Circuit law, a statutory damages plaintiff has no obligation to show actual damages or losses. *See Psihoyos v. John Wiley & Sons, Inc.*, No. 11 CIV. 1416 JPO, 2012 WL 5506121, at *4 (S.D.N.Y. Nov. 7, 2012), *aff'd*, 748 F.3d 120, 127 (2d Cir. 2014); accord *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014) ("it is clear that statutory damages can be awarded even in the absence of sufficient

evidence supporting actual damages."). Accordingly, as per binding Second Circuit law, Plaintiff's claim for statutory damages should not be dismissed.

**POINT V:     DEFENDANT'S REQUEST FOR ATTORNEYS' FEES, COSTS AND SANCTIONS SHOULD BE DENIED**

As Judge Nathan recently found while this motion was pending, copyright cases involving photographs and the interaction between fair use vis-a-vis social media should not qualify for an award of fees or sanctions, even if dismissed, particularly as the Second Circuit has yet to rule on such novel questions. *Yang v. Mic Network, Inc.*, No. 18-CV-7628 (AJN), 2020 WL 6562403, at *3 (S.D.N.Y. Nov. 9, 2020) (citing *Rudkowski v. MIC Network, Inc.*, No. 17-cv3647 (DAB), 2018 WL 1801307, at **3–4 (S.D.N.Y. Mar. 23, 2018), *appeal withdrawn*, No. 18-2686, 2018 WL 6536114 (2d Cir. Nov. 2, 2018) (denying defendant's motion for fees because there was "no Second Circuit case directly addressing" the claim at issue and because "Plaintiff [had] made reasonable argument for the extension" of binding precedent)).

Here, the Second Circuit has yet to address the issue of whether a celebrity can claim fair use for posting a paparazzi's photograph to social media without permission. Indeed, this is the first District Court to even address the issue. Thus, even if the case is dismissed, Plaintiff or his counsel should not be penalized for advocating the protection of a photographer's rights in such novel and "cutting-edge" cases involving social media.

## CONCLUSION

For the foregoing reasons, Plaintiff Robert O'Neil respectfully requests that his motion for partial summary judgment on liability against Defendant Emily Ratajkowski for copyright infringement should be GRANTED. Ratajkowski's motion for summary judgment (and for fees and sanctions) should be DENIED in its entirety.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

by: **s/richardpliebowitz/___**
Richard P. Liebowitz
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
RL@LiebowtizLawFirm.com

*Counsel for Plaintiff*
*Robert O'Neil*