UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT O'NEIL,

                              Plaintiff,

            -against-

EMILY RATAJKOWSKI and EMRATA
HOLDINGS, LLC,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/28/2021__

19 Civ. 9769 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Robert O'Neil, brings this action alleging copyright infringement by

Defendants, Emily Ratajkowski and Emrata Holdings, LLC.  Compl., ECF No. 1.  The parties

cross-move for summary judgment.  ECF Nos. 37, 42.  For the reasons stated below, both

motions are GRANTED in part and DENIED in part.

## BACKGROUND

The facts discussed in this opinion are undisputed except where otherwise noted.  The

Court has drawn all reasonable inferences in favor of the nonmovant.  *See Costello v. City of

Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).[1]

Ratajkowski is a professional model and actress, who also heads a clothing line,

Inamorata.  Def. 56.1 Stmt. at 1–2, ECF No. 47; Pl. 56.1 Stmt. ¶ 57, ECF No. 45.  Ratajkowski

also personally runs an Instagram account with the username Emrata (the "Instagram Account").

Def. 56.1 Stmt. at 2–3.  Ratajkowski usually posts personal or political photographs, but she has

---

[1] The following facts are drawn from the parties' pleadings and submissions, including the complaint, the Rule 56.1
statements of undisputed facts, and the opposing party's responses.  Disputed facts are so noted.  Citations to a
paragraph in the Rule 56.1 statement also includes the opposing party's response.  Because Defendants did not
respond to Plaintiff's 56.1 statement, the Court considers those facts admitted.  *Kiefer v. Crane Co.*, No. 12 Civ.
7613, 2014 WL 6778704, at *1 (S.D.N.Y. Feb. 3, 2014).  However, the court may not rely solely on the statement of
undisputed facts contained in the moving party's Rule 56.1 statement; it also must be satisfied that "each statement
of material fact is supported by record evidence sufficient to satisfy the movant's burden of production[.]"  *Jackson
v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).

posted "sponsored posts" on her main Instagram feed, and, more rarely, her Instagram Stories, which disappear in 24 hours. *Id.*; Pl. 56.1 Stmt. ¶ 39; Ratajkowski Dep. Tr. at 17:19–18:2, 49:9–14, ECF No. 44-4. The main profile page of the Instagram Account also includes a link to her clothing line. Pl. 56.1 Stmt. ¶ 57. All money she makes through acting, modeling, or the Instagram Account flows to Emrata Holdings, LLC ("Emrata"). Ratajkowski Dep. Tr. at 85:3–15.

Plaintiff is a "paparazzi photographer," who generally attempts to take "candid" shots of celebrities unaware of his presence. Def. 56.1 Stmt. at 3.

On September 13, 2019, Plaintiff photographed Ratajkowski outside of the Adore Flower Shop in downtown Manhattan. *Id.* at 7–8. He took nine frames in rapid succession, including the photograph at issue here (the "Photograph"), which depicts Ratajkowski on the street, with her face covered by the bouquet of flowers she pulled in front of her face (an action Plaintiff interprets as her hiding from paparazzi photographers). Photograph, ECF No. 1-1; Def. 56.1 Stmt. at 7–8.

Plaintiff then uploaded the Photograph to Splash News ("Splash"), Plaintiff's agency. Def. 56.1 Stmt. at 5–6; Pl. 56.1 Stmt. ¶ 24. Splash posts Plaintiff's photographs online for licensing to its subscribers, in exchange for 40 percent of any license fees. Def. 56.1 Stmt. at 5; Pl. 56.1 Stmt. ¶ 24. Plaintiff made minimal, if any, income from the Photograph. O'Neil Dep. Tr. at 80:25–81:11, ECF No. 44-5. Plaintiff states he also sent the Photograph to his attorney, who then registered it, along with 747 other photographs, with the United States Copyright Office (the "Copyright Office"); his counsel states that this resulted in registration certification VA 2-173-330 (the "Registration"). Def. 56.1 Stmt. at 8–9, 13; Pl. 56.1 Stmt. ¶ 69; Leibowitz Decl. ¶¶ 8–9, ECF No. 44; Registration, ECF No. 43-4.

On September 18, 2019, Ratajkowski posted the Photograph to the Instagram Stories of the Instagram Account.  Pl. 56.1 Stmt. ¶ 25; Def. 56.1 Stmt. at 2, 16.  It (the "Instagram Photograph") was automatically deleted after 24 hours.  Def. 56.1 Stmt. at 7.  The Photograph and the Instagram Photograph are largely the same, except Ratajkowski added the words "mood forever" to the bottom of the Instagram Photograph.  Photograph; Instagram Photograph, ECF No. 1-2; Pl. 56.1 Stmt. ¶ 31; Def. 56.1 Stmt. at 7.

On October 23, 2019, Plaintiff filed this action, alleging copyright infringement against Defendants.  Compl.  Defendants move for summary judgment on the grounds that (1) the Photograph is not the subject of a valid copyright, (2) Ratajkowski's reposting was fair use, (3) Plaintiff has not suffered damages, and (4) Plaintiff cannot show facts establishing Emrata's involvement.  Def. Mem. at 2–4, ECF No. 38.  Defendants also seek an order granting sanctions and attorney's fees.  *Id.* at 3-4.  Plaintiff cross-moves for partial summary judgment on the elements of his infringement claim and on Defendants' affirmative defenses to liability.  Pl. Mem. at 2, ECF No. 46.

## DISCUSSION

### I.   Legal Standard

On a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of pointing to evidence in the record "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  *See Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

II.     Copyright Infringement

"To establish copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  Defendants move for summary judgment on the first prong, arguing that (1) Plaintiff has not demonstrated he registered his copyright in the Photograph, and (2) the Photograph is not sufficiently original to qualify as copyrightable.  Def. Mem. at 8–13.  Plaintiff moves for summary judgment on both prongs.  Pl. Mem. at 8–13.

A.      Registration

Under 17 U.S.C. § 410(c), a certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright.  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).  A plaintiff must demonstrate that a work is protected by a copyright registration.  *Mantel v. Microsoft Corp.*, No. 16 Civ. 5277, 2018 WL 1602863, at *3 (S.D.N.Y. Mar. 29, 2018).  Once registration is established, the burden shifts to the defendant to challenge the validity of that registration.  *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997).

Here, it is impossible to tell from the face of the Registration if it covers the Photograph. ECF No. 43-4; Def. 56.1 Stmt. at 13.  Richard Leibowitz, then Plaintiff's attorney, submitted a declaration, stating that it is his firm's "routine practice" to register its clients' photographs with the Copyright Office, that he directly supervises the support staff that handles the copyright

registration process, including Donna Halperin, that the "content title of the Photograph, as listed

on the face of the [Registration], is "Emily Ratajkowski20190913_0005.jpg," and that

registration of the Photograph was carried out "in accordance with [the firm's] routine practice."

Leibowitz Decl. ¶¶ 5–10.  Although Plaintiff's briefing and 56.1 statement cite a declaration

from Donna Halperin, no such document was filed on the docket.  *See* Pl. Mem. at 10, 26; Pl.

