UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT O'NEIL,<br><br>                    Plaintiff,<br><br>    - against –<br><br><br>EMILY RATAJKOWSKI,<br>EMRATA HOLDINGS, LLC<br><br>                    Defendant. | 1:19-cv-09769 (AT)<br><br>Hon. Analisa Torres |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OR REARGUMENT PURSUANT TO LOCAL RULE 6.3 AND RULE 60(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Pursuant to Local Civil Rule 6.3 and Rule 60(b)(1) of the Federal Rules of Civil Procedure, Plaintiff Robert O'Neil ("Plaintiff" or "O'Neil"), via counsel, respectfully submits this reply memorandum of law in further support of Plaintiff's Motion for Reconsideration or Reargument of that portion of the District Court's Order, dated September 28, 2021, which awarded defendant Emrata Holdings, LLC ("Emrata") its attorneys fees' and costs pursuant to section 505 of the Copyright Act, 17 U.S.C. §505. [Order, Dkt. No. 58, pp. 28-31]

## ARGUMENT

**Point I.**   **THE COURT OVERLOOKED UNDISPUTED FACTS ON THE RECORD SHOWING THAT PLAINTIFF'S CLAIM AGAINST EMRATA WAS OBJECTIVELY REASONABLE**

"[M]otions for reconsideration are not granted unless 'the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Zuma Press, Inc. v. Getty Images (US), Inc.*, No. 16 CIV. 6110 (AKH), 2019 WL 316001, at *1 (S.D.N.Y. Jan. 24, 2019) (*quoting In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003)).

Similarly, relief under 60(b)(1) is also appropriate where a court may have overlooked factual evidence in the record. *See Rumsey v. New York State Dep't of Corr. Servs.,* 580 F.Supp. 1052 (N.D.N.Y.1984) (granting 60(b)(1) motion where court may have overlooked triable issues of fact); *International Controls Corp, v. Vesco,* 556 F.2d 665, 670 (2d Cir. 1977) (stating that district court's mistake of "substantive legal nature" may be corrected under Rule 60(b)(1)).

In his principal brief, Plaintiff cited to substantial factual evidence on the record showing that his claim against Emrata was objectively reasonable. The statements made in Plaintiff's Rule 56.1 Statement in support of his motion for summary judgment [Dkt. No. 45], which were

not refuted by Emrata through the filing of any counter-statement,[1] are supported by the record evidence, namely Ratajkowski's own deposition testimony. Specifically,

> **Rule 56.1, ¶ 14:** *"Ratajkowski owns and operates a company called Emrata Inc. which provides Ratajkowski's services as a working actress and model.*
>
> • <u>Deposition Testimony</u>: Dkt. No. 44-4; Ratajkowski Tr. 10:19-24 ("I have my own entity as a working actress and model…").
>
> **Rule 56.1, ¶ 15:** *"Ratajkowski is the sole employee of Emrata Inc."*
>
> • <u>Deposition Testimony</u>: Dkt. No. 44-4; Ratajkowski Tr. 11:8-11 ("I am the only employee [of Emrata Holdings, LLC]").
>
> **Rule 56.1, ¶ 17:** *"Emrata Inc. is the vehicle through which Ratajkowski makes money from her acting and modeling services."*
>
> • <u>Deposition Testimony</u>: Dkt. No. 44-4; Ratajkowski Tr. 84:24-85-5 ("The money that I make from my various, you know, acting, modeling, is a part of Emrata Holdings)."
>
> **Rule 56.1, ¶ 18:** *"All the money that Ratajkowski makes through her status as a public figure, including through her Instagram account, is channeled through Emrata Inc."*
>
> • <u>Deposition Testimony</u>: Dkt. No. 44-4; Ratajkowski Tr. 85:6-15 ("Q. So the money you make from your Instagram page through these sponsored pages goes, the money goes through Emrata Holdings, LLC? A. All the money I make as a public person goes through Emrata Holdings, LLC. Q. So it's safe to say that the money you make from Instagram flows through that entity, correct? A. When I do a sponsored post, yes.").
>
> **Rule 56.1, ¶ 41:** *"The name of Ratajkowski's personal Instagram account is Emrata."*
>
> • <u>Deposition Testimony</u>: Dkt. No. 44-4: Ratajkowski Tr. 18:14-16.
>
> **Rule 56.1, ¶ 42:** *"Ratajkowski personally controls the Instagram account at Emrata."*
>
> • <u>Deposition Testimony</u>: Dkt. No. 44-4: Ratajkowski Tr. 19:3-6 ("Q. Just so that I understand, Emrata, you, yourself, control that Instagram account, correct? A. Correct.")

---

[1] Emrata's opposition brief fails to refute the legal consequence of Emrata's failure to file a Rule 56.1 counter-statement in opposition to Plaintiff's cross-motion for summary judgment. If a non-moving party fails to submit a counterstatement, as required by Local Rule 56.1, "courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts." *D'Nelson v. Costco Wholesale Corp.*, No. 03-CV-0219, 2006 WL 767866, at *3 (E.D.N.Y. Mar. 24, 2006).