56.1 Stmt. ¶¶ 66, 68–69, 71–72.  It also appears that Leibowitz does not have direct knowledge

of the registration, *see* Leibowitz Decl., and, in the past, has stated that he "did not play any role

in the filing" of an application done by the internal staff, *Usherson v. Bandshell Artist Mgmt.*,

No. 19 Civ. 6368 (S.D.N.Y. Feb. 7, 2020), ECF No. 63 ¶ 13.  Moreover, the Photograph is not

the only file in the Registration.  The Court, therefore, cannot discern if it is covered by

reviewing the Registration.  *See Iantosca v. Elie Tahari, Ltd.*, No. 19 Civ. 4527, 2020 WL

5603538, at *4 (S.D.N.Y. Sept. 18, 2020).  Nor did Plaintiff personally apply for registration,

permitting the Court to rely on his testimony.  *Masi v. Moguldom Media Grp. LLC*, No. 18 Civ.

2402, 2019 WL 3287819, at *4 (S.D.N.Y. July 22, 2019) ("Given [p]laintiff's sworn declaration,

and deposition testimony that he included all 45 of the high resolution photos that appeared in his

gallery with his registration application, [d]efendant's speculative statements regarding the scope

of the copyright do not create a triable issue of fact as to whether the [r]egistration covers the

photographs at issue." (citations omitted)).  The Court, therefore, cannot find that Plaintiff

submitted sufficient "hard evidence" with his briefing to demonstrate registration.  *Mantel*, 2018

WL 1602863, at *3; *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 530 (S.D.N.Y.

2018).

However, after the close of summary judgment briefing, Plaintiff's counsel requested that

the Court take judicial notice of a certified deposit copy he had requested from the Copyright

Office.  ECF No. 52.  His initial letter to the Court, dated November 24, 2020, consisted of (1) a

copy of the certificate from the Copyright Office stating that "the attached flash drive is a true copy of the work" deposited with the Copyright Office under the Registration, (2) an image of a flash drive labelled with the registration number, and (3) a copy of the Photograph.  ECF No. 52-1.  Defendants oppose such notice, arguing that the documents should have been produced during discovery, and Plaintiff had failed to authenticate the copy of the Photograph as a file on the flash drive and the flash drive as the drive sent with the certificate.  ECF No. 53.  Plaintiff's reply, filed on December 9, 2020, a day late, includes a declaration demonstrating that the copy of the Photograph corresponds to a file saved on the flash drive, and the flash drive was sent from the Copyright Office.  ECF No. 55.  Defendants object to the late reply.  ECF No. 56.

The Court concludes that it will permit the one-day late reply and take judicial notice of the deposit copy.  Although the extension request was not made in compliance with the Court's Individual Practices in Civil Cases, the Court recognizes the administrative burden caused by a sudden influx of cases due to Richard Leibowitz's suspension, ECF Nos. 55, 57, and, therefore, finds good cause for the late submission.  And, under Federal Rule of Evidence 201(b), the Court may take judicial notice of public documents such as certifications from the Copyright Office at any point in a litigation, including after the completion of summary judgment briefing.  Fed. R. Evid. 201(d); *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 424 (S.D.N.Y. 2018).  Moreover, Plaintiff's counsel's declaration sufficiently authenticates the deposit copy.  ECF Nos. 55-2–55-8; *CJ Prods. LLC v. BTC Enters. LLC*, No. 10 Civ. 5878, 2012 WL 1999829, at *6 & n.6 (S.D.N.Y. June 1, 2012).  And, as opposed to *Mantel* and *Ferdman*, discovery sanctions are not appropriate.  Here, Plaintiff did not have the deposit copy in his possession during discovery; thus, he did not violate discovery rules by not producing it.  ECF No. 39 at 37, 42; c*f. Mantel*, 2018 WL 1602863, at *4 ("Plaintiff represented that he had these documents in his

possession . . . [p]laintiff told the [d]efendants that he would produce the documents to them.");

*Ferdman*, 342 F. Supp. 3d at 526–27, 529–30 (noting that plaintiff attached documents to his

summary judgment briefing that had previously been requested and which he had represented he

did not possess); *see also CJ Prods. LLC*, 2012 WL 1999829, at *6 ("[S]ince this litigation is a

search for the truth, defendants cannot be prejudiced by the materials.").

With the deposit copy before the Court, Plaintiff has established that the Photograph is

registered with the Copyright Office.  As Defendants do not otherwise challenge the validity of

the Registration, the Court concludes that Plaintiff has demonstrated *prima facie* evidence of

valid copyright ownership.  *See Iantosca*, 2020 WL 5603538, at *5.

B.     Originality

Defendant attempts to rebut the presumption created by the Registration by arguing that

the Photograph is insufficiently original.  Def. Mem. at 10–13.  "To qualify for copyright

protection, a work must be original to the author."  *Feist Publ'ns., Inc.*, 499 U.S. at 345.  An

original work is one that "was independently created by the author" and "possesses at least some

minimal degree of creativity."  *Id*.  "Almost any photograph may claim the necessary originality

to support a copyright," as long as there is some originality in "rendition . . . timing . . . [or]

creation of the subject."  *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 450, 452–55

(S.D.N.Y. 2005).

Courts have found paparazzi photographs original based on their "myriad creative

choices, including, for example, their lighting, angle, and focus."  *Sands v. CBS Interactive Inc*.,

No. 18 Civ. 7345, 2019 WL 1447014, at *4 (S.D.N.Y. Mar. 13, 2019).  Here, too, the

Photograph meets the "extremely low" standard for originality.  *Feist*, 499 U.S. at 345; *cf.*

*Bridgeman Art Libr., Ltd. v. Corel Corp*., 36 F. Supp. 2d 191, 196–97 (S.D.N.Y. 1999) (finding

unoriginal "slavish copies" consisting of photographs of an existing photograph meant to directly

7

reproduce the existing work); *Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 556–57 (S.D.N.Y. 2001) (finding unoriginal "direct depictions of the most common Chinese food dishes as they appear on the plates served to customers at restaurants," with no evidence that the photographs were "designed with creativity or art in mind," rather than "serv[ing] a purely utilitarian purpose" of identifying the dishes on a takeout menu), *aff'd in part, appeal dismissed in part sub nom. Oriental Art Printing Inc. v. GS Printing Corp.*, 34 F. App'x 401 (2d Cir. 2002).  Plaintiff selected his location, lighting, equipment, and settings based on the location and timing.  Def. 56.1 Stmt. at 8; Pl. 56.1 Stmt. ¶ 21.  Moreover, that other photographers took photographs of the same subject matter at the same time does not make the Photograph less original; copyright protects an author's specific expression capturing a subject, even if others capture the subject as well.  *Cf. Mannion*, 377 F. Supp. 2d at 453 (noting that if another photographer captured the same scene as a copyrighted image, it would not infringe the original image).  Therefore, the Photograph has sufficient originality to be copyrighted. Accordingly, Defendants' motion for summary judgment on the validity of Plaintiff's copyright is DENIED.

Thus, Plaintiff has demonstrated that he owns a valid copyright in the Photograph. Plaintiff has also established that Ratajkowski copied the Photograph.  *See Williams*, 84 F.3d at 587 ("In the absence of direct evidence, copying is proven by showing (a) that the defendant had access to the copyrighted work[,] and (b) the substantial similarity of protectible material in the two works." (quotation marks and citation omitted)); Pl. 56.1 Stmt. ¶¶ 26, 30–31.  Accordingly, Plaintiff's motion for summary judgment regarding Ratajkowski's infringement is GRANTED.