>**Rule 56.1, ¶ 45:** *"All photographs displayed on the Instagram account at Emrata are posted by Ratajkowski."*
>
>• <u>Deposition Testimony</u>: Dkt. No. 44-4: Ratajkowski Tr. 19:7-14 ("Q. Do you personally post the photographs on the Emrata Instagram account? A. Yes.")

Plaintiff respectfully submits that the Court overlooked such evidence when analyzing whether Emrata qualified for its attorneys' fees under section 505, and that had the Court considered such evidence, a different conclusion would have obtained. *See Zuma Press*, 2019 WL 316001, at *1 (granting motion for reconsideration in part under L.R. 6.3 and vacating summary judgment where the court overlooked an important e-mail on the factual record).

In its opposition brief, Emrata cites to a single statement from its Rule 56.1 Statement to support the assertion that Ratajkowski posted the Photograph to Instagram in her "personal capacity." This statement reads: "Ms. Ratajkowski personally posts photographs on her Emrata Instagram account" and cites to Ratajkowski's deposition transcript at page 19, lines 7–11. [Dkt. No. 47, p. 2]. Plaintiff did not contest this statement because it accurately reflects Ratajowski's testimony. *See* Dkt. No. 44-4: Ratajkowski Tr. 19:7-14 ("Q. Do you personally post the photographs on the Emrata Instagram account? A. Yes.").

But Plaintiff respectfully submits that the Court misconstrued the meaning of this statement. The fact that Ratajkowski herself pushed the button upon uploading the Photograph to Instagram does not mean that she is doing so in a "personal capacity", as was determined by the Court. [Order, Dkt. No. 58, p. 9 (finding that Ratajkowski acted in her "personal capacity" when posting photographs to Instagram)] For example, a staff editor at Buzzfeed could *personally* upload a photograph to the website at www.buzzfeed.com, but such editor would be doing so in a *business capacity*, to further the interests of the company which employs that editor. Likewise, the record here shows that Ratajkowski is the sole owner and employee of

Emrata and maintains sole control over the content posted to the Instagram account in question, which serves as a professional vehicle for the goods and services that Ratajkowski offers by way of her celebrity namebrand. Indeed, Emrata admits that "[a]ll the money that Ratajkowski makes through her status as a public figure, including through her Instagram account, is channeled through Emrata Inc." Plaintiff's Rule 56.1, ¶ 18; Dkt. No. 44-4; Ratajkowski Tr. 85:6-15. Further, it is undisputed that *"[t]he name of Ratajkowski's personal Instagram account is Emrata."* Plaintiff's Rule 56.1, ¶ 41.

There can no dispute that Ratajkowski's activities on Instagram are inextricably intertwined with Emrata's corporate interests. Of particular import is the fact that when Ratajkowski posts photos to Instagram, she is doing so as the sole owner and employee of Emrata, which benefits from all of Ratajkowski's activies as a public figure. [Plaintiff's Rule 56.1, ¶ 15] Thus, Emrata has the ability to supervise Ratajkowski's activities. Moreover, by Ratajkowski's own admission, all of the money that Ratajkowski makes through her status as a public figure, including through her personal Instagram account, is channeled through Emrata. [Plaintiff's Rule 56.1, ¶ 18] This shows that Emrata has an obvious and direct financial interest in the exploitation of copyrighted materials posted to Ratajkowski's personal account.

As the record shows an inextricable link between Ratajkowski's and Emrata's activities respecting Instagram, it cannot be fairly stated that Plaintiff's claim against Emrata lacked color.

**Point II:** **BASED ON THE FACTUAL EVIDENCE, THE COURT SHOULD RECOGNIZE THAT PLAINTIFF'S CLAIM AGAINST EMRATA PRESENTED A "CLOSE CALL"**

Claims are objectively unreasonable if they "have no legal or factual support." *Viva Video, Inc. v. Cabrera,* 9 F. App'x 77, 80 (2d Cir. 2001). However, the "mere fact that a [party] has prevailed does not necessarily equate with an objectively unreasonable claim." *Berry v. Deutsche Bank Trust Co. Ams.,* 632 F. Supp. 2d 300, 305 (S.D.N.Y.2009) (quotation marks and

alteration omitted). Indeed, the purposes of the Copyright Act are served when "close infringement cases are litigated." *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998). "For this reason, district courts are disinclined to award fees in cases that are close calls or which present novel legal issues or theories." *TufAmerica Inc. v. Diamond*, No. 12-CV-3529 (AJN), 2016 WL 1029553, at *2 (S.D.N.Y. Mar. 9, 2016), *on reconsideration in part*, No. 12-CV-3529 (AJN), 2018 WL 401510 (S.D.N.Y. Jan. 12, 2018) (citations omitted).