C.      Emrata

Defendants move for summary judgment dismissing all claims against Emrata.  Def. Mem. at 2 n.2.  Plaintiff has indicated his intent to dismiss Emrata, ECF No. 28 at 1, but has not

done so formally.  Plaintiff has not demonstrated Emrata's liability:  it is undisputed that Ratajkowski posts on the Instagram Account in her personal capacity, Def. 56.1 Stmt. at 2, and Plaintiff has demonstrated no facts linking Emrata to the copying of the Photograph. Accordingly, Defendants' motion for summary judgment as to Emrata is GRANTED.

### III.   Damages

Defendants contend that Plaintiff's claim fails because he cannot establish he is owed money damages.  Def. Mem. at 18–23.  The Copyright Act provides that a copyright plaintiff may recover either actual damages or statutory damages.  17 U.S.C. § 504.  Plaintiff stated in his supplemental disclosures that he is no longer seeking actual damages, ECF No. 39 at 42, nor does he argue for actual damages in this briefing, *see* Pl. Mem; Pl. Reply at 9–10, ECF No. 51. Therefore, the Court shall only consider whether he is due statutory damages.

The Copyright Act permits statutory damages of between $750 and $30,000 per infringement, and up to $150,000 if such infringement was "willful[]."  17 U.S.C. § 504(c). However, statutory damages may not be awarded for infringement of "an unpublished work commenced before the effective date of its registration," or "commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  17 U.S.C. § 412; *see also Troll Co. v. Uneeda Doll Co*., 483 F.3d 150, 158 (2d Cir. 2007).

Defendants argue that because the Photograph was only posted to Splash, it was not published within the meaning of § 412.  Def. Mem. at 21; Def. Opp'n at 19–20, ECF No. 50. The Copyright Act defines publication in relevant part as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending" or "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution[.]"  17 U.S.C. § 101.  The Copyright Office, whose opinion

9

merits deference, further explains that publication occurs where "the offeror"—the copyright owner or someone with their authority—"has completed all the steps necessary for distribution to the public, such that the only further action required is an offeree's action in obtaining a copy or phonorecord[,]" but not where "distribution of copies or phonorecords requires additional action by the offeror."  U.S. Copyright Office, Compendium of U.S. Copyright Office Practices §§ 1902, 1906.1 (3d ed. 2021), https://www.copyright.gov/comp3/docs/compendium.pdf (the "Copyright Compendium"); *Palmer/Kane LLC v. Gareth Stevens Publ'g*, No. 15 Civ. 7404, 2017 WL 3973957, at *11 (S.D.N.Y. Sept. 7, 2017).  Therefore, Splash's offering the Photograph to its subscribers for the purposes of licensing, carried out with Plaintiff's authority, constitutes publication.  *Palmer/Kane LLC*, 2017 WL 3973957, at *11; *see also* Copyright Compendium § 1906.1 (giving as examples of publication an offer by a copyright owner "on a public website to purchase and download an app that they developed and made accessible on that website" and "[a]n advertisement containing pictures of a jewelry design").

Defendants further argue that Splash's thumbnail postings were merely "samples", which the Second Circuit in *Hub Floral Corp. v. Royal Brass Corp.*, 454 F.2d 1226 (2d Cir. 1972), recognized as insufficient for publication.  Def. Opp'n at 20.  However, in *Hub Floral*, the Second Circuit noted that the full work of the distributed samples—fabric patterns—had not yet been produced, and so, "[s]ince [the copyright holder] was not in a position to commence realizing the benefits of its unique design and the public had not been provided with reproductions, there was no publication."  *Id.* at 1229.  The logical inference of this holding is that if "the samples had been sold or delivered to customers, it would have been deemed publication."  *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, No. 16 Civ. 339, 2017 WL 2903180, at *7 (C.D. Cal. Mar. 24, 2017).

Here, however, Plaintiff was in a position to immediately realize the benefits of the Photograph, and in fact, Plaintiff earned income on the Photograph between September 13 and 19, 2021.  O'Neil Dep. Tr. at 80:25–81:4; *see Gold Value Int'l Textile, Inc.*, 2017 WL 2903180, at *7 (noting that plaintiff's exhibiting smaller images of its designs in books available at its studios "[gave] customers not only the ability to view the designs, but also the ability to acquire them" thereby "showing a willingness to enter into a bargain, such that any reasonable customer would understand the product as being offered to him or her for sale" (quoting *Urb. Textile, Inc. v. Cato Corp.*, No. 14 Civ. 6967, 2016 WL 6804911, at *4 (C.D. Cal. Apr. 1, 2016))); *see also* Copyright Compendium § 1906.1 ("Publication occurs when fabric, carpet, or wallpaper samples are offered to sales representatives for the purpose of selling those works to wholesalers and retailers.").  Moreover, although Splash's viewership is limited to its subscribers, ECF No. 49-3, that membership is a far cry from the "few trusted customers" deemed too small a viewership for publication.  *Peter Pan Fabrics, Inc. v. Dan River Mills, Inc*., 295 F. Supp. 1366, 1368 (S.D.N.Y.), *aff'd*, 415 F.2d 1007 (2d Cir. 1969).

The Court concludes, therefore, that the Photograph was published when posted on Splash on September 13, 2019.  ECF No. 43-2.  And, because the Registration's effective date—October 3, 2019—is within three months of the Photograph's publication, statutory damages are permitted for Ratajkowski's infringement, which occurred on September 18, 2019, between publication and the effective date of registration.  17 U.S.C. § 412(2); Registration; Pl. 56.1 Stmt. ¶ 25.

Moreover, Plaintiff may recover statutory damages despite earning only negligible profits from the Photograph, and, thus, suffering only minimal actual damages.  Def. 56.1 Stmt. at 9; O'Neil Dep. Tr. at 80:25–80:4; *see Agence France Presse v. Morel*, No. 10 Civ. 2730, 2014 WL 3963124, at *15 (S.D.N.Y. Aug. 13, 2014) (citing *Psihoyos v. John Wiley & Sons, Inc*., 748 F.3d

120, 127 (2d Cir. 2014)).  Although courts are discouraged from awarding windfall statutory

damages to plaintiffs, actual damages are only one factor courts consider in determining statutory

damages.  *Cengage Learning, Inc. v. Yousuf*, No. 14 Civ. 3174, 2018 WL 6990757, at *3

(S.D.N.Y. Dec. 20, 2018), *report and recommendation adopted*, No. 14 Civ. 3174, 2019 WL

162661 (S.D.N.Y. Jan. 10, 2019); *Agence France Presse*, 2014 WL 3963124, at *15.  Therefore,

although the Court does not opine on the amount of statutory damages Plaintiff may be due if he

prevails at trial, the lack of actual damages does not foreclose his pursuit of statutory damages.

Accordingly, Plaintiff is not barred from recovering statutory damages for the

infringement, and the Court does not reach the issue of whether his being barred would make

summary judgment appropriate.  Defendants' motion for summary judgment based on lack of

damages is, therefore, DENIED.