Here, in light of the record evidence cited in Point I, *supra*, it cannot be fairly stated that Plaintiff's claim against Emrata lacked factual support. The issue as to whether Ratajkowski posted the Photograph to Instagram to further Emrata's business interests and promote her celebrity brand, as opposed to furthering some personal hobby in her capacity as a non-celebrity, presents a "close call" and novel question which should have precluded an award of fees.

**Point III:** **THE EVIDENCE SUPPORTS A CLAIM OF DIRECT INFRINGEMENT, AND PLAINTIFF WAS NOT REQUIRED TO PLEAD VICARIOUS LIABILITY**

As the record indicates that photographs posted to Ratajkowski's Instragram account are intended to further Emrata's business interests, and Ratajkowski services the account as the sole owner and employee of Emrata, liability for direct infringement may have been established had the claim been further prosecuted on the merits. *See Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 147 (S.D.N.Y. 2009) (a defendant may be held liable for direct infringement where it has engaged in "volitional conduct" which violates a copyright holder's exclusive right to distribute his copyrighted material under section 106(3) of the Copyright Act).

In opposition, Emrata takes issue with Plaintiff's alternate theory of vicarious liability, whereby a defendant may be held secondarily liable for copyright infringement if it had the "right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." *Garden City Boxing Club, Inc. v.*

6

*Morales*, No. 05-cv-0064, 2005 WL 2476264, at *10 (E.D.N.Y. Oct. 7, 2005).  Emrata maintains that Plaintiff somehow waived that theory, but has not cited any legal authority to support such proposition.  The Copyright Act does not distinguish between a claim for direct infringement vs. secondary infringement.  Such distinction is a judicial construct.  There is no rule stating that a plaintiff must plead alternate theories of copyright infringement in his complaint.  The cause of action for copyright infringement was sufficiently pled under the statute, and had plaintiff elected to pursue a theory of secondary liability, it could have advanced such theory in his pre-trial submissions.

Furthermore, contrary to Emrata's assertions, the facts support a theory of vicarious liability because it is undisputed that: (a) Ratajkowski is the owner and operator of Emrata and its sole employee [Ratajkowski Tr. 10:19-24)]; (b) Emrata is the vehicle through which Ratajkowski makes money from her acting and modeling services [Ratajkowski Tr. 84:24-85-5]; (c) all of the money that Ratajkowski makes through her status as a public figure, including through her Instagram account, is channeled through Emrata [Ratajkowski Tr. 85:6-15]; (d) the name of Ratajkowski's personal Instagram account is Emrata [Ratajkowski Tr. 18:14-16]; (e) Ratajkowski personally controls the Instagram account at Emrata [Ratajkowski Tr. 19:3-6]; (f) all photographs displayed on the Instagram account at Emrata are posted by Ratajkowski [Ratajkowski Tr. 19:7-14]

**Point IV:** **PLAINTIFF'S INTENT TO WITHDRAW THE CLAIM PRIOR TO SUMMARY JUDGMENT WAS NOT A CONCESSION ON THE MERITS**

Contrary to Emrata's argument, Plaintiff's stated intention to withdraw the claim prior to summary judgment briefing was not a concession that such claim was unreasonable.  Plaintiff properly manifested his intent to withdraw the claim to conserve both judicial and party resources.  [Dkt. No. 28, p. 1] Emrata's further participation in the litigation was not necessary to

accord Plaintiff the full amount of relief sought in the complaint. Had Emrata been found liable on the merits, it would have been adjudged jointly and severally liable with Ratajkowski. So the cost of further prosecution against Emrata did not justify the ultimate benefit to be obtained. In good faith, Plaintiff manifested an intent to withdraw the claim prior to summary judgment, even though the factual record supported a viable claim against Emrata, as illustrated in Point I, *supra.*

Further, the Court's finding that O'Neil himself lacked personal knowledge of Emrata's participation in the infringement should not be dispositive because his testimony plausibly indicates that he either lacked sophistication regarding the relationship between a public figure and her holding company, or may not have been adequately prepared to address such questions at his deposition. After all, Plaintiff's Rule 26(a) disclosures did not state that he had personal knowledge about the corporate relationship between Ratajkowski and her sole member LLC.

Under these circumstances, it would be improper to conclude that Plaintiff's good faith intent to withdraw the claim equated to an admission that such claim lacked color.

## CONCLUSION

Based on the foregoing, and for those reasons advanced in his principal brief, Plaintiff respectfully submits that the Court should grant Plaintiff's motion for reconsideration and/or to vacate that portion of its Order, dated September 28, 2021, which awarded attorneys' fees and costs to Emrata Holdings, LLC under section 505 of the Copyright Act.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

**s/jameshfreeman/**
James H. Freeman, Esq.
1333A North Ave., Ste. 762
New Rochelle, NY 10804
(516) 233-1660

JF@LiebowitzLawFirm.com

*Counsel for Plaintiff*