IV.  <u>Fair Use</u>

Plaintiff and Defendants cross-move for summary judgment on whether the posting of the

Instagram Photograph was fair use.  Fair use, an affirmative defense to copyright infringement,

seeks to balance copyright protections and "the ability of [other] authors, artists, and the rest of

us to express them—or ourselves by reference to the works of others," *Andy Warhol Found. for

Visual Arts, Inc. v. Goldsmith*, No. 19-2420, 2021 WL 3742835, at *4 (2d Cir. Aug. 24, 2021)

(alteration in original) (quoting *Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir. 2006)), in order to

uphold copyright law's ultimate purpose of "promot[ing] the Progress of Science and useful

Arts," U.S. Const. art. I, § 8, cl. 8.

The Copyright Act lists four non-exhaustive factors that courts should consider when

evaluating where a use is "fair":

> (1) the purpose and character of the use, including whether such use is of a
> commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  In weighing these factors, the Court should conduct a "holistic, context-sensitive inquiry" without bright-line rules.  *Andy Warhol Found.*, 2021 WL 3742835, at *5.

"Fair use is a mixed question of law and fact."  *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985).  However, the Second Circuit has resolved questions of fair use at the summary judgment stage where the moving party shows there are no genuine issues of material fact.  *Otto*, 345 F. Supp. 3d at 426 (citing *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991)).  Because fair use is an affirmative defense, on which the defendant bears the burden at trial, when a plaintiff challenges it on summary judgment he "may satisfy [his] Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case."  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex*, 477 U.S. at 325).

### A.    Purpose and Character of the Work

#### 1.    Transformative Work

The first fair use factor, the purpose and character of the work, focuses primarily on whether the use is "transformative"—that is, "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message."  *Andy Warhol Found.*, 2021 WL 3742835, at *5 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).  The "[p]aradigmatic examples" of such transformative uses are those listed in the preamble to § 107: "criticism, comment, news reporting, teaching . . . , scholarship, or research."  *Id.* (quoting 17 U.S.C. § 107).  The Court conducts this inquiry objectively, considering how the

new use "may reasonably be perceived" without concern for the infringer's subjective intent. *Id.* at *5 (quotation marks and citation omitted); *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013).

Another court in this district has determined that the purpose of paparazzi photos is to "document the comings and goings of celebrities, illustrate their fashion and lifestyle choices, and accompany gossip and news articles about their lives." *Barcroft Media, Ltd. v. Coed Media Group, LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017). Therefore, when news sites have copied paparazzi photographs to document celebrities' lives, courts have determined those uses are not transformative. *Id.*; *cf. Ferdman*, 342 F. Supp. 3d at 534. By contrast, where photographs are used to comment on the image—rather than to illustrate an independent news story—courts have found those uses to be transformative. *Ferdman*, 342 F. Supp. 3d at 534–35; *Barcroft*, 297 F. Supp. 3d at 352 ("Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about* that work." (emphasis in original)); *see also Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1174–76 (9th Cir. 2012). Defendants contend that, by placing the words "mood forever" on the Photograph to post it to her Instagram Stories, the Instagram Photograph "ma[de] commentary and criticism of [Ratajkowski's] perspective of abusive, aggressive, and harassing practice of paparazzi constantly following her, even when buying flowers for a friend." Def. Mem. at 16.

The Court concludes that there is a genuine issue of material fact regarding whether, and to what extent, Ratajkowski's use was transformative. A reasonable observer could conclude the Instagram Photograph merely showcases Ratajkowski's clothes, location, and pose at that time—the same purpose, effectively, as the Photograph. On the other hand, it is possible a reasonable observer could also conclude that, given the flowers covering Ratajkowski's face and body and the text "mood forever," the Instagram Photograph instead conveyed that Ratajkowski's "mood forever" was her attempt to hide from the encroaching eyes of the paparazzi—a commentary on

14

the Photograph.  *See* Ratajkowski Dep. Tr. at 39:21–23 (noting that "mood is a millennial way of using an expression or an image to express how someone feels about something").  And, the Court declines to opine on the newsworthiness of Ratajkowski's battles with paparazzi compared to other events the documentation of which courts have found to be fair use.  *Ferdman*, 342 F. Supp. 3d at 535.

2.      Commerciality

The first fair use prong also requires an analysis of whether the use was commercial. This inquiry does not turn on whether a defendant's business is for-profit, *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 921 (2d Cir. 1994), nor whether "the sole motive of the use is monetary gain," *Otto*, 345 F. Supp. 3d at 429 (quoting *Harper & Row*, 471 U.S. at 562).  Instead, "[t]he crux of the profit/nonprofit distinction is . . . whether the user stands to profit from exploitation of copyrighted material without paying the customary price."  *Id.* (quoting *Harper & Row*, 471 U.S. at 562).  "The greater the private economic rewards reaped by the secondary user (to the exclusion of broader public benefits), the more likely the first factor will favor the copyright holder."  *Am. Geophysical Union*, 60 F.3d at 922; *Assoc. Press v. Meltwater U.S. Holdings*, 931 F. Supp. 2d 537, 552 (S.D.N.Y. 2013) ("Where a defendant did not gain 'direct or immediate commercial advantage' from the copying, its status as a for-profit enterprise is less relevant." (quoting *Am. Geophysical Union*, 60 F.3d at 921)).  Conversely, where a use only "trivially affected" the value of a for-profit service, this factor is assigned relatively little weight. *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014).  Moreover, the more transformative the new work, "the less will be the significance of . . . commercialism." *Cariou*, 714 F.3d at 708; *see also Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015).

Here, Ratajkowski has a link to her for-profit store on the Instagram Account main feed, though it was not visible when viewing the Instagram Photograph.  Pl. 56.1 Stmt. ¶ 57; Instagram Photograph.  Ratajkowski estimates she has made more than $100,000 from the Instagram Stories section of the Instagram Account within the last three years, although posting sponsored posts to Instagram Stories is less common than to her main feed.  Pl. 56.1 Stmt. ¶ 56; Ratajkowski Dep Tr. at 50:12–14.  Therefore, the Instagram Account is, at least in part, a for-profit enterprise, including the Instagram Stories portion.

However, Ratajkowski did not "directly and exclusively acquire[] conspicuous financial rewards from [her] use of the copyrighted material," as she was not paid to post this particular story.  *Am. Geophysical Union*, 60 F.3d at 922; Ratajkowski Dep Tr. at 44:22–24 ("Q. Ms. Ratajkowski, did you get paid for using this photograph on your Instagram story? A. No.").  Nor was the infringed work displayed directly next to advertisements, or in a section almost exclusively meant for advertisements.  *See Hirsch v. Complex Media, Inc*., No. 18 Civ. 5488, 2018 WL 6985227, at *6 (S.D.N.Y. Dec. 10, 2018); *Richard Feiner & Co., Inc. v. H.R. Industries, Inc*., 10 F. Supp. 2d 310, 314 (S.D.N.Y. 1998), *rev'd on other grounds*, 182 F.3d 901 (2d Cir. 1999).  A non-sponsored Instagram Story—one of the approximately five a day Ratajkowski posted, Pl. 56.1 Stmt. ¶ 43—would have only trivially affected the value of the Instagram Account.  Therefore, though the use is slightly commercial, the Court affords this factor little weight.  Moreover, if a jury were to determine this use was transformative, this factor should be weighed even less.  *Cariou*, 714 F.3d at 708.

### 3.    Bad Faith

Last, the Court considers Ratajkowski's "good or bad faith" in infringing in the first factor analysis.  *NXIVM Corp. v. Ross Inst*., 364 F.3d 471, 478 (2d Cir. 2004).  A finding of bad faith is not dispositive, either of the first factor or of fair use in general.  *Id.* at 479; *Otto*, 345 F.

Supp. 3d at 429 n.3.  Plaintiff argues that Ratajkowski's use was in bad faith because of her "omission of any credit," and her not paying a license fee despite knowing that celebrities occasionally license photographs from Splash.  Pl. Mem. at 19.

Although Ratajkowski rarely credits photographers, Pl. 56.1 Stmt. ¶ 51, there is no evidence that she personally removed copyright attribution from the Photograph, *Ferdman*, 342 F. Supp. 3d at 537 (finding no bad faith where there was "no evidence that [d]efendant . . . removed the authorship credit itself"), *cf. Yang v. Mic Network, Inc*., 405 F. Supp. 3d 537, 546 (S.D.N.Y. 2019) (holding that the defendant "cut[ting] off part of the [p]hotograph, removing the label crediting the work to [p]laintiff," was bad faith), *reconsideration denied*, No. 18 Civ. 7628, 2020 WL 6562403 (S.D.N.Y. Nov. 9, 2020).

Additionally, if Ratajkowski did know that her "access to the [Photograph] was unauthorized or was derived from a violation of law or breach of duty, this consideration weighs in favor of [P]laintiff[]."  *NXIVM Corp*., 364 F.3d at 478.  However, there is no evidence that Ratajkowski knew the Photograph was copyrighted or who it was copyrighted by.  She testified that she did not take the Photograph directly from Splash, which makes her knowledge of other celebrities' licensing from Splash irrelevant.  Ratajkowski Dep. Tr. at 69:2–3; *Ferdman*, 342 F. Supp. 3d at 537.  And her awareness that paparazzi photographs have been the basis of lawsuits against celebrities, Pl. 56.1 Stmt. ¶¶ 61–62, and general "internet etiquette" that "people will share [her] images and [she] share[s] their images," *id.* ¶ 49; Ratajkowski Dep. Tr. at 24:13–21, does not demonstrate specific knowledge about the Photograph or Instagram Stories.  Moreover, if a use otherwise meets the fair use criteria, "lack of permission is beside the point."  *Wright v. Warner Books, Inc*., 953 F.2d 731, 737 (2d Cir. 1991) (quotation marks omitted).  Therefore, the Court concludes this sub-factor does not weigh heavily in either direction.

In sum, therefore, there is a genuine issue of material fact as to whether Ratajkowski's use was transformative, and neither commerciality nor bad faith weigh heavily on the analysis— particularly if the use is deemed transformative. Therefore, the Court cannot determine this factor at the summary judgment stage. *Ferdman*, 342 F. Supp. 3d at 536 ("Where . . . reasonable jurors could disagree about whether—or the extent to which—a use is transformative, it is appropriate to deny summary judgment on a fair use defense."); *Sarl Louis Feraud Int'l v. Viewfinder Inc.*, 627 F. Supp. 2d 123, 131 (S.D.N.Y. 2008).

B.      Nature of the Copyrighted Work

The second fair use factor requires the Court to consider the "nature of the copyrighted work," including whether (1) it is "expressive or creative . . . or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational," and (2) "the work is published or unpublished, with the scope of fair use involving unpublished works being considerably narrower." *Andy Warhol Found.*, 2021 WL 3742835, at *12 (citation omitted).

This factor weighs in favor of Plaintiff, but only marginally so. The Photograph is "essentially factual in nature" and Plaintiff "captured [his] subject[] in public, as [she] naturally appeared, and [was] not tasked with directing the subject[], altering the backdrops, or otherwise doing much to impose creative force on the [Photograph] or infuse the [Photograph] with [his] own artistic vision." *Barcroft*, 297 F. Supp. 3d at 354. Moreover, as determined above, the Photograph was published.

C.      Amount and Substantiality of the Use

In assessing the third fair use factor, the Court considers the amount and substantiality of the portion of the copyrighted work used. This factor considers not only "the quantity of the materials used" but also "their quality and importance" in relation to the original work. *TCA*

*Television Corp. v. McCollum*, 839 F.3d 168, 185 (2d Cir. 2016) (quoting *Campbell*, 510 U.S. at 587). Because of this relational analysis, the Second Circuit has rejected the proposition that "this factor necessarily favors the copyright holder even where the secondary user has copied the primary work *in toto* in service of a legitimate secondary purpose." *Andy Warhol Found.*, 2021 WL 3742835, at *12. "[T]his factor 'weighs less when considering a photograph—where all or most of the work often must be used in order to preserve any meaning at all—than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value.'" *Ferdman*, 342 F. Supp. 3d at 539 (quoting *N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 621 (S.D.N.Y. 2015)).

Ratajkowski took the vast majority, if not the entirety, of the Photograph. Def. 56.1 Stmt. at 12; Pl. 56.1 Stmt. ¶ 31. In order to meaningfully comment on the intrusiveness of the Photograph—her stated purpose—she would require enough of the Photograph for it to be identifiable as a paparazzi photograph. Although this would arguably not require the whole Photograph, it would undoubtedly require the heart of the Photograph—the image of Ratajkowski and enough of its background to place her on a city street.

Defendants argue that by posting the Instagram Photograph on Instagram Stories, rather than the main account, the use was less substantial. Def. Mem. at 17. The Court is not aware of any other court that has considered the impact of a social media "stories" post compared to a static post. On the one hand, courts in general do not take into account the length of availability of the infringing work. And, it does not counteract Ratajkowski's usage of the entire photograph, for a full twenty-four hours. *Cf. Hirsch*, 2018 WL 6985227, at *7 (finding this prong weighed against a reproduction of an entire photograph for two seconds when defendant could have displayed a headline for the same effect).

However, the Supreme Court has observed that, "[t]he facts bearing on [the third] factor will also tend to address the fourth, by revealing the degree to which the [secondary use] may serve as a market substitute for the original or potentially licensed derivatives." *Campbell*, 510 U.S. at 587. If the Instagram Photograph only appeared for twenty-four hours, it is much less likely that someone might take the Photograph from the Instagram Account rather than licensing it from Plaintiff, compared to that same risk if the Instagram Photograph was permanently on the Instagram Account. Moreover, assuming Ratajkowski wished to critique paparazzi, she chose the comparatively insubstantial option of Instagram Stories rather than the Instagram Account main feed.

The Court concludes, therefore, that, because Ratajkowski used a greater portion of the Photograph than was necessary for her purpose, this factor weighs slightly in favor of Plaintiff. However, the fact that it was posted on Instagram Stories lessens that weight.[2]

      D.      Effect on the Market

Finally, the fourth factor considers the secondary usage's effect on the original work's market. This factor focuses on "whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild*, 804 F.3d at 222. In addition, the Court considers "whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." *Andy Warhol Found.*, 2021 WL 3742835, at *14 (citation omitted).

---

[2] Defendants appear to argue that because the short length of time the Instagram Photograph was visible means the use was *de minimis*, impacting the fair use analysis. Def. Opp'n at 12. However, the *de minimis* doctrine goes to substantial similarity, rather than fair use. *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 75–76 (2d Cir. 1997). And, insofar as Defendants attempt to raise the *de minimis* affirmative defense here given the Instagram Photograph was only displayed for 24 hours, use of an entire photograph for hours is not *de minimis*. *See Hirsch v. Complex Media, Inc.*, No. 18 Civ. 5488, 2018 WL 6985227, at *4 (S.D.N.Y. Dec. 10, 2018) ("A number of courts in this [d]istrict applying *Ringgold* have concluded that a 'substantially full-screen' display of an image, even those lasting less than three seconds, would not be *de minimis*." (quoting *Ringgold*, 126 F.3d at 77)).

This consideration covers "traditional, reasonable, or likely to be developed markets." *Am.*
*Geophysical Union*, 60 F.3d at 930; *see also Andy Warhol Found.*, 2021 WL 3742835, at *14.
There is a "close linkage between the first and fourth factors," because "the more the copying is
done to achieve a purpose that differs from the purpose of the original, the less likely it is that the
copy will serve as a satisfactory substitute for the original." *Authors Guild*, 804 F.3d at 223.
The plaintiff is required to identify relevant markets, but, because fair use is an affirmative
defense, the plaintiff need not show actual market harm. *Andy Warhol Found.*, 2021 WL
3742835, at *15.  Moreover, where a court determines a use is not transformative, but rather that
it is a "mere duplication for commercial purposes," there is a presumption of market harm.
*Ferdman*, 342 F. Supp. 3d at 541 (quoting *Campbell*, 510 U.S. at 591).

To prevail on this factor in his motion for summary judgment, Plaintiff must show that,
even if the Photograph is deemed transformative, a market exists which would be affected if this
manner of using the Photograph became widespread.  *See Blanch v. Koons*, 467 F.3d 244, 258
n.9 (2d Cir. 2006) (concluding this factor weighed for fair use where "nothing in the record here
suggests that there was a derivative market for [plaintiff] to tap into that is in any way related to
[defendant's] use of her work, even if she dearly wanted to").  For Defendants to prevail on this
factor in their motion for summary judgment, they must demonstrate that even if the Photograph
is deemed non-transformative, the presumption of market harm is overcome by evidence that the
relevant market has not been harmed and would not be harmed should the usage become
widespread.  *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 609 (S.D.N.Y. 2020),
*reconsideration denied*, No. 19 Civ. 9617, 2020 WL 6135733 (S.D.N.Y. Oct. 19, 2020).

Here, the relevant market is that of individuals licensing photographs from paparazzi—
whether through agencies such as Splash or directly from the photographers—in order to post the
photographs on the individuals' social media accounts.  As there is no information in the record

regarding that market, the Court cannot rule on this factor at this juncture.  Although photographs posted on Splash are licensed to "third parties including media outlets such as New York Post, People Magazine and E! Online and other third-party users," that establishes only a market of licensing the photographs to news organizations, not individuals.  Pl. 56.1 Stmt. ¶ 7; *see also Ferdman*, 342 F. Supp. 3d at 541 (noting that defendant's use of celebrity photographs taken by paparazzi in a media outlet is "paradigmatic of the only market the photographs could reasonably have: licensing to media outfits"); *Otto*, 345 F. Supp. 3d at 432–33 (noting "media outlets" as a market).  Defendants argue that there is no market for the Photograph because Ratajkowski's face is covered and Plaintiff failed to make money from the licensing of the Photograph.  Def. Mem. at 18.  But, Defendants have not established that the market generally does not exist, or that Plaintiff could not extend into it should he choose.  Defendants, therefore, have not adduced evidence which rebuts the presumption of market harm.  *Cf. Otto*, 345 F. Supp. 3d at 432 (noting that a lack of actual sales of the work at issue did not preclude market harm), O'Neil Dep. Tr. at 80:25–81:11 (stating that Plaintiff did receive income from licensing the Photograph, though not identifying the source).

   E.  Weighing the Factors

  In sum, there are material issues of fact with respect to the first and fourth factors, and the second and third factors weigh towards Plaintiff, though not strongly.  The Court cannot, therefore, make a determination of fair use on summary judgment.  Accordingly, both parties' motions for summary judgment on the issue of fair use are DENIED.

V.  <u>Other Affirmative Defenses</u>

  Defendants assert thirteen affirmative defenses in addition to fair use.  ECF No. 17 at 4–7.  Plaintiff moves for dismissal as a matter of law on the defenses to liability: failure to state a claim; invalidity or unenforceability of copyright; scènes à faire and merger doctrines; estoppel;

waiver; copyright misuse; unclean hands; authorized use, license, consent, or acquiescence; non-infringement; and constitutional defenses.  Pl. Mem. at 2, 23–28.

A.      Failure to State a Claim and Ownership

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Here, Plaintiff alleges that he is the author of the Photograph, that he registered it—creating a presumptively valid copyright—and that Defendants posted the Photograph on Instagram without authorization.  ECF No. 1 ¶¶ 9–12.  Although bare bones, the Court cannot conclude that this is insufficient to state a claim, and Defendants have not made a substantive argument other than those resolved above in Part II.

Similarly, Plaintiff has made out a case of ownership of a valid copyright.  *Supra* Pt. II. Moreover, Defendants do not argue that either the scènes à faire or merger doctrines apply separately from her argument regarding lack of originality, which the Court rejected above.  *See* Def. Opp'n at 15–16.

B.      Estoppel and Waiver

Defendants argue that the affirmative defenses of estoppel and waiver apply because Plaintiff took Ratajkowski's photograph without her consent and attempted to use that photograph to exploit her fame and notoriety; without Ratajkowski's image, he would have no image to attempt to license.  Def. Opp'n at 17.

In order to demonstrate the estoppel defense applies, Defendants must show that "1) the plaintiff had knowledge of defendant's infringing acts, 2) the plaintiff either intended that defendant rely on his acts or omissions or acted or failed to act in such a manner that defendant

had a right to believe that it was intended to rely on plaintiff's conduct, 3) the defendant was ignorant of the true facts, and 4) the defendant relied on plaintiff's conduct to its detriment." *Dallal v. The New York Times Co*., No. 05-2924, 2006 WL 463386, at *1 (2d Cir. Feb. 17, 2006). Ratajkowski does not claim that she had a right to rely on a particular affirmative action of Plaintiff.  *See Petrella v. Metro-Goldwyn-Mayer, Inc*., 572 U.S. 663, 684 (2014) (holding estoppel available when "a copyright owner engages in intentionally misleading representations concerning his abstention from suit"); *Coach, Inc. v. Kmart Corps*., 756 F. Supp. 2d 421, 426 (S.D.N.Y. 2010) ("[A]n essential element of estoppel [is] that the party who invokes it shall have acted to his detriment in reliance upon what the other party had done." (quotation marks and citation omitted)).  Taking a photograph of someone does not constitute as an action indicating permission to use the photograph.  Nor do Defendants point to any reliance on Ratajkowski's part.  *See Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 541 (S.D.N.Y. 2015).

 In order to establish waiver under New York law, defendant must show "intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it."  *Id*. at 540 (quoting *Capitol Records, Inc. v. Naxos of Am., Inc*., 372 F.3d 471, 482 (2d Cir. 2004) (emphasis omitted)).  "The conduct constituting a waiver must be clear, unmistakable and without ambiguity."  *Id.* (quotation marks and citation omitted).  Defendants do not explain, much less give evidence in the record, how Ratajkowski's being the subject of the Photograph constitutes conduct by Plaintiff clearly demonstrating an intentional and knowing relinquishment of rights.

### C.    Copyright Misuse and Unclean Hands

Defendants claim entitlement to the defenses of copyright misuse, unclean hands, and bad faith based on Plaintiff's allegedly bringing a case knowing that his statutory damages were disproportionate to the cost of litigation, and Plaintiff's counsel's track record of "launching full

scale and excessive litigation merely to extort exorbitant settlements over negligible infringement."  Def. Opp'n at 17–18.

The defense of copyright misuse "has not been firmly established in the Second Circuit and it is unclear whether an antitrust violation is required for its use."  *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 510 (S.D.N.Y. 2018).  Generally, it "bars copyright owners from recovering for infringement where they have extended the scope of their copyrights to control areas outside of their copyright monopoly."  *Coach, Inc*., 756 F. Supp. 2d at 428; *see also Michael Grecco Prods.*, 345 F. Supp. 3d at 510 (describing the Fourth Circuit doctrine as applying where "the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright[.]" (citation omitted)).  Therefore, the Seventh Circuit has stated that copyright misuse may be expanded outside the bounds of antitrust because "for a copyright owner to use an infringement suit to obtain property protection . . . that copyright law clearly does not confer, hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, is an abuse of process."  *Assessment Techs. of WI, LLC v. WIREdata, Inc*., 350 F.3d 640, 647 (7th Cir. 2003); *see also AF Holdings, LLC v. Olivas*, No. 12 Civ. 1401, 2013 WL 4456643, at *3 (D. Conn. Aug. 16, 2013) ("[A] pattern of unsubstantiated, virtually identical suits followed by [p]laintiff's solicitation of settlement . . . *may* support a copyright misuse claim." (emphasis added)).  However, "the predicate for a misuse defense is an attempt to use the copyright monopoly to control something the monopoly does not protect."  *Malibu Media, LLC v. Doe*, No. 13 Civ. 3648, 2014 WL 2581168, at *2 (N.D. Ill. June 9, 2014).  Defendants offer no legal support for the proposition that a plaintiff's use of process can constitute copyright misuse where he is protecting a legitimate copyright.  Moreover, there is no evidence that, whatever Plaintiff's counsel's practice might be, this case was brought abusively.

The unclean hands defense applies where "a plaintiff otherwise entitled to relief has acted so improperly with respect to the controversy at bar that the public interest in punishing the plaintiff outweighs the need to prevent defendant's tortious conduct." *Sands*, 2019 WL 1447014, at *4. In copyright actions, the unclean hands defense is recognized "only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." *Id.*; *see also Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 112 (S.D.N.Y. 2005) ("The Second Circuit has repeatedly emphasized the narrowness of the doctrine's application."). Courts have required "that the plaintiff either participated in the acts of infringement or that plaintiff committed some 'transgression' such as fraud upon the Copyright Office resulting in harm or prejudice to the defendant." *Coleman v. ESPN, Inc.*, 764 F. Supp. 290, 296 (S.D.N.Y. 1991). Alternatively, a plaintiff must have committed "truly unconscionable and brazen behavior" such as repeated misrepresentations to the court and fabrication of testimony, or seeking compensation from a company from which the plaintiff stole millions of dollars. *Unicorn Crowdfunding, Inc. v. New St. Enter., Inc*., 507 F. Supp. 3d 547 (S.D.N.Y. 2020) (collecting cases). A defendant cannot, however, merely claim that her belief that the plaintiff engaged in misconduct caused her wrongdoing. *Dardashtian v. Gitman*, No. 17 Civ. 4327, 2021 WL 746133, at *28 (S.D.N.Y. Feb. 16, 2021), *report and recommendation adopted*, No. 17 Civ. 4327, 2021 WL 1191811 (S.D.N.Y. Mar. 30, 2021).

Here, there is no evidence of fraud or misrepresentations to the Court, nor that Plaintiff acted outside the scope of his copyright. The behavior alleged by Defendants, therefore, does not justify the unclean hands defense. *See Golden v. Michael Grecco Prods., Inc*., No. 19 Civ. 3156, 2021 WL 878587, at *7 (E.D.N.Y. Mar. 9, 2021) (dismissing defense of unclean hands where counterclaim plaintiff's counsel was considered a "copyright troll" in other litigation, a

term that refers to someone who scours the internet for unlicensed use of copyrighted material for the purpose of extracting settlements, because those other cases were not before the court).

> D.      License, Non-Infringement, and Constitutional Defenses

Defendants also assert the defense of license or implied license, arguing that Plaintiff "impliedly or explicitly, directly, or indirectly, authorized, licensed, consented to, or acquiesced to" her infringement.  ECF No. 17 at 5.  "[T]he party claiming a license [bears] the burden of coming forward with evidence of one."  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (quotation marks and citation omitted).  Courts have found an implied license "where one party created a work at the other's request and handed it over, intending that the other copy and distribute it."  *Solid Oak Sketches, LLC v. 2K Games, Inc*., 449 F. Supp. 3d 333, 346 (S.D.N.Y. 2020).  "[T]he question comes down to whether there was a 'meeting of the minds' between the parties to permit the particular usage at issue."  *Otto*, 345 F. Supp. 3d at 434 (alteration in original) (citation omitted).  And, "[a] plaintiff's acquiescence in the defendant's infringing acts may, if continued for a sufficient period of time and if manifested by overt acts, result in an abandonment of copyright."  *Coach, Inc*., 756 F. Supp. 2d at 427.

Here, there is no evidence of a license agreement, or communication between the parties that could give rise to an implied license.  Pl. 56.1 Stmt. ¶¶ 33–36.  Nor is there any record of Plaintiff's knowledge and inaction regarding Ratajkowski's infringement.  Moreover, although Defendants cite the existence of fair use as the reason for a license, license and fair use are two different defenses: if a use is fair, a license is not required.  *See Assoc. Press*, 931 F. Supp. 2d at 564.

Finally, Defendants argue that the affirmative defenses of constitutional defenses and non-infringement apply because of fair use.  Because there are issues of material fact regarding fair use, the Court cannot find that either defense fails as a matter of law.  *See Twin Peaks*

*Prods., Inc. v. Publications Int'l, Ltd*., 996 F.2d 1366, 1378 (2d Cir. 1993) ("[T]he fair use

doctrine encompasses all claims of [F]irst [A]mendment in the copyright field[.]" (quoting *New*

*Era Publ'ns Int'l, ApS v. Henry Holt & Co*., 873 F.2d 576 (2d Cir. 1989))); *Byrne v. Brit. Broad.*

*Corp*., 132 F. Supp. 2d 229, 236, 239 (S.D.N.Y. 2001) (denying summary judgment as to non-

infringement where material issues of fact remained regarding fair use).

Accordingly, Plaintiff's motion for summary judgment is GRANTED as to Defendants'

first, third, fifth, sixth, seventh, eleventh, and thirteenth affirmative defenses, and DENIED as to

their second and tenth defenses.

VI.    <u>Attorney's Fees and Sanctions</u>

Defendants also move for attorney's fees and sanctions, either as prevailing parties or

because "the acts of Plaintiff and counsel in bringing this case are so clearly in bad faith that

Defendant is entitled to attorney's fees" under Federal Rule of Civil Procedure 11, 28 U.S.C.

§ 1927, or the Court's inherent powers.  Def. Mem. at 23.

As the Court has not resolved the instant motions in Ratajkowski's favor, she is not the

prevailing party.  However, the Court could award sanctions to Ratajkowski.  Under both the

Court's inherent power and 28 U.S.C. § 1297,[3] the Court must find by clear and convincing

evidence that "the attorney's actions are so completely without merit as to require the conclusion

that they must have been undertaken for some improper purpose such as delay."  *Baker v. Urb.*

*Outfitters, Inc*., 431 F. Supp. 2d 351, 362 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir.

---

[3] Defendants also move for sanctions under Federal Rule of Civil Procedure 11.  Def. Mem. at 23.  However, Defendants did not comply with the procedural requirements of Rule 11, including making such a motion separately, and serving it on Plaintiff 21 days before filing the motion with the Court.  *See* Fed. R. Civ. P. 11(c).  Courts "regularly" deny such procedurally deficient motions for sanctions.  *Ctr. for Discovery, Inc. v. D.P.*, No. 16 Civ. 3936, 2017 WL 9674514, at *9 (E.D.N.Y. July 17, 2017) (collecting cases), *report and recommendation adopted in relevant part*, No. 16 Civ. 3936, 2018 WL 1583971 (E.D.N.Y. Mar. 31, 2018); *Bandler v. BPCM NYC, Ltd.*, No. 12 Civ. 3512, 2014 WL 5038407, at *6 n.4 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Michael Bandler, MB & Co. v. BPCM NYC, Ltd.*, 631 F. App'x 71 (2d Cir. 2016).

2007) (citation omitted).  This bad faith can be inferred when "an attorney engages in conduct that is so objectively unreasonable that he necessarily must have been acting in bad faith." *Id.*

Defendants contend that Plaintiff's bad faith is evident in his failure to investigate whether any actual damages existed and his claim of actual damages that were "wildly out of proportion" to what the Photograph could be worth.  Def. Mem. at 26.  The Court notes that Plaintiff's counsel's firm has previously been sanctioned for misrepresenting the law or the facts to the court.  *See, e.g.*, *Adlife Mktg. & Commc'ns Co., Inc. v. Buckingham Bros., LLC*, No. 19 Civ. 796, 2020 WL 4795287, at *4–10 (N.D.N.Y. Aug. 18, 2020); *Usherson v. Bandshell Artist Mgmt.*, No. 19 Civ. 6368, 2020 WL 3483661 (S.D.N.Y. June 26, 2020), *aff'd in part sub nom. Liebowitz v. Bandshell Artist Mgmt.*, No. 20-2304, 2021 WL 2620416 (2d Cir. June 25, 2021). However, the sanctions inquiry is particularized as to each case, and in this case, there is no evidence that Plaintiff and his counsel have made misrepresentations to the Court or engaged in unduly vexatious litigation practices.  *Yang*, 2020 WL 6562403, at *4–5.  Moreover, although the amount of statutory damages requested by Plaintiff is undoubtedly extremely high compared to the amount of actual damages he would be due, actual damages are not the only factor in determining statutory damages.  *See supra* Pt. III.  Because Plaintiff is not barred from statutory damages altogether, such a claim does not present clear and convincing evidence of bad faith. *Cf. Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 363–64 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007) (granting sanctions where plaintiff asserted claims for statutory damages after he knew such recovery was legally barred).  If, however, in the course of arguing for an amount of statutory damages Plaintiff misrepresents the law to the Court, *Adlife Mktg. & Commc'ns Co., Inc.*, 2020 WL 4795287, at *7–8, or otherwise acts unreasonably, then the Court may take action accordingly.

Defendants also argue that Emrata should be awarded attorney's fees and costs, because Plaintiff and his counsel did not research whether Emrata had any relationship to the subject matter of the complaint before bringing the action against it.  Def. Opp'n at 23.  As the Court dismissed the claims against Emrata, it is a prevailing party.  *Rock v. Enfants Riches Deprimes, LLC*, No. 17 Civ.  2618, 2020 WL 468904, at *2 (S.D.N.Y. Jan. 29, 2020), *reconsideration denied sub nom. Rock v. Enfants Riches Deprimes, LLC.*, No. 17 Civ. 2618, 2020 WL 2793026 (S.D.N.Y. May 29, 2020).  Courts possess "broad leeway" to award fees under the Copyright Act when doing so will "advance[ ] the Copyright Act's goals."  *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985–86 (2016).  "[S]everal nonexclusive factors" inform this exercise of discretion, including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id*. at 1985 (quotation marks, alteration, and citation omitted).  "Although objective reasonableness [of the losing party's position] carries significant weight, courts must view all the circumstances of a case on their own terms."  *Id*. at 1989.

Plaintiff makes no claims against Emrata in its motion for summary judgment, and there is no evidence of its connection to the infringement.  *Supra* § II.C.  Plaintiff stated he intended to withdraw his claim against it, ECF No. 28 at 1, but has yet to do so.  Plaintiff admittedly has "no idea" whether Emrata has anything to do with the subject matter of the complaint.  Def. 56.1 Stmt. at 14.  Although Plaintiff did not move for summary judgment against Emrata, Pl. Mot., thereby not forcing Emrata to defend itself, by failing to dismiss Emrata promptly, he forced Emrata to move for summary judgment.  As there appears to be "no legal or factual support" underlying the claims against Emrata and Plaintiff was unable "to substantiate any of its allegations" against it, the Court concludes that it should be awarded its attorney's fees and costs.  *See Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001); *cf. Mourabit v. Klein*, No. 18

Civ. 8313, 2020 WL 5211042, at *3 (S.D.N.Y. Sept. 1, 2020) (noting that fees were not warranted because plaintiff voluntarily withdrew non-meritorious claims).

Accordingly, Defendants' requests for attorney's fees, costs, and sanctions is GRANTED in part and DENIED in part.

## CONCLUSION

For the reasons stated above, both motions for summary judgment are GRANTED in part and DENIED in part.  Specifically, Plaintiff's motion for summary judgment on Ratajkowski's infringement is GRANTED; Plaintiff's motion for summary judgment dismissing Defendants' affirmative defenses is GRANTED as to defenses one, three, five, six, seven, eleven, twelve, and thirteen, and DENIED as to defenses two, four (fair use), and ten.  Defendants' motion is GRANTED to the extent that the claims against Emrata are DISMISSED, and its motion for attorney's fees and costs is GRANTED.  The balance of Defendants' motion is DENIED.  By **October 28, 2021**, Emrata may file contemporaneous billing records and other documented expenses in support of an award of attorney's fees and costs.

The Clerk of Court is directed to terminate the motions at ECF Nos. 37, 42, 52, and 55.

SO ORDERED.

Dated:  September 28, 2021
      New York, New York

_____
ANALISA TORRES
United States District Judge

